```
 1  SOMMERS LAW GROUP
    STEPHEN A. SOMMERS (SBN 225742)
 2  JACOB W. SNIDER (SBN 236084)
    870 Market Street, Ste. 1142
 3  San Francisco, CA 94102
    (415) 839-8569 (Tel)
 4  (415) 956-0878 (Fax)
    Attorneys for Plaintiff
 5  PAUL MONTWILLO

 6  Law Office of David Y. Wong (SBN 105031)
    100 Shoreline Highway, Suite 100 B
 7  Mill Valley, CA  94941
    Tel: (415) 339-0430
 8  Fax: (415) 332-8679

 9  Attorneys for Defendants
    WILLIAM TULL,
10  DANIEL GIBBY, and
    GIBBY NOVELTIES, LLC
11
```

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL MONTWILLO, | Case No.: C 07 3947 SI |
| Plaintiff | **JOINT CASE MANAGEMENT STATEMENT** |
| v. | |
| WILLIAM TULL; DANIEL GIBBY; GIBBY NOVELTIES LLC dba ARSENIC & APPLE PIE, a California Limited Liability Corporation, and DOES 1 through 20 inclusive, | **Courtroom:** 10<br>**Judge:** Hon. Susan Illston<br>**Date:** November 9, 2007<br>**Time:** 2:00 pm |
| Defendants | |

Plaintiff's Prefatory Statement: On November 2, 2007, counsel for Plaintiff Stephen Sommers and counsel for Defendant David Wong, held a conference call with Arbitrator Jack Garvey of the American Arbitration Association.

Defendants Prefatory Statement: Plaintiffs first draft of this Case Management Statement was provided to Defendants' counsel late in the afternoon of October 31st, with the notation that it was to be filed two days later, on November 2d. This late notice did not provide adequate time for a meaningful meet and confer opportunity, and the parties were therefore unable to create a true joint statement. Accordingly, where agreement was not achieved or possible, Defendants have responded to Plaintiff's draft by submitting their own comments.

**1.    JURISDICTION**

Plaintiff's Position: This Court has subject matter jurisdiction over this action. Plaintiff has brought an action for federal copyright infringement. 28 U.S.C. §§ 1331, 1338. This Court has personal jurisdiction over Defendants resided and or conducted business within the judicial district. All parties are subject to this Court's jurisdiction and have been served.

Plaintiff has dismissed his claim in the Superior Court for breach of contract and the underlying arbitration. On November 2, 2007, the arbitrator confirmed that the arbitration will not move forward.

Defendants' Position: This Court lacks jurisdiction over this action, as the action arises from a contractual dispute between the parties. The matter was originally filed in State Court and, *by stipulation of all parties*, was removed to binding arbitration before the American Arbitration Association, a pending related action not disclosed by Plaintiff when this action was filed. Although Plaintiff has forced the arbitration hearing to be postponed three times, the matter was finally scheduled to be adjudicated on November 2, 2007. Due to Plaintiff's dismissal of his State Court Complaint on October 12, the hearing is once again postponed. As of this date, however, the arbitration proceeding has not been cancelled or dismissed and

Defendants are of the position that even if Plaintiff refuses to participate further, that they are entitled to a finding that Plaintiff has failed to meet his burden of proof as to any of the claims alleged.

**2.     FACTUAL AND LEGAL BASIS FOR CLAIMS:**

<u>Plaintiff's Position</u>: The factual and legal basis for Plaintiff's claim is as follows: Plaintiff created a line of novelty dolls beginning in 1998. The dolls were known by various names and were parodies of Barbie dolls. The designs are wholly original to Plaintiff and are copyrightable subject matter pursuant to the laws of the United States. Plaintiff protected his designs through the procurement of U.S. Copyright Registrations.

Defendant Tull and Plaintiff had previously formed a partnership and limited liability company, Arsenic and Apple Pie, LLC, to manufacture market and distribute Plaintiff's designs. At no time did Plaintiff surrender his copyright to Arsenic and Apple Pie, LLC. For three years Arsenic & Apple Pie, LLC manufactured and distributed novelty dolls based on Plaintiff's designs.

Arsenic & Apple Pie, LLC operated until June 25, 2004, at which time Tull notified Plaintiff he was dissolving Arsenic & Apple Pie LLC pursuant to an *ipso facto* clause in the contract governing Arsenic & Apple Pie LLC. After Arsenic and Apple Pie LLC was dissolved, defendants Tull and Gibby formed Gibby Novelties LLC, and continued to sell novelty dolls which are identical in almost all respects to the dolls Plaintiff designed and copyrighted.

Defendants, without authorization or license from Plaintiff, continue to manufacture, market, distribute and sell their line of infringing dolls which are virtually exact reproductions of those designed by Plaintiff and subject to copyright.

<u>Defendants' Position</u>: The factual and legal basis of Defendants' defenses is as follows:
Plaintiff Montwillo and Defendant Tull were the founders and co-managing members of a California limited liability company, Arsenic & Apple Pie, LLC., which was formed in April of

1999. As set forth in the Operating Agreement, the purpose of the Company was the "design, manufacture, distribution and sale of dolls and toys," primarily satirical dolls known as "trailer trash dolls." Montwillo was generally responsible for the creative aspects of the business and Tull was responsible for managing and underwriting the business venture. Each held a 50% interest in the Company. In the years of its existence, Montwillo, in his capacity as a member-owner of Arsenic & Apple Pie LLC, designed, developed and helped market a total of three Trailer Trash Doll models, produced, manufactured, and distributed by Arsenic & Apple Pie LLC. Around the last year of its existence, 2003-04, Montwillo conceived and roughly designed two other models of trailer trash dolls for the Company, only one of which progressed to a prototype. As in the case of the earlier dolls, all design and development costs were borne by the Company, and no claim of private ownership was ever asserted by Montwillo.

After several years of disappointing sales and the absence of any net profits, Arsenic & Apple Pie LLC was floundering and had yet to repay any of the first priority loans made to it by Tull. In June of 2004, the Company was forced to windup and dissolve following the disclosure of Montwillo's earlier petition in bankruptcy. The decision to dissolve the Company was involuntary under Article IX of the Operating Agreement.

At the time of windup and dissolution, the Company's tangible assets were valued at $35,763.57, primarily in the form of unsold doll inventory. At the same time, the Company had liabilities of $88,283, most of which were the outstanding loans owed to Tull. As stipulated by the Operating Agreement, the Company liquidated its assets and offered them for sale to the highest bidder. Once liquidated, the Company's debts were paid in order of priority. After satisfaction of the Company's third party debts, the next order of priority was for outstanding

loans made by its members. Any remaining assets would then be distributed in accordance with each member's respective interest in the company.

Uncertain as to the true value of its unsold inventory and intellectual rights to the dolls, the Company solicited and entertained bids for the Company's inventory and other assets as part of its wind-up and dissolution. No bids were received for the inventory or any other assets. Thus, it was determined that after all third party debts were paid, that Tull would receive the remaining unsold inventory and other intangible assets of Arsenic & Apple Pie, LLC., in full satisfaction of his outstanding loans to the Company. The Company's assets were liquidated on July 11, and the Company was formally dissolved on July 12, 2004.

Defendant Daniel Gibby is the sole founder and member of Gibby Novelties, LLC, a California Limited Liability Company formed in July of 2004. On July 15, Gibby purchased the "Trailer Trash" doll inventory and all intellectual property rights to the dolls from Tull and transferred same to Gibby Novelties, LLC as his capital contribution.

On June 17, 2005, Montwillo filed suit in State Court against Defendants alleging that his shares of Arsenic & Apple Pie, LLC were wrongfully taken from him when Tull dissolved the company based on an invalid provision in the Operating Agreement. Plaintiff further alleged that Tull acted in violation of the Operating Agreement, breached his fiduciary duties to Montwillo, and converted Plaintiff's assets for his own. As to Gibby and Gibby Novelties, Plaintiff claimed that Gibby Novelties was a successor company to Arsenic & Apple Pie, LLC, and that he was entitled to a share of the company and its profits. The matter was removed to binding arbitration by the agreement of all parties, and before the matter could be adjudicated, Plaintiff filed this action for copyright infringement.

Defendants reject Plaintiff's claims in whole and submit that the State Court action, the arbitration demand and the instant Federal Action are merely ploys to extort Tull for additional funds. Not only was the Operating Agreement entirely valid and enforceable, Tull's windup and dissolution of the Company was legitimate and more than fair to Montwillo. In the end, neither member received any distribution of profits or assets as part of the dissolution. What assets that did exist, namely the remaining doll inventory and their intellectual rights, were clearly owned by the Company, not Montwillo, thus the five copyright registrations in question were fraudulent and based on false information.

Defendants further reject Plaintiff's claim that Gibby or his company Gibby Novelties was or is in any way liable for any copyright infringement damages. The fact is that Gibby Novelties never manufactured any dolls in accordance with a design conceived by Montwillo for Arsenic & Apple Pie, LLC. The only two doll models that Gibby Novelties did put into production, were only roughly based on doll concepts which it acquired from Tull. It then further developed the concepts into completely different products that do not resemble the original design. Thus, not only did Gibby and Gibby Novelties legally acquire the intellectual rights to the five trailer trash doll models from their rightful owner, Arsenic & Apple Pie LLC, vis-à-vis Tull, the dolls actually manufactured and sold are substantially different and thus do not violate any copyrights possibly held by Montwillo.

Defendants submit that the facts clearly show that Plaintiff cannot claim ownership of the copyrights. From 1998 until 2004, he was engaged in a business partnership, and then a limited liability company, with the stated purpose of designing, producing and distributing the subject dolls. Plaintiff made no attempt to reserve or claim the copyright interests to same at any time

during this period. Only after the Company was about to dissolve and use its intellectual property rights to pay off its debts did Plaintiff secretly try to transfer ownership back to himself. That is the sole reason Plaintiff fails to disclose that the five copyrights claimed were not registered until July 2004, concurrent with or after the dissolution of the Arsenic & Apple Pie LLC.

Defendants further submit that Plaintiff's copyright claims are invalid as the dolls at issue are not parodies of the popular "Barbie Doll" line of toys. As per an earlier agreement with Mattel, the Trailer Trash doll design may not invoke any aspect of the Barbie Doll products. Moreover, the satirical content of the Trailer Trash dolls, consisting primarily of the clothing and physical appearance of the dolls, consist of unoriginal genre stereotypes, which do not qualify these dolls as a valid subject of copyright protection. *See, generally* 17 U.S.C. § 101 *et. seq.*

### 3.   FACTUAL AND LEGAL ISSUES IN DISPUTE:

Plaintiff's Position: The factual and legal issues genuinely in dispute are whether Plaintiff owns the copyright to the dolls and whether Defendants violated and continue to violate those copyrights by continuing to manufacture and market them.

Plaintiff's position on Defendants' Motion to Stay is that the Motion is now moot since the Superior Court claim and arbitration has been withdrawn.

Defendants' Position:  The factual and legal issues genuinely in dispute are:

1. Whether the Defendants are entitled to an Order Staying Proceedings based on the related binding arbitration scheduled for November 2007. Defendants Motion for a Stay of Proceedings is now scheduled to be heard by this Court on November 16, 2007;

2. Whether the claimed copyright in the dolls at issue is valid;

3. Whether Plaintiff's registration of the doll designs in question constitutes a fraud on the Copyright Office;

4. Whether Plaintiff's filing of the instant action in Federal Court, and recent attempt to prevent the issuance of a Stay Order by filing a dismissal of the related State Court action, a procedural scheme Defendants submit is ineffective since the agreement to engage in binding arbitration is a separate and enforceable agreement, is evidence of bad faith forum shopping; and

5. Whether Defendants' valid offset claims merit damages in excess of any claims of Plaintiffs.

**4.   NARROWING OF ISSUES**:

Plaintiff's Position: The issues that can be narrowed whether Plaintiff is the owner of valid copyrights to the dolls and whether Defendants are in violation of those copyrights. Plaintiff also requires resolution to the extent to which Defendants have violated Plaintiff's copyrights and the subsequent damage calculation.

Defendants' Position:  Defendants, having been forced to respond through State Court, then through binding arbitration proceedings, and now in the third forum selected by Plaintiff in this action, no longer believe that any issues in this litigation can be narrowed by agreement. The issues can only be narrowed by the granting of Defendants' Motion for a Stay of Proceedings, followed by a Motion for Dismissal of this Action based on the resolution of the issues before the parties through the pending, and related, binding arbitration proceeding.

**5.   ANTICIPATED MOTIONS**:

The motion practice set forth in the preceding section identifies the motions to be filed in this matter by Defendants.  Plaintiff anticipates filing a Rule 56 Motion for Summary Judgment after the taking of appropriate discovery.

**6.   DAMAGES:**

Plaintiff's Position: Plaintiff seeks preliminary and permanent injunction against Defendants from continuing to manufacture, distribute, market, sell or offer for sale and infringing doll designs and any other use of Plaintiff's copyrights. Further, Plaintiff seeks statutory damages as provided by 17 U.S.C. § 504(c), costs of litigation and reasonable attorneys' fees pursuant to 17 U.S.C. § 505, punitive damages for the willful and deliberate infringement of Plaintiff's copyright to deter future unlawful conduct, and pre-judgment interest.

Defendants' Position: Defendants owe nothing to Plaintiff as there are no net profits which have been earned on any infringing dolls and, more importantly, Plaintiff's claims of copyright infringement are without merit. Defendants are reviewing their right to seek damages in the form of attorneys' fees from Plaintiff and from Plaintiff's counsel in the form of Rule 11 sanctions, as Plaintiff and his counsel were advised repeatedly of the lack of merit of this action, and have continued to maintain it, compelling Defendants to incur further attorney fees, in an effort to force Defendants to agree to a nuisance value settlement.

**7.    DISCOVERY**

Plaintiff anticipates pursuing the following discovery:

a.    Deposition of Defendants Tull and Gibby, their accountants and retailers to whom Defendants sold the infringing dolls to.

b.    Demand for inspection of documents to determine the extent of sales, marketing efforts, and profits.

Defendants anticipate pursuing the following discovery:

In the unfortunate event this matter is allowed to continue, Defendants will propound interrogatories, requests for production of documents and for admissions, and will take the deposition of Plaintiff Montwillo. In the related arbitration proceeding, Plaintiff has defied the discovery orders of the Arbitrator and has refused to produce any documents in response to Defendants' request of December 2006.

**8.     ADR**

   Plaintiff's Position: Plaintiff prefers the matter be assigned to either Early Neutral Evaluation or Non-binding Mediation.

   Defendants Position: At this time, Defendants do not wish this matter to be submitted to Special Master, Trial, non-binding arbitration or other alternative dispute resolution other than the existing binding arbitration proceeding. Submission of this copyright claim to ADR would allow Plaintiff an opportunity to essentially amend his claims against Defendants in violation of the applicable statute of limitations for a copyright infringement action – a claim which in this case should have been asserted, if it is valid in any respect, in 2005 with the filing of the original action.

**9.     TRIAL**

   Plaintiff's Position:  Plaintiff has requested a jury trial.  However, Plaintiff believes the matter could be favorably disposed on Summary Judgment.  The Plaintiff anticipates a total trial length with motions and jury selection to be approximately eight days.  It is possible to reduce the length of trial by stipulation, use of summaries or statements, or other expedited means of presenting evidence.  It is not feasible and desirable to bifurcate issues for trial.

   Defendants' Position:  This case should be disposed of via a motion to dismiss following completion of the pending binding arbitration.  Alternatively, summary judgment should provide an adequate means for resolution of this case.  In the unlikely event a jury trial is commenced, Defendants believe the matter could be tried in four days.

**10.    ASSOCIATED CASES**

   Plaintiff's Position:  There are no related cases pending before other Judges of this Court. Plaintiff's claim for breach of contract filed in the Superior Court has been dismissed without prejudice.

1       Defendants' Position:  There is a related pending binding arbitration proceeding in this
2  matter, which is the subject of Defendants Motion for an Order Staying Proceedings in this
3  Court.  There are no related cases pending before other Judges of this Court.

4  **11.     CLASS ACTION**

5       This is not a class action.

6  12.     The earliest reasonable date for discovery cutoff is April 2, 2008.  The earliest reasonable
7  date for pretrial conference is May 2, 2008.

8  **13.     SETTLEMENT**

9       Plaintiff's Position:  Plaintiff is available to entertain all reasonable settlement offers.

10      Defendants' Position:  This entire action has been filed and maintained through three
11 different forums, over the course of more than three years, all in an effort to compel Defendants
12 to pay a nuisance value settlement.  Defendants are not prepared to pay any settlement of these
13 spurious claims.

14 DATED:  November 2, 2007                           Respectfully submitted,

16                                                   /s/ Stephen A. Sommers
                                                    SOMMERS LAW GROUP
17                                                  STEPHEN SOMMERS
                                                    JACOB SIDER
18                                                  Attorneys for Plaintiff
                                                    PAUL MONTWILLO

21                                                  /s/ David Y. Wong
                                                    DAVID Y. WONG
                                                    Attorney for Defendants
22                                                  WILLIAM TULL, DANIEL
                                                    GIBBY, and GIBBY NOVELTIES,
23                                                  LLC