1  David Y. Wong, Attorney at Law (SBN 105031)
   100 Shoreline Highway, Suite 100 B
2  Mill Valley, CA  94941
   Tel: (415) 339-0430
3  Fax:  (415) 332-8679

4  Law Office of Marc H. Greenberg (SBN 88493)
   536 Mission Street, Suite 2323
5  San Francisco, CA 94105
   Tel: (415) 442-6611
6

7  Attorneys for Defendants William Tull, Daniel Gibby and
   Gibby Novelties, LLC
8

9

10                     UNITED STATES DISTRICT COURT

11                    NORTHERN DISTRICT OF CALIFORNIA

12

13  PAUL MONTWILLO, an individual          )  Case No. C 07 3947
                                           )
14              Plaintiff,                 )  COUNTER-CLAIM OF
                                           )  WILLIAM TULL (FRCP RULE 13)
15  vs.                                    )
                                           )
16                                         )
    WILLIAM TULL; DANIEL GIBBY;            )
17  GIBBY NOVELTIES, LLC dba ARSENIC &     )
    APPLE PIE, a California Limited Liability )
18  Corporation and DOES 1 through 20,     )
    inclusive,                             )
19                                         )
                                           )
20              Defendants.                )
    _____)
21                                         )
                                           )
22  WILLIAM TULL,                          )  Complaint Filed: August 1, 2007
                                           )
23              Counter-Claimant,          )
                                           )
24  vs.                                    )
                                           )
25  PAUL MONTWILLO, an individual, and     )
    DOES 21 through 30, inclusive          )
26                                         )
                Counter-Defendants         )
27  _____)
                                           )
28

DEFENDANT and COUNTER-CLAIMANT WILLIAM TULL, pursuant to the authority provided by Federal Rules of Civil Procedure Rule 13, hereby counter-claims against PLAINTIFF and Counter-Defendant PAUL MONTWILLO, as follows

## JURISDICTION AND VENUE

1. This Court is the proper Court for this action, as it arises out of the original and exclusive Federal jurisdiction over matters dealing with copyright law, pursuant to 17 U.S.C. § 301.

2. This Court has personal jurisdiction over the Counter-Defendant in that said Counter-Defendant resides in and conducted business in this judicial district, the acts of conversion of copyright protected assets occurred in this judicial district, and a substantial part of the events which give rise to the Counter-Claim occurred in this judicial district.

## PARTIES

3. Counter-Claimant William Tull (hereinafter "Tull") resides in Marin County and is a citizen of the United States and of the State of California.

4. Counter-Defendant Paul Montwillo (hereinafter "Montwillo") resides in San Francisco and is a citizen of the United States and of the State of California.

## GENERAL ALLEGATIONS

5. COUNTERDEFENDANT Montwillo and COUNTERCLAIMANT Tull were the founders and co-managing members of a California limited liability company, Arsenic & Apple Pie, LLC., which was formed in April of 1999 for the purpose of designing, manufacturing and distributing satirical dolls known as "trailer trash dolls." Montwillo was generally responsible for the creative aspects of the dolls and Defendant Tull was responsible for managing and underwriting the business venture. Each held a 50% interest in the Company. The business' capital structure was a classic "sweat equity" arrangement – Tull provided all of the financing for the venture, and

Montwillo contributed his designs for the dolls, and worked in the business in a designer and creative director capacity.

6. After several years of disappointing sales and the absence of any net profits, Arsenic & Apple Pie was floundering and had yet to repay any of the first priority loans made to it by Tull. In July of 2004, the Company was forced to windup and dissolve following the disclosure of Montwillo's earlier petition in bankruptcy. The decision to dissolve the Company was involuntary as Article IX of the Operating Agreement specifically provides that the Company shall automatically windup operations and dissolve upon the occurrence of certain triggering events. Among the triggering events listed in the Operating Agreement, is the filing of a petition in bankruptcy by a managing member.

7. At the time of windup and dissolution, the Company's balance sheet showed that its primary asset was in the form of unsold product inventory valued at $31,995.57, however, the Company owed $73,216.60, mostly in outstanding loans to Tull. As stipulated by California law and the Operating Agreement, the Company liquidated its assets and offered them for sale to the highest bidder as part of a plan to pay the Company's debts in accordance with the Operating Agreement. Any remaining assets were to be distributed equally to the two members.

8. No bids were received for the inventory or any other assets of the Company. At the same time, the balance of the Company's cash was insufficient to pay the Company's third party debts and liabilities. $11,297.96 of the remaining inventory was thus earmarked for liquidation and payment of Arsenic's outstanding third party debts and, since the Company lacked any means of actually liquidating the inventory at book value, Tull accepted personal responsibility for the payment of these debts in exchange for the correlating amount of inventory at its book value.

9. The Company then determined that since Tull was still owed $73,216 in loans to the Company, that the only reasonable means of winding up would be for Tull to accept in trade the remaining inventory of $20,697 and whatever value could be attributed to the copyrights and any other intellectual property rights to the doll designs at $52,518.99. Montwillo was given the option of personally bidding or locating a prospective bidder for such assets of the Company, but failed to do so. Consequently, on July 17, 2004, Tull was given the remaining product inventory and the intellectual property rights to the aforementioned doll designs, in full satisfaction of his loans to the Company.

10. It undisputed by Montwillo that he filed for bankruptcy in April of 2002. It is also undisputed that when Montwillo filed bankruptcy in 2002, he did not claim or identify any copyrights in the trailer trash doll designs as his separate property. Had he done so, they would have been subject to claims by his creditors, as well as a claim for conversion of company assets by Arsenic & Apple Pie LLC.

11. Following the above, with no funds or assets in its possession, Arsenic & Apple Pie, LLC, declared to its members that their respective interests in the Company were of no value and proceeded to dissolution.

### First Cause of Action – Conversion

12. Counter-Claimant Tull realleges and incorporates herein by this reference the allegations of paragraphs 1 through and including 11 as though fully set forth herein.

13. On or about July 2, 2004, Montwillo filed copyright registration for two different doll designs, described and numbered as follows: VAu000631337 – Trash talking Trixie; and VAu00631338.

14. On or about July 13, 2004, Montwillo filed copyright registration for three different doll designs, described and numbered as follows: VA0001271343 – Blonde drag queen doll; VA0001271341 – Redhead drag queen doll; and VA0001271342 – Trailer trash doll. True and

correct copies of the Copyright Office's records regarding these applications are attached hereto as Exhibits A, B, C, D and E respectively, and are incorporated herein by this reference as though fully set forth.

15. Counter-Claimant Tull is informed and believes, and thereon alleges, that all of these copyright applications, pertain to designs created by Montwillo while he was a managing member of the Arsenic and Apple Pie LLC, and as such are assets of that Company, and are not, and have never been, the personal property of Montwillo. Montwillo did not seek the consent of Tull before filing these applications, and in fact made these filings in secret.

16. The claim made in these applications is a fraud on the Copyright Office, and is a conversion by Montwillo of Company assets which, following the dissolution of the Company, were transferred to Tull in satisfaction of the substantial debt owed to him by the Company. The applications were further fraudulent in that Montwillo failed to disclose the ownership claim of the Company to said dolls.

17. The conversion of these assets, and the subsequent assertion of this meritless complaint alleging copyright infringement, were intentional acts which have clouded the title to these designs, and caused significant financial damage to Tull, in that these claims hamper his ability to exploit these designs, and have caused him to be compelled to retain counsel, and defend his ownership rights to these designs in three different legal forums since 2005, all to his damage in an amount to be shown according to proof at trial.

18. Montwillo's intentional act in converting this property of Tull's, and in maintaining the instant action for copyright infringement, are acts done for the purpose of extracting a settlement payment from Tull, and have not been brought in good faith. Tull is therefore entitled to, and seeks, an award of punitive damages against Montwillo in an amount sufficient to deter Montwillo from taking such actions in the future.

**Second Cause of Action – Breach of Contract**

19. Counter-Claimant Tull realleges and incorporates herein by this reference the allegations of paragraphs 1 through and including 18 as though fully set forth herein.

20. The Operating Agreement of the Arsenic and Apple Pie LLC provides that all disputes between the members arising out of the operation of the business are to be resolved by binding arbitration before the American Arbitration Association. Counter-Defendant Montwillo has breached this term of the Agreement by filing a copyright infringement action with this Court and by refusing to arbitrate the claims made by Tull in this Counter Claim, for conversion, breach of contract and bad faith breach of the covenant of good faith and fair dealing.

21. Montwillo's refusal to allow this and the previous matters to be resolved through binding arbitration is a breach of the Operating Agreement between the parties, and has caused damage to Tull in the form of increased attorney fees and costs, in an amount to be shown according to proof at trial, together with his reasonable attorneys fees, as allowed pursuant to the terms of the Operating Agreement.

**Third Cause of Action – Breach of the Covenant of Good Faith and Fair Dealing; Breach of Fiduciary Duty**

22. Counter-Claimant Tull realleges and incorporates herein by this reference the allegations of paragraphs 1 through and including 21, as though fully set forth herein.

23. Parties entering into contracts in the State of California are bound by a covenant of good faith and fair dealing. Members of a Limited Liability Company owe their fellow members a fiduciary duty of loyalty.

24. In taking the actions aforesaid herein, Counter-Defendant Montwillo has repeatedly breached his duties of good faith and fair dealing, and his duty of loyalty to the LLC he was a member of. As a direct consequence of these breaches, Counter-Claimant Tull has been

damaged in an amount to be shown according to proof at trial. Montwillo's actions were intentional, and were taken in bad faith and for the purpose of compelling Tull to pay a settlement to him in order to be free of the effects of this conduct. Tull is therefore entitled to, and seeks, an award of punitive damages against Montwillo in an amount sufficient to deter Montwillo from taking such actions in the future.

WHEREFORE, Counter-Claimant Tull prays as follows:

**First Cause of Action**

1. For damages arising from the conversion by Montwillo of Tull's property, specifically the copyright rights and related intellectual property rights in the doll designs, which were the subject of the unauthorized registration with the Copyright Office, in an amount to be shown according to proof at trial;
2. For punitive and exemplary damages in an amount sufficient to deter Montwillo from future actions of this nature;
3. For Tull's reasonable attorney's fees incurred in defending his copyright ownership;

**Second Cause of Action**

4. For damages arising from Montwillo's breach of the LLC Operating Agreement by refusing to allow this matter to be resolved via binding arbitration in an amount to be shown according to proof at trial;
5. For Tull's reasonable attorney's fees incurred in prosecuting this breach of contract claim.

**Third Cause of Action**

6. For damages arising from Montwillo's repeated breaches of the covenant of good faith and fair dealing, and of his fiduciary duty of loyalty as a member of the LLC, in

an amount to be shown according to proof at trial;

7. For punitive and exemplary damages in an amount sufficient to deter Montwillo from future actions of this nature;

**For All Causes of Action**

8. That the Court award Defendants their costs of suit; and

9. For such other and further relief as the Court deems just and proper.

DATED:   January 10, 2008

_____
David Y. Wong, Attorney at Law
Attorneys for Defendants William Tull, Daniel Gibby and Gibby Novelties, LLC