David Y. Wong, Attorney at Law (SBN 105031)
100 Shoreline Highway, Suite 100 B
Mill Valley, CA 94941
Tel: (415) 339-0430
Fax: (415) 332-8679

Law Office of Marc H. Greenberg (SBN 88493)
536 Mission Street, Suite 2323
San Francisco, CA 94105
Tel: (415) 442-6611

Attorneys for Defendants William Tull, Daniel Gibby and
Gibby Novelties, LLC

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| PAUL MONTWILLO, an individual<br><br>              Plaintiff,<br><br>vs.<br><br>WILLIAM TULL; DANIEL GIBBY;<br>GIBBY NOVELTIES, LLC dba ARSENIC<br>& APPLE PIE, a California Limited<br>Liability Corporation and DOES 1 through<br>20, inclusive,<br><br>              Defendants.<br><br>And related Counter-Claim | CASE NO. C 07 3947 SI<br><br>Motion for Summary Judgment of Defendants<br>William Tull, Daniel Gibby and Gibby Novelties,<br>LLC<br>**(FRCP RULE 56(C)**<br><br>April 25, 2008<br>9:00 a.m.<br>Judge Illston, Courtroom 10<br><br>The Federal Building<br>450 Golden Gate Avenue<br>San Francisco, CA 94102<br><br>Complaint filed: August 1, 2007 |

# TABLE OF CONTENTS

Page No.

Table of Contents     i

Authorities     iii

Exhibits     iiii

Declarations     iiii

Deposition Transcripts     iiii

     **Notice of Motion**     1

     **Motion for Summary Judgment**     3

**Memorandum of Points and Authorities**

**A.**     **Introduction and Case Background**     4

**B.**     **Legal Argument**     8

     **Summary Judgment is appropriate when the uncontradicted evidence put forth by Defendants establishes that there is no genuine issue of material fact and that Defendants are entitled to judgment as a matter of law.**

    1.   **Montwillo's Copyright Infringement Claim is Barred By the Three Year Statute of Limitations.**     9

    2.   **Plaintiff Montwillo, By His Own Actions, Inaction, And Admissions, And By Operation Of The Copyright Work For Hire Doctrine, Relinquished And Waived Any Claim Of Copyright He May Have Otherwise Possessed In The Design Of The Dolls At Issue And Instead Allowed And Acquiesced To Their Transfer To Arsenic And Apple Pie, LLC, As His Capital Contribution In Kind.**     10

a.   Plaintiff Transferred Copyright Ownership          12
and Relinquished Claims of Ownership in the
Initial Partnership and Subsequent LLC, and
Has Admitted Not Retaining Those Rights in
Those Agreements

b.   Plaintiff cannot claim ownership since the          13
designs and concepts fall under the Work for
Hire doctrine and were therefore the property
of Arsenic

c.   Plaintiff knowingly and intentionally          16
surrendered and waived any copyright interests
in the "Trailer Trash" doll designs by personally
inscribing and approving a copyright claim on the
Trailer Trash doll boxes which reserved all rights
to Arsenic & Apple Pie, LLC

d.  Plaintiff Montwillo, in His Sworn Bankruptcy          17
Petition, Denied Any Ownership or License Rights
to the Copyrights at Issue

2.   Plaintiff Montwillo's purported copyright registrations          18
cannot support an infringement claim because their subject
matter fails to meet the originality requirement of Copyright
law, and are merely genre elements barred from copyright
registration per the "scenes a faire" doctrine under
Federal Law.

Conclusion          23

Order (Proposed) of Summary Judgment

**AUTHORITIES**

**Cases**

Apple Computer v. Microsoft Corp., 35 F. 3d 1444 (9th Cir. 1994)          23

Aymes v. Bonelli, 980 F. 2d 857 (2d Cir. 1992)          15

Carol Barnhart. Inc. v. Economy Cover Corp. (773 F. 2d 411 (2d Cir. 1985)          22

Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)          9

Community for Creative Non-Violence v. Reid, 490 U.S. 730 (1989).          14

Ets-Hokin v. Skyy Spirits, Inc., 323 F. 3d 763 (2003)          22

Feist Publications, Inc. v. Rural Telephone Service Co., (499 U.S. 340 (1991)          18

Forsberg v. Pacific N.W. Bell Tel. Co., 840 F.2d 1409, 1418 (9th Cir.1988)          9

Galliano v. Harrah's Operating Co., 424 F. Supp. 2d 1211 (C.D. Cal. 2006)          22

Hoste v. Radio Corp. of America, 654 F.2d 11 (6th Cir.1981)          9

Polar Bear Prods., Inc. v. Timex Corp., 384 F.3d 700, 706 (9th Cir.2004)          9

S.A. Empresa v. Walter Kidde & Co., 690 F.2d 1235, 1238 (9th Cir.1982)          9

Stone v. Williams, 970 F.2d 1043, 1049-50 (2nd Cir.1992) cert. denied, 508 U.S. 906, 113 S.Ct.
2331, 124 L.Ed.2d 243 (1993)          9

The Martha Graham School and Dance Foundation, Inc. v. Martha Graham Center of
Contemporary Dance, Inc., 374 F. Supp. 355 (SDNY 2005), affirmed under the same name in
466 F. 3rd 97 (C.A. N.Y. 2006).          15

Todd v. Montana Silversmiths, 379 F. Supp. 2d 1110 (2005)          23

Wood v. Santa Barbara Chambers of Commerce, Inc., 507 F.Supp. 1128, 1135 (D.Nev.1980)
          9

**Statutes**

Federal Rules of Civil Procedure, Rule 56(c); Rule 56(e)

17 U.S.C. § 102(a)

17 U.S.C. § 201(b)

17 U.S.C.A. § 507(b)

**Exhibits**

| Item | Deposition Exhibit | Declaration Exhibit |
|---|---|---|
| Stipulated Injunction – Mattel v. In-Jean-Ious | 3 | 1 |
| Partnership Agreement | 2 | 2 |
| Copyright Notice on Doll Boxes | 5 | 3 |
| Bankruptcy Petition & Schedules | 6 | 4 |
| Copyright Certificate – Talking Pregnant Doll | 7 | 5 |
| Copyright Certificate – Talking Boy Doll | 7 | 6 |
| Copyright Certificate - Trailer Trash Doll | 7 | 7 |
| Copyright Certificate – Redhead Drag Queen Doll | 7 | 8 |
| Copyright Certificate – Blonde Drag Queen Doll | 7 | 9 |
| Letter 7/12/04 from P. Montwillo to D. Wong | 4 | 10 |
| Arsenic & Apple Pie, LLC Operating Agreement | | Exhibit A to Tull Affidavit |

**Declarations/Affidavit**

Marc H. Greenberg

William Tull

David Y. Wong

**Deposition Transcripts**

Montwillo Deposition pages: 49, 50, 52, 53, 70, 71, 75, 76, 77, 88, 90, 91, 92, 93, 94, 95, 107, 122, and 123                Attached to Declaration of Greenberg

Montwillo Deposition pages:  41, 44, 67, 68, 108        Attached to Declaration of Wong

David Y. Wong, Attorney at Law (SBN 105031)
100 Shoreline Highway, Suite 100 B
Mill Valley, CA  94941
Tel: (415) 339-0430
Fax:  (415) 332-8679

Law Office of Marc H. Greenberg (SBN 88493)
536 Mission Street, Suite 2323
San Francisco, CA 94105
Tel: (415) 442-6611

Attorneys for Defendants William Tull, Daniel Gibby and
Gibby Novelties, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL MONTWILLO, an individual | )  CASE NO.  C 07 3947 SI |
| Plaintiff, | )  Notice of Motion and Motion for Summary |
| vs. | )  Judgment of Defendants William Tull, Daniel<br>)  Gibby and Gibby Novelties, LLC |
| WILLIAM TULL; DANIEL GIBBY; | )  **(FRCP RULE 56(C)** |
| GIBBY NOVELTIES, LLC dba ARSENIC | )  April  25, 2008 |
| & APPLE PIE, a California Limited | )  9:00 a.m. |
| Liability Corporation and DOES 1 through | )  Judge Illston, Courtroom 10 |
| 20, inclusive, | ) |
| Defendants. | )  The Federal Building<br>)  450 Golden Gate Avenue<br>San Francisco, CA  94102 |
| And related Counter-Claim | |
| | Complaint filed:  August 1, 2007 |

Defendant and Counter-Claimant WILLIAM TULL, and Defendants DANIEL GIBBY and

GIBBY NOVELTIES, LLC, (hereinafter cumulatively referred to as "Defendants")  hereby move

this Court for an Order of Summary Judgment in their favor and against Plaintiff PAUL

MONTWILLO on the Complaint.  Defendants' motion shall be heard at 9:00 a.m.  on April 25,

2008, in Department 10 of the above Court and shall be based on this Notice of Motion and Motion, the attached memorandum of points and authorities, the Affidavit of William Tull, the Declaration in support of Marc H. Greenberg, and the deposition testimony of Plaintiff Montwillo as reflected in the attached transcript excerpts, and on such oral and testamentary evidence and argument to be presented at the hearing of the motion, and on the papers and files of this Court.

Dated:  March 20, 2008

_____

David Y. Wong, Esq.
Marc H. Greenberg, Esq.
Attorneys for Defendants William Tull, Daniel Gibby and Gibby Novelties, LLC

## MOTION FOR SUMMARY JUDGMENT

Defendants William Tull, Daniel Gibby and Gibby Novelties, LLC, hereby move this Court for an Order of Summary Judgment in their favor and against Plaintiff Paul Montwillo on his Complaint. Defendants move for summary judgment against Plaintiff and the single claim for relief contained in his Complaint for copyright infringement on the following three grounds:

1.  Plaintiff's Complaint is barred by the Three Year Statute of Limitations applicable to copyright infringement claims;

2.  Plaintiff Montwillo, by his own actions, inaction, and admissions, and by operation of the copyright Work for Hire Doctrine, relinquished and waived any claim of copyright he may have otherwise possessed in the design of the dolls at issue and instead allowed and acquiesced to their transfer to Arsenic and Apple Pie, LLC, as his capital contribution in kind; and

3.  Plaintiff Montwillo's purported copyright registrations cannot support an infringement claim because their subject matter fails to meet the originality requirement of Copyright law, and are merely genre elements barred from copyright registration per the "scenes a faire" doctrine under Federal Law.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT AGAINST THE COMPLAINT OF PLAINTIFF
PAUL MONTWILLO**

Defendants William Tull, Daniel Gibby and Gibby Novelties, LLC, hereby submit their
Memorandum of Points and Authorities in Support of Summary Judgment against the Complaint
of Plaintiff Montwillo.

## A.  Introduction and Case Background

This action filed by Plaintiff Montwillo seeks damages from Defendants for the alleged
infringement of copyrights owned by Montwillo.   The copyrights in question are described in
detail in the Complaint and generally constitute five different doll "designs" which Plaintiff
conceived and apparently obtained copyright registration to on July 2 and July 13, 2004.    They
are as follows:

1.      "Trailer Trash Doll"

2.      "Redhead Drag Queen"

3.      "Blonde Drag Queen"

4.      "Talking Pregnant Trailer Trash Doll", and

5.      "Male Mullet Trailer Trash Doll"

The origin of the dolls and the instant dispute can be traced to 1996 when Montwillo first
began altering the appearance of and cross-dressing Mattel's Barbie Doll line.  (Plaintiff's
Complaint, Paragraph 8)  Out of the initial interest and buzz over the dolls, Montwillo and Tull
began producing the altered Barbie Dolls, named "Trailer Trash Barbie" and sold them in Tull's
store, In Jean Ious.  (Affidavit of Tull Paragraph 4)

Although the dolls were only moderately popular, the buzz caught the attention of Mattel,
Inc., which filed suit against In Jean Ious and Montwillo, aka "Paul Hansen," for trademark and

copyright infringement in this Court, USDC Case No. C97-0012 EFL.    The case against In

Jean Ious was settled in March of 1997, with Tull's business agreeing not to produce, sell or

distribute any dolls based on the Barbie and Ken product lines or themes.  (Exhibit 3 to

Deposition of Montwillo and Exhibit 1 to Declaration of Greenberg)  The case against Montwillo

is believed to have been settled shortly thereafter along the same terms.

In July of 1997, with the Mattel lawsuit was behind them, Montwillo and Tull agreed to try

making "trailer trash" dolls once again.  They formed a partnership called Arsenic & Apple Pie,

evidenced by a written partnership agreement (Exhibit 2 to Depo. of Montwillo and Exhibit 2 to

Declar. of Greenberg), under which Montwillo was responsible for "Art Direction, Design and

Advertising"…, including "product design".  Tull was responsible for the financial aspects of the

business.  The term of the Partnership Agreement was two years, or until a limited liability

company was formed.

In April of 1999, Montwillo and Tull converted their partnership into a limited liability

company before production of the new Trailer Trash Doll.  Named Arsenic & Apple Pie, LLC

(hereafter "Arsenic"), the Operating Agreement, (Exhibit A to Affidavit of Tull), continued to

define the responsibilities of Montwillo and Tull in language taken directly from the now-

superseded Partnership Agreement.    Montwillo and Tull were named co-Managing Members,

each holding a 50% managerial and ownership interest.  More importantly, Montwillo was again

responsible for art direction, design and creative aspects of the business, including "…product

design and packaging…".    Tull was again responsible for managing and underwriting the

business.

No where in the aforementioned partnership agreement or in the Operating Agreement

of Arsenic did Montwillo reserve, request, or otherwise claim ownership to the intellectual

property or copyrights in any of the trailer trash dolls. (Depo. of Montwillo 52:13-53:16).

Indeed, Montwillo further concedes that no writings exist which evidence his intent to license the

doll designs to Arsenic.  (Depo. of Montwillo 44:8-20).

In the years that followed, Montwillo, in his capacity as a member-owner of Arsenic,

designed, developed and helped market the first three Trailer Trash Doll models.  After the initial

Trailer Trash Doll, Arsenic developed and produced a Blonde Drag Queen and Redhead Drag Queen Doll, and developed a pre-production prototype of the Pregnant talking doll. All dolls were manufactured, developed, financed and distributed by Arsenic. (Depo. of Montwillo 70:18 – 71:7; (Affidavit of Tull, Paragraph 10).

Montwillo, as called for under the Operating Agreement, was also actively involved in the design and artwork of the cardboard package in which each doll was sold. (Depo. of Montwillo 41:17-21; 67:9-68:6; 70:11-17) Significantly, on the back of each box, Montwillo admits that on the back of each package appears a copyright notice on behalf of *Arsenic & Apple Pie*. (Exhibit 5 to Depo. of Montwillo and Exhibit 3 to Declar. of Greenberg).

From 1999 until about 2003, Arsenic conceived and started development of two additional doll models, a pregnant doll and a male doll. (Affidavit of Tull Paragraph 12). Of the two dolls, only the pregnant doll progressed to the prototype stage, and neither doll went into production. (Affidavit of Tull Paragraph 12) After several years of disappointing sales and the absence of any net profits, Arsenic was floundering and none of the first priority loans made to it by Tull had been repaid. (Affidavit of Tull Paragraph 12) Consequently, when the time came to decide whether to invest more money to further develop and produce the "talking" and "male" doll, the Company elected to put both projects on hold indefinitely. (Affidavit of Tull Paragraph 12)

In or about 2003, it was disclosed that Montwillo had filed a Petition in bankruptcy in March of 2002. (Exhibit 6 to Depo. Of Montwillo and Exhibit 4 to Declar. of Greenberg). Curiously, Schedule B of Montwillo's Petition listed his membership interest in Arsenic as the only significant asset he owned. Asked to list and identify any copyrights or licenses of any kind that he owned, Montwillo stated under oath that he had "None." Had he identified any licenses of copyrights, the Bankruptcy Trustee would likely have seized these assets for the estate and eventually transferred ownership to Montwillo's creditors.

Arsenic's Operating Agreement also provided that the Company would wind up and dissolve in the event of a triggering event, one of which was defined as a member filing a petition in bankruptcy (Section 8.3). With notice of Montwillo's bankruptcy, Arsenic was thus

forced to windup and dissolve as per its Operating Agreement.    The dissolution and windup

was initiated in June of 2004, and the Company was formally dissolved on July 12, 2004.

(Affidavit of Tull Paragraph 13)

At the time, Arsenic's tangible assets consisted primarily of unsold doll inventory

generously valued at $35,763.  (Affidavit of Tull Paragraph 14) Arsenic, however, had

outstanding liabilities of $88,283, mostly unpaid loans owed to Tull.  As stipulated by the

Operating Agreement, Arsenic liquidated all of its assets and offered them for sale to the highest

bidder.   No bids or offers were received.  The debts of the Company were then paid in order of

priority. (Affidavit of Tull Paragraph 14)  After satisfaction of the Company's third party debts,

there was still an additional $70,000 in unpaid loans, so Tull was given the remaining doll

inventory and the intellectual property rights to all five doll designs and concepts in satisfaction

of his loans to Arsenic.  With no assets remaining, neither Tull nor Montwillo received anything

in consideration of their member interests in Arsenic upon dissolution.  (Affidavit of Tull

Paragraph 14)

On July 15, 2004, Daniel Gibby purchased Arsenic's left-over "trailer trash doll" inventory

and all intellectual property rights to the dolls from Tull. (Affidavit of Tull Paragraph 15)   Gibby

then transferred the dolls and the intellectual rights to the dolls to Gibby Novelties, LLC, a

company he had just formed, as his capital contribution.  Gibby Novelties, LLC then sold off the

existing trailer trash doll inventory, barely breaking even.  It also further developed and

produced two new talking dolls, roughly based on the two abandoned doll concepts acquired

from Arsenic, vis-à-vis Tull and Gibby.  (Affidavit of Tull Paragraph 15)

In the midst of Arsenic's dissolution and windup, in July of 2004, Montwillo secretly filed

copyright registrations with the Copyright Office in regard to the five Trailer Trash doll models

and concepts.  Registrations were submitted on July 2, 2004 for the two undeveloped doll

concepts:  a "Talking Pregnant Trailer Trash Doll" (Exhibit 7 to Depo of Montwillo and Exhibit 5

to Declar. of Greenberg) and a "Male Mullet Trailer Trash Doll" (Exhibit 7 to Depo of Montwillo

and Exhibit 6 to Declar. of Greenberg).   Two weeks later, on July 13, 2004, Montwillo submitted

registrations for a "Trailer Trash Doll" (Exhibit 7 to Depo of Montwillo and Exhibit 7 to Declar. of Greenberg ), a "Redhead Drag Queen" (Exhibit 7 to Depo of Montwillo and Exhibit 8 to Declar. of Greenberg) and a "Blonde Drag Queen" (Exhibit 7 to Depo of Montwillo and Exhibit 9 to Declar. of Greenberg).

The same day, July 13, 2004, Montwillo sent a letter by certified mail to Tull's attorney, David Y. Wong, (Exhibit 4 to Depo of Montwillo and Exhibit 10 to Declar. of Greenberg).  In his letter, Montwillo identified all five of the doll concepts and claimed ownership of the copyrights. Montwillo's letter also placed Defendants on notice that they were infringing on his copyrights and demanded a license fee of $10,000 for each doll.  (Deposition of Montwillo 107:18-108:1).

Despite his knowledge of Defendants' copyright infringement as of July 13, 2004, Montwillo waited more than three years, until August 1, 2007 to file an action for copyright infringement.

Based on the foregoing facts, supported by the attached affidavit, Declarations, exhibits, documents and excerpts from the deposition of Montwillo, Defendants submit that they are entitled to summary judgment as against Plaintiff's Complaint for copyright infringement.

## B.     Legal Argument

**Summary Judgment is appropriate when the uncontradicted evidence put forth by Defendants establishes that there is no genuine issue of material fact and that Defendants are entitled to judgment as a matter of law.**

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, Summary judgment will be granted if the evidence demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  When considering a motion for summary judgment, the court will view the facts in the light most favorable to the non-moving party, and draw any reasonable inferences in the non-moving party's favor.   The nonmoving party, however, "may not rest upon the mere allegations or denials of the party's pleading, but ...

must set forth specific facts showing that there is a genuine issue for trial." _Fed.R.Civ.P. 56(e)_; _Celotex Corp. v. Catrett_, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "A party cannot manufacture a genuine issue of material fact merely by making assertions in its legal memoranda." _S.A. Empresa v. Walter Kidde & Co._, 690 F.2d 1235, 1238 (9th Cir.1982). The district judge is not required to comb the record to find some reason to deny a motion for summary judgment." _Forsberg v. Pacific N.W. Bell Tel. Co._, 840 F.2d 1409, 1418 (9th Cir.1988).

In the instant matter, summary judgment is warranted in Defendants' favor since the facts clearly show that Plaintiff cannot prevail on his copyright infringement claim, even if the court views the evidence in the most favorable light. Defendants' confidence in their position is based on the facts set forth above, applied to any or all of the following three legal defenses.

## 1. Montwillo's Copyright Infringement Claim is Barred By the Three Year Statute of Limitations.

17 U.S.C.A. § 507(b) provides, in pertinent part, that no civil action for copyright infringement shall be maintained unless it is commenced within three years after the claim accrued.

A cause of action for **copyright infringement** accrues when one has knowledge of a violation or is chargeable with such knowledge. _Wood v. Santa Barbara Chambers of Commerce, Inc._, 507 F.Supp. 1128, 1135 (D.Nev.1980), _Polar Bear Prods., Inc. v. Timex Corp._, 384 F.3d 700, 706 (9th Cir.2004). Section 507(b) is clear on its face. The statute bars recovery on any claim for damages that accrued more than three years before commencement of suit. _Stone v. Williams_, 970 F.2d 1043, 1049-50 (2nd Cir.1992), _cert. denied_, 508 U.S. 906, 113 S.Ct. 2331, 124 L.Ed.2d 243 (1993); _Hoste v. Radio Corp. of America_, 654 F.2d 11 (6th Cir.1981).

Applied to the undisputed facts of the case, it is clear that Defendants are entitled to summary judgment as a matter of law on the sole claim of copyright infringement contained in Plaintiff's complaint. According to Plaintiff's own testimony, he believed and thus notified Defendants that they were infringing upon his copyrights when Arsenic liquidated its unsold

inventory of Trailer Trash Doll, Blonde Drag Queen, and Redhead Drag Queen dolls, and gave them to Tull in satisfaction of his loans.   Plaintiff's testimony thus clearly and indisputably demonstrates that he was aware of an infringement by Defendants letter as of July 13, 2004, giving him reason to demand payment.   Hence, as a matter of law, it must be concluded that Plaintiff was conscious of both his rights and the knowledgeable that a claim of infringement had accrued against Defendants as of July 13, 2004.  Montwillo's testimonial admission to this fact is as follows:

> Q.    *Did you prior to the filing of the copyright infringement lawsuit in this case, ever send notice to Arsenic & Apple Pie that you believed that they were violating your copyright?*
>
> A.    *You are looking at it.*
>
> Q.    *Okay. So in your view this letter of July 13, 2004, was you sending notice to them that they were violating your copyright.*
>
> A.    *Yes.*
>
> Deposition of Paul Montillo at 107:18-24 – 108:1

Using July 13, 2004 as the date of accrual, the last possible date that Plaintiff could have lawfully sued for copyright infringement was July 13, 2007.  Plaintiff, however, did not initiate this action for copyright infringement until August 1, 2007, several weeks after the expiration of the three year statute of limitations for copyright infringement.  As a matter of law, Defendants are entitled to summary judgment on the sole cause of action contained in Plaintiff's Complaint.

**2    Plaintiff Montwillo, By His Own Actions, Inaction, And Admissions, And By Operation Of The Copyright Work For Hire Doctrine, Relinquished And Waived Any Claim Of Copyright He May Have Otherwise Possessed In The Design Of The Dolls At Issue And Instead Allowed And Acquiesced To Their Transfer To Arsenic And Apple Pie, LLC, As His Capital Contribution In Kind**

Registration of a copyright under Federal Law creates merely a rebuttable presumption of validity and ownership. Upon proper evidence, the presumption may be dispelled and rendered cast aside if it can be shown that the registration was submitted improperly or is without merit.

As expressed above, Montwillo seeks damages for copyright infringement but his Complaint lacks any factual or legal support for his position. Beginning with the Arsenic Partnership and continuing with the Arsenic LLC, Montwillo agreed to create doll designs and concepts for Arsenic in exchange for a share of the profits. Neither he nor Arsenic contemplated or agreed that his works would be merely licensed to Arsenic, and the facts bear witness to the long-standing position of the parties that Montwillo's designs and concepts would be the sole and exclusive property of Arsenic and not retained by any individual member, as per the work for hire doctrine.

Montwillo's claim of copyright ownership is further refuted by the very existence of a copyright notice for Arsenic on each individual doll box. Montwillo's active participation in creating and designing the artwork for the doll packages, identifying Arsenic as the holder of its copyrights, clearly demonstrates the parties' understanding that the designs were owned by Arsenic and that Montwillo waived and abandoned any prior or subsequent claims.

Perhaps more troubling from an ethical and possibly criminal standpoint is the unmitigated hypocrisy of Plaintiff to sue Defendants for copyright infringement of doll designs dating back as early as 1998, when he has flatly denied under oath to the Bankruptcy Court the ownership of any and all copyrights, licenses or other intellectual property rights. Defendants submit that Plaintiff has been caught in a web of his own lies in that his bankruptcy petition filed in 2002 clearly disclaims any ownership of copyrights, licenses or other intellectual property rights.

In the instant matter, the undisputed facts show that:

a. Plaintiff knowingly and willingly transferred, conveyed and turned over ownership of all copyright interests in the dolls to Arsenic & Apple Pie, LLC in exchange for a half ownership interest and partial control of the Company;

b. To the extent that Plaintiff designed, conceived, or thought up creative elements of the Trailer Trash Dolls during the existence of Arsenic & Apple Pie, LLC, which elements are

now part of the instant copyright infringement claim, Plaintiff cannot claim ownership since the designs and concepts fall under the Work for Hire doctrine and were the property of Arsenic;

c.  Plaintiff knowingly and intentionally surrendered and waived any copyright interests in the "Trailer Trash" doll designs by personally inscribing and approving a copyright claim on the Trailer Trash doll boxes which reserved all rights to Arsenic & Apple Pie, LLC; and

d.  Plaintiff willfully abandoned and surrendered any copyright interests in the Trailer Trash doll designs when he failed to list or identify any copyrights or licenses in his sworn Petition before the Bankruptcy Court.

The evidence adduced during discovery in this case provides ample support for each of these points.

**a.  Plaintiff Transferred Copyright Ownership and Relinquished Claims of Ownership in the Initial Partnership and Subsequent LLC, and Has Admitted Not Retaining Those Rights in Those Agreements**

As noted previously, Plaintiff and Defendant Tull began their business venture as a partnership, which was documented by a written partnership agreement. (Exhibit 2 to Montwillo's deposition).  Paragraph 3 of the Partnership Agreement provides:

"Montwillo will be primarily responsible for Art Direction, Design, and Advertising of the product line.  This would include such things as: corporate identification, product design, package design, web site design and maintenance, and print advertising."

From this provision, it is clear that art direction and product design were duties Plaintiff would render for the benefit of the partnership, and later the LLC (the LLC Operating Agreement repeats these duties without modification).  When asked whether he reserved any rights to himself or claimed ownership of these designs in these agreements, Plaintiff admitted he had not:

Q.     *No, I'm talking about the operating agreement – within the four corners of the*

operating agreement and the partnership agreement, two documents.

Mr. SOMMERS:  All right. Then the document speaks for itself.

Mr. GREENBERG:  Right.

THE WITNESS:  No.

Q.     There is no statement of ownership by you of the copyright in the designs,
correct?

Mr. SOMMERS:  Objection, the document speaks for itself.

Mr. Greenberg.  Okay

Q.     Is that correct?

A.     There is no – no, there is no statement, that's correct.

Deposition of Paul Montwillo at 52:25 – 53:1-16.


Prior to this testimony, Plaintiff claimed that in the process of negotiating the LLC Operating

Agreement, he asked that certain language giving "intellectual property to the corporation" be

removed.  He was not, however, able to recall precisely what the language was, nor did he

retain any copies of this alleged language, or of the alleged correspondence regarding its

removal.  He did, however, again admit that there was no reservation of rights by him in the LLC

agreement:

Q.  Okay. Well, let's go back then to this question of a license agreement.  Aside from
having some language removed, which you indicated that you requested be done in
the LLC, in the Operating statement, the LLC, is there any specific statement that
reserves intellectual property rights, and in particular copyrights, to you personally?

A.     There is not.

Deposition of Paul Montwillo at 49:23-25 – 50:1-5.

These admissions establish, as undisputed fact, that Plaintiff agreed to create designs

for the partnership and later for the LLC, and never reserved any ownership interest in those

designs for himself.


**b.  Plaintiff cannot claim ownership since the designs and concepts fall under the**

**Work for Hire doctrine and were therefore the property of Arsenic**

The "work for hire" doctrine is an aspect of copyright law that attempts to answer the question of who owns intellectual property created by an employee in the course and scope of their employment.  The law creates a rebuttable presumption that works so created are the property of the employer.

The law is found at 17 U.S.C. § 201(b) which provides that

"(i)n the case of a work made for hire, the employer or other person for whom the work was prepared is considered the author for purposes of this title, and unless the parties have expressly agreed otherwise in a written instrument signed by them, owns all of the rights comprised in the copyright." *Id.*

The applicability of the doctrine is determined by an analysis of the extent to which the facts of the situation meet the criteria for determining "employee" status under Copyright law, criteria established by the Supreme Court in *Community for Creative Non-Violence v. Reid,* 490 U.S. 730 (1989).

In *Reid, supra*, the Supreme Court specified a multi-part test for analyzing how the general common law principles of agency law would be applied in work for hire cases.  The test elements to be considered are as follows:

1. The hiring party's right to control the manner and means by which the product is accomplished;
2. The skill required;
3. The source of the instrumentalities and tools;
4. The location of the work;
5. The duration of the relationship between the parties;
6. Whether the hiring party has the right to assign additional projects to the hired party;
7. The extent of the hired party's discretion over when and how long to work;
8. The method of payment (ie: one time or regular salary or draw);
9. The hired party's role in hiring and paying assistants;
10. Whether the work is part of the regular business of the hiring party;
11. Whether the hiring party is in business;
12. The provision of employee benefits; and
13. The tax treatment of the hired party.  *Reid, supra* at 752,

The Supreme Court in *Reid* noted that not one of these factors is determinative, and that the extent of control that the hiring party exercises over the details of the product is not dispositive.  Id.

In *Aymes v. Bonelli*, 980 F. 2d 857 (2d Cir. 1992) the Second Circuit held that the "*Reid* factors should not be merely tallied but should be weighed according to their significance in the case", and that the "*Reid* test was not intended to be applied in an mechanistic fashion". Id. at 861-62. The *Aymes* Court then went on to list the five factors that it believed should be given more weight in the analysis. They are:

1. The hiring party's right to control the manner and means by which the product is accomplished;
2. The skill required;
3. The provision of employee benefits;
4. The tax treatment of the hired party; and
5. Whether the hiring party has the right to assign additional projects to the hired party

The validity of the *Reid* factors in evaluating whether a person is an "employee" for purposes of the work for hire issue, as modified by the 2d Circuit in *Aymes*, was recently reaffirmed in the case of *The Martha Graham School and Dance Foundation, Inc. v. Martha Graham Center of Contemporary Dance, Inc.*, 374 F. Supp. 355 (SDNY 2005), affirmed under the same name in 466 F. 3rd 97 (C.A. N.Y. 2006).

The *Martha Graham* case involved, Graham, a famous dancer who founded the Center of Contemporary Dance which was dedicated to performing, among other works, the many famous dance sets she created and choreographed. Upon her death, a foundation created by her trust brought suit against the Center of Contemporary Dance for declaratory relief. At issue was the ownership of the copyrights to the dances Graham created. Central to the dispute was whether she was an "employee" for purposes of the work for hire doctrine. Merely calling her an "employee" of the Center would not be enough to determine the rights in question.

The District Court, in a lengthy and carefully written opinion, analyzed all thirteen of the *Reid* elements, and paid special focus on the five key elements cited in *Aymes*. Based thereon, the Court concluded that virtually all of the dances at issue were works for hire, and the property of the Center. On appeal, the Court of Appeal affirmed the District Court's ruling, and noted that the evidence established that the dance center exercised control over Graham's dances, and

that during her lifetime, she assigned the rights to those works to the Center.

As it relates to the matter now before this Court, it is undisputed that for the entire seven years that Montwillo and Tull produced trailer trash dolls, first in a partnership and then in an LLC, Plaintiff did all of his design work under the auspices of Arsenic and Apple Pie, and that the Company paid all of the expenses for his designs, and provided all of the means by which those designs went into production. Montwillo received a K-1 Partnership tax return, and had no understanding of himself, insofar as the Work for Hire doctrine applies, as an independent contractor. He never billed the LLC or partnership for his work, and received no royalty payments for his designs. He was entitled to a share of the profits. He admitted these facts in his deposition testimony. (Deposition of Montwillo at 70:18-25 – 71:1-7; 88:6-19; 90:3-12; 122:24-25 – 123:1-6).

Based on these admissions, and the applicability of the *Reid* and *Aymes* factors to these facts, as in the *Martha Graham* case, Plaintiff's contributions must be considered a work for hire for the benefit of the LLC as a matter of law. Plaintiff thus retains no ownership interest to support a copyright infringement claim – summary judgment is therefore warranted.


**c. Plaintiff knowingly and intentionally surrendered and waived any copyright interests in the "Trailer Trash" doll designs by personally inscribing and approving a copyright notice on the Trailer Trash doll boxes which reserved all rights to Arsenic & Apple Pie.**

Plaintiff's claim that he retained ownership to copyrights in the doll designs is further contradicted by the fact that the packaging he created for the dolls include a notice of copyright ownership listing Arsenic and Apple Pie as the owner. Copies of the back of the boxes, with the copyright notice seen towards the bottom of each package, were attached as Exhibit 5 to the Deposition of Montwillo. When asked to explain this apparent contradiction of claims, Mr. Montwillo could offer no rational explanation:

Q.    *If you owned the copyrights to these designs, why does the copyright notice say it's copyright Arsenic & Apple Pie on both of these?*

A.    *I don't know.  I own the copyrights to the dolls.*
Deposition of Paul Montwillo at 70:14-17.

The answer to the question is simple.  At that time, Plaintiff clearly understood that the dolls and their designs belonged to Arsenic, and not to him.  This same fact explains why, when Plaintiff declared bankruptcy, he made no claim of ownership to the copyrights or any license.

### d.  Plaintiff Montwillo, in His Sworn Bankruptcy Petition, Denied Any Copyright Ownership or License Rights to the Dolls.

In March of 2002, Plaintiff Montwillo filed a Voluntary Petition under Chapter 7 of the Bankruptcy Code.  A true and correct copy of that Petition and supporting Schedules,B & C is attached as Exhibit 6 to the Deposition of Montwillo (Exhibit 4 to the Declar of Greenberg).  In Schedule B – Personal Property, Montwillo was required, in response to Items 21 and 22 respectively, to identify any Patents, Copyrights and other intellectual property and any licenses, franchises or other general intangibles he owns, and to state the value of these assets.  In response to each of these requests, he denied that he owned any such assets, and showed a zero dollar value for them.

When asked to explain the obvious contradiction between his Bankruptcy Petition and his claim to have retained ownership to the copyrights which he allegedly licensed to the Partnership and LLC, Plaintiff could offer no credible explanation:

Q.    *As of two thousand – March of 2002, when you signed this document, was it true that you owned no copyrights of any value?*
MR. SOMMERS:  *Objection, calls for a legal conclusion, calls for a financial conclusion, speculation.*
THE WITNESS:  *No.*
MR. GREENBERG:  *It's not true?*
A.    *I didn't -- I did this without a lawyer.*
Q.    *I understand.*
A.    *I did not know what I was doing, but if I had to list every piece of artwork I've ever*

*made in my life, I mean, it would be impossible, you know, to list all of that. I guess I glossed over it. I didn't know what I was doing.*

Q.     *So, I'm accurate in saying that in this bankruptcy filing you didn't indicate any ownership interest in the doll designs, did you?*

A.     *Apparently not. I didn't indicate ownership of anything I ever designed in here. I'm not a lawyer.*

Deposition of Paul Montwillo at 75:11-25 – 76:1-2; 77:3-8.


Given Montwillo's adamant claim that he retained ownership of the copyright to the doll designs prior to 2002, his credibility is suspect. If he knew that he owned these assets, then his sworn statement to the Bankruptcy Court is a lie, which cannot be condoned by the common excuse of "I'm not a lawyer." This part of the Bankruptcy Schedule is clear and unambiguous – requiring no legal training to complete. Providing Montwillo the benefit of the doubt, and presuming that he was telling the truth in his Petition, it further evidences the undisputed fact that Montwillo never claimed ownership of intellectual property rights to the dolls because he knew he did not own them. Summary Judgment is thus warranted in favor of Defendants.


**3.     Plaintiff Montwillo's purported copyright registrations cannot support an infringement claim because their subject matter fails to meet the originality requirement of Copyright law, and are merely genre elements barred from copyright registration per the "scenes a faire" doctrine under Federal Law.**


Section 102(a) of the Copyright Act of 1976 (17 U.S.C. § 102(a)) provides that copyright protection extends to "original works of authorship". *Id.* In the seminal case of *Feist Publications, Inc. v. Rural Telephone Service Co.*, (499 U.S. 340 (1991), the Supreme Court denied copyright protection to the white pages of a phone directory because it lacked originality. The Court defined originality as a work which possessed "at least some minimal degree of creativity". *Id. at 341.* While acknowledging that the amount of creativity required is not a large amount, the

Court also noted that there are some works "in which the creative spark is utterly lacking or so trivial as to be virtually non-existent". *Id. at 359.*

With these rules in mind, Plaintiff's own admissions in deposition testimony establish that what he put together in the case of these dolls was not sufficiently original or creative to warrant copyright protection, as a matter of law, thereby warranting summary judgment on the grounds that the evidence in this case does not support a valid claim of copyright ownership. Where there is no copyright owned, there can be no infringement.

Plaintiff has admitted that he did not design, and in fact had nothing to do whatsoever, with the creation of four of the five plastic dolls used in the Arsenic line of doll products, which are here at issue. He admits that the bodies used for the first Trailer Trash Doll, and the first two Drag Queen Dolls, as well as the prototype Male Trailer Trash Doll, were all purchased and used without modification, by Arsenic. His contribution, by his own admission, was to dress the dolls up in stereotypical "trailer trash" clothing and accessories, and apply related makeup to the dolls. His testimony, containing these admissions, is as follows:

Q.      *Well, let's back up. With respect to those three dolls, Trailer Trash Doll, Blonde Drag Queen and Red Head Drag Queen, you didn't design the body. Is that correct?*

A.      *That's correct.*

Q.      *What did you design on those three dolls?*

A.      *The clothing. The pants. The accessories.*

Q.      *Okay.*

Q.      *And taking a look at the box we've got here, …I think we've already concluded that this is one of the designs, Trailer Trash Edition 1. Is that correct?*

A.      *Yes.*

Q.      *This particular design features the model, the doll in what looks to be a representation of blue jean shorts. I believe you previously made reference to these as "Daisy May" shorts?*

A.      *Daisy Duke shorts.*

Q.      *Daisy Duke shorts. And does that come from "The Dukes of Hazzard"*
        *television show?*

A       *Yes.*

Q.      *The character of Daisy Duke? That's how you were describing them.*

A.      *There was a reference, yes.*

Q.      *And the doll also is wearing a red and white checked halter top. Is that*
        *how you would characterize that garment?*

A.      *Well, I guess halter top isn't correct, but –*

Q.      *How would you describe it?*

A.      *I can't remember the correct word for that.*

Q.      *Is it a crop top?*

A.      *Crop top maybe, something. I don't know. Skimpy, skimpy thing on top.*

Q.      *Right. And the hairdo of the doll is pig tails?*

A.      *Yes.*

Q.      *Pig tails and bangs?*

A.      *And black roots, yes.*

Q.      *And notably the black roots.*

A.      *And the cigarette, yes. And the blue eye shadow.*

Q.      *Okay. Cigarettes, blue eye shadow. Have you ever seen characters in*
        *literature, movies or any other genre, where these elements are*
        *incorporated to convey rural or poor white individuals?*

A.      *Well, that's what I was trying to convey; I mean, it obviously stems from a*
        *stereotype.*

Deposition of Paul Montwillo, at 91:6 – 93:8.


Montwillo made similar admissions regarding the lack of originality in his choice of

clothing and accessories for the Drag Queen dolls he worked on:

Q.      *With respect to the Blonde Drag Queen, what elements did you add to that*
        *design?*

A.      *Everything but the body.*

Q.      *And what were those elements; what is the everything?*

A.      *Dress, purse, hair, makeup. Everything. Packaging. Whatever.*

Q.    *And how would it be that someone looking at that doll would know that is was*
      *supposed to be a drag queen as opposed to an actual female?*

A.    *It has a male body. It's exaggerated makeup. It's a drag queen.*

Q.    *From your expression –*

A.    *I'm like, what? It's a drag queen.*

Q.    *Right. My sense is that the elements that you incorporated were so clear that*
      *anyone looking at it would know it was a drag queen. Is that right?*

A.    *That's correct.*

Deposition of Paul Montwillo at 93:21-25 – 94:1-13.

Mr. Montwillo further admitted that the Blonde Drag Queen was modeled after Marilyn

Monroe, because she is a popular source of imitation by drag queens:

Q.    *Well, what choice did you make as to what the hair should be for the Blonde*
      *Drag Queen?*

R.    *MR. SOMMERS: Objection, vague. Go ahead.*

A.    *I chose long blonde hair.*

Q.    *Why?*

A.    *I knew I was going to do a white dress. So a lot of drag queens like to do*
      *Marilyn, so I put the blonde in a white dress.*

Q.    *Sort of to evoke the drag queen version of Marilyn?*

A.    *Yes.*

Deposition of Paul Montwillo at 95:2-13.

Mr. Montwillo, in this testimony, admits that he purposely used stereotypical, genre

elements that purchasers of these dolls would recognize and relate to. These are common

elements that are found in numerous popular depictions of "trailer trash" characters in television

shows like *The Dukes of Hazzard, Married with Children,* and comic strips like *L'il Abner.* These

are classic and well-recognized stereotypes, with nothing original in their execution to warrant

copyright protection.

Mr. Montwillo's only design claim is to have participated in the design for a pregnant

trailer trash doll. Here again, the design of a generic style mannequin has been held not be a

valid subject of copyright protection in the *Carol Barnhart. Inc. v. Economy Cover Corp. (773 F. 2d 411 (2d Cir. 1985)* case.

Similarly, in *Galliano v. Harrah's Operating Co.*, 424 F. Supp. 2d 1211 (C.D. Cal. 2006), the Court held that copyright protection did not extend to garment designs on the grounds that they are useful articles that are the product of a craft or trade, rather than art. *Id at 419-22.* The novelty of what Plaintiff created is in the idea of taking the Barbie doll figure and dressing it up in clothes, makeup and accessories that are contrary to Barbie's "All-American" positive image – so by dressing Barbie dolls in stereotypical trailer trash clothing, humor is generated. Funny as this may be to some, the idea isn't afforded protection under Copyright law – and the embodiment of the idea isn't a sufficiently original artistic expression to warrant copyright protection.

A further ground supporting a grant of summary judgment based on a lack of copyright protection available for a work is present in this case based on the fact that Montwillo, by his own admission, dressed these dolls in stereotypical clothing – in other words the clothing designs he used were not original to him. The doctrine of "scenes a faire" bars a grant of copyright protection for these types of genre usages. Montwillo's admission, in the deposition testimony cited above, that he based his "designs" on non-original stereotypical clothing and accessories, supports a finding that the "scenes a faire" defense warrants summary judgment in this case.

The validity of a "scenes a faire" defense, as a basis for a grant of summary judgment in a copyright infringement case, has previously been ruled on by this Court in the case of *Ets-Hokin v. Skyy Spirits, Inc.* In the *Ets-Hokin* case, this Court granted summary judgment to defendant Skyy Spirits on a variety of grounds, including that the "scenes a faire" doctrine was a valid defense to Plaintiff's infringement claim. Judge Illston's decision was affirmed by the Court of Appeals for the Ninth Circuit in *Ets-Hokin v. Skyy Spirits, Inc.*, 323 F. 3d 763 (2003). Chief Judge Schroeder, writing for the unanimous Court, explained the "scenes a faire" doctrine

thusly:

> "Likewise, when similar features of a work are "as a practical matter
> indispensable, or at least standard, in the treatment of a given idea, they are
> treated like ideas and are therefore not protected by copyright." Apple Computer
> v. Microsoft Corp., 35 F. 3d 1444 (9th Cir. 1994)". Id. at 765-66.

In a similar case, a District Court in Colorado, in *Todd v. Montana Silversmiths*, 379 F.

Supp. 2d 1110 (2005), granted summary judgment against a plaintiff who alleged copyright

infringement against a jewelry manufacturer who, plaintiff claimed, had infringed her original

jewelry designs, which used barbed wire for "Western-themed" jewelry. *Id.*

Noting that plaintiff's copyright registration of her designs only created a rebuttable

presumption of copyright validity, the Court held that defendants could seek to rebut that

presumption by presenting evidence that cast doubt on the copyrightability of the work in

question. *Id.* at 1111. The Court found that plaintiff's designs made no original contributions to

barb-wire jewelry that do not already exist in ordinary public domain barbed-wire, "so as a result,

her jewelry lacks sufficient originality to be the subject of a valid copyright." *Id.* The Court further

noted that "she has taken the constituent elements of barbed-wire and arranged them in a way

that by all objective measures still matches the elemental arrangement of barbed-wire". *Id.* at

1113.

The foregoing authorities, coupled with the deposition testimony admissions of Plaintiff

Montwillo, provide ample basis for a grant of summary judgment in this case on the grounds that

the claim of copyright here fails due to the lack of original content in the doll "designs", and the

fact that the elements in these designs constitute unprotectible scenes a faire elements.


C.    **CONCLUSION**


As set forth above, the undisputed facts presented by Defendants repeatedly show, as a

matter of law, that Defendants are entitled to Summary Judgment on the Complaint filed by

Plaintiff. First and foremost, Summary Judgment is warranted on the grounds that Plaintiff's

claim of copyright infringement accrued more than three years before the initiation of this action,

thus Plaintiff is barred by the Statute of Limitations applicable to copyright claims.  Second, the

undisputed facts show a plethora of reasons why his copyright infringement action must fail

based on the fact that he does not own the copyrights.  To summarize, Plaintiff voluntarily

agreed to contribute any doll designs he may have had in exchange for a share in the

partnership, and later the Limited Liability Company named Arsenic.  His work for Arsenic, in

creating and developing the dolls for production became the property of Arsenic based on the

copyright doctrine of work for hire.  Moreover, Montwillo's admitted participation in designing

and creating the individual doll packages which identified Arsenic as the copyright owner

demonstrates beyond a doubt that Arsenic, not Montwillo, owned the doll copyrights.  And

finally, the clear and unambiguous denial under oath of Plaintiff, in his Bankruptcy Petition to the

question of whether he owned any licenses, copyrights or patents, shows as of 2002, Plaintiff

understood the copyrights belonged to Arsenic.

Lastly, the undisputed facts of the case show that Defendants are entitled to Summary

Judgment based on the fact that the doll design elements which Plaintiff attempted to register

were, in fact, uncopyrightable and ineligible for copyright protection.  Design elements which are

based entirely on common stereotypes and similar genre concepts are not recognized under

copyright law and cannot support the instant claim for infringement.

Defendants thus respectfully request that this Court issue the attached Order granting

Defendants' Motion for Summary Judgment.


Respectfully Submitted,


DATED:    March 20, 2008                    _____

David Y. Wong, Attorney at Law

Marc H. Greenberg, Attorney at Law

Attorneys for Defendants William Tull, Daniel

Gibby and Gibby Novelties, LLC

1  David Y. Wong, Attorney at Law (SBN 105031)
   100 Shoreline Highway, Suite 100 B
2  Mill Valley, CA  94941
   Tel: (415) 339-0430
3  Fax:  (415) 332-8679

4  Law Office of Marc H. Greenberg (SBN 88493)
   536 Mission Street, Suite 2323
5  San Francisco, CA 94105
   Tel: (415) 442-6611

6

7  Attorneys for Defendants William Tull, Daniel Gibby and
   Gibby Novelties, LLC

8

9

10                    UNITED STATES DISTRICT COURT

11                   NORTHERN DISTRICT OF CALIFORNIA

12

13  PAUL MONTWILLO, an individual      )   CASE NO.  C 07 3947 SI
                                       )
14              Plaintiff,             )   Order (Proposed) Granting Motion for Summary
                                       )   Judgment of Defendants William Tull, Daniel
15  vs.                                )   Gibby and Gibby Novelties, LLC
                                       )   **(FRCP RULE 56(C)**
16  WILLIAM TULL; DANIEL GIBBY;        )
17  GIBBY NOVELTIES, LLC dba ARSENIC   )   April 25, 2008
    & APPLE PIE, a California Limited  )   9:00 a.m.
18  Liability Corporation and DOES 1 through )   Judge Illston, Courtroom 10
    20, inclusive,                     )
19                                     )
                                       )   The Federal Building
20              Defendants.            )   450 Golden Gate Avenue
    _____      San Francisco, CA  94102
21  And related Counter-Claim
    _____
22                                         Complaint filed:  August 1, 2007

23

24

25       The motion of Defendant and Counter-Claimant WILLIAM TULL, and Defendants

26  DANIEL GIBBY and GIBBY NOVELTIES, LLC, (hereinafter cumulatively referred to as

27  "Defendants") for an Order of Summary Judgment in their favor and against Plaintiff PAUL

28  MONTWILLO on the Complaint in the above-entitled action came on regularly for hearing on

April 25, 2008.  The Court, having considered the Motion, the accompanying Memorandum of Points and Authorities and supporting Declarations, the arguments of the parties and all materials in the file in this matter, and GOOD CAUSE APPEARING THEREFOR, HEREBY FINDS AS FOLLOWS:

Defendants have established to the satisfaction of the Court that there is no triable issue of material fact remaining and that Defendants are entitled to summary judgment as a matter of law based on the following findings:

1. Plaintiff's Complaint is barred by the Three Year Statute of Limitations applicable to copyright infringement claims;

2. Plaintiff Montwillo, by his own actions, inaction, and admissions, and by operation of the copyright Work for Hire Doctrine, relinquished and waived any claim of copyright he may have otherwise possessed in the design of the dolls at issue and instead allowed and acquiesced to their transfer to the Arsenic and Old Lace LLC as his contribution to the LLC; said designs and dolls are now the sole  property of Gibby Novelties, LLC; and

3. Plaintiff Montwillo's purported copyright registrations cannot support an infringement claim because their subject matter fails to meet the originality requirement of Copyright law, and are merely genre elements barred from copyright registration per the "scenes a faire" doctrine under Federal Law.


It is therefore the Order of this Court that Defendants Motion for Summary Judgment **Be, and Hereby Is, Granted.**


Dated:                                            United States District Court for the Northern District


                                                  _____

                                                  Honorable Susan Illston, Judge

MONTWILL V. TULL, ET AL.  USDC Action No. C 07 3947 SI                              2

Order Granting Summary Judgment for Defendants Tull, Gibby and Gibby Novelties, LLC