David Y. Wong, Attorney at Law (SBN 105031)
100 Shoreline Highway, Suite 100 B
Mill Valley, CA  94941
Tel: (415) 339-0430
Fax:  (415) 332-8679

Law Office of Marc H. Greenberg (SBN 88493)
536 Mission Street, Suite 2323
San Francisco, CA 94105
Tel: (415) 442-6611

Attorneys for Defendants William Tull, Daniel Gibby and
Gibby Novelties, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL MONTWILLO, an individual | ) CASE NO.  C 07 3947 SI |
| Plaintiff, | ) |
| | ) Declaration of Marc H. Greenberg in Support of |
| vs. | ) Motion for Summary Judgment of Defendants |
| | ) William Tull, Daniel Gibby and Gibby Novelties, |
| WILLIAM TULL; DANIEL GIBBY; | ) LLC |
| GIBBY NOVELTIES, LLC dba ARSENIC | ) **(FRCP RULE 56(C)** |
| & APPLE PIE, a California Limited | ) |
| Liability Corporation and DOES 1 through | ) April 2 5 2008 |
| 20, inclusive, | ) 9:00 a.m. |
| | ) Judge Illston, Courtroom 10 |
| Defendants. | ) |
| And related Counter-Claim | ) The Federal Building |
| | 450 Golden Gate Avenue |
| | San Francisco, CA  94102 |
| | |
| | Complaint filed:  August 1, 2007 |

I, Marc H. Greenberg, declare:

1.    I am an attorney licensed by the State of California, admitted to practice before this Court since 1979, and I am co-counsel for Defendants William Tull, Daniel Gibby and Gibby Novelties, LLC. I am authorized by my clients to make this Declaration in support of their Motion for Summary Judgment, filed herewith.

2.    On the afternoon of March 10, 2008, I conducted the deposition of the Plaintiff, Paul Montwillo, in this action. Mr. Montwillo was represented in his deposition by his attorney, Stephen A. Sommers.

3.    During the course of the deposition, a series of documents were identified and marked as Exhibits to the deposition. Two of the marked deposition exhibits were comprised of several documents marked collectively, specifically deposition Exhibit Number 5 (consisting of two pages depicting the back of the Trailer Trash Doll Edition 1 and Edition 2 respectively) and Exhibit Number 7 (consisting of the front page (back page was not produced) of five separate copyright registration certificates for five different doll designs).

4.    Seven of the nine Exhibits marked in the deposition of Plaintiff Montwillo are referenced in Defendants' Memorandum of Points and Authorities filed in support of their Motion for Summary Judgment. They have been renumbered to avoid confusion. In the case of the copyright registration certificates, they have been renumbered as separate exhibits for this Motion. The renumbered Exhibits referenced in the Memorandum of Points and authorities are as follows:

| Item | Deposition Exhibit | Memo Exhibit |
| --- | --- | --- |
| Stipulated Injunction – Mattel v. In-Jean-Ious | 3 | 1 |
| Partnership Agreement | 2 | 2 |
| Copyright Notice on Doll Boxes | 5 | 3 |
| Bankruptcy Petition & Schedules | 6 | 4 |
| Copyright Certificate – Talking Pregnant Doll | 7 | 5 |

| | | |
|---|---|---|
| Copyright Certificate – Talking Boy Doll | 7 | 6 |
| Copyright Certificate - Trailer Trash Doll | 7 | 7 |
| Copyright Certificate – Redhead Drag Queen Doll | 7 | 8 |
| Copyright Certificate – Blonde Drag Queen Doll | 7 | 9 |
| Letter 7/12/04 from P. Montwillo to D. Wong | 4 | 10 |

A true and correct copy of each of these ten documents, made from the copies attached as exhibits to the deposition transcript of the deposition of Paul Montwillo, is attached hereto and renumbered as set forth herein.

4.    The Memorandum of Points and Authorities also contains citations to deposition testimony of Plaintiff Paul Montwillo.  Attached hereto and incorporated by reference herein are true and correct copies of the deposition transcript pages, in full, wherein each of the cited testimony excerpts may be found.  The pages attached are arranged in numerical order, as follows:  Pages 49, 50, 52, 53, 70, 71, 75, 76, 77, 88, 90, 91, 92, 93, 94, 95, 107, 122, and 123.


I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that I am able to testify competently thereto.

Executed in San Francisco, California on March 19, 2008.


Dated:



Marc H. Greenberg

**EXHIBIT 1**

1  QUINN EMANUEL URQUHART & OLIVER, LLP
      Adrian M. Pruetz (Bar No. 118215)
2      Crady L. White (Bar No. 169157)
      Anna Y. Joo (Bar No. 183148)
3  865 South Figueroa Street, 10th Floor
   Los Angeles, California  90017-2543
4  (213) 624-7707

5  Attorneys for Plaintiff
   Mattel, Inc.

6

7

8                 UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10               SAN FRANCISCO HEADQUARTERS

11  MATTEL, INC., a Delaware        )    CASE NO. C-97-0012 EFL
    corporation,                    )
12                                  )
                      Plaintiff,    )    STIPULATED INJUNCTION BY
13                                  )    DEFENDANT IN-JEAN-IOUS, INC.
         v.                         )
14                                  )
    IN-JEAN-IOUS, INC., a           )
15  California corporation; PAUL    )
    HANSEN, an individual;         )
16  VARIOUS JOHN DOES, JANE DOES,   )
    and XYZ COMPANIES,              )
17                                  )
                      Defendants.   )
18                                  )
19  _____ )

20

21

22

23

24

25

26

27

28

**RECEIVED**

MAR 2 1 1997

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

**DEFENDANT'S EXHIBIT**
3
8/10/08 Montville

04513/123884.1

1    Plaintiff Mattel, Inc. and defendant In-Jean-Ious,

2  Inc., by their attorneys, hereby stipulate as follows with

3  respect to this action:

4    A.    In-Jean-Ious, Inc. and its principals, directors,

5  officers, agents, servants, employees, successors and assigns,

6  and all those in active concert or participation with them, will

7  immediately and permanently cease manufacturing, producing,

8  distributing, circulating, selling, offering for sale,

9  advertising, importing, exporting, promoting or publicly

10  displaying any product or thing bearing any simulation,

11  reproduction, counterfeit, copy or confusingly similar likeness

12  of Mattel's BARBIE® doll line Trademarks, BARBIE® doll line

13  Copyrights, BARBIE® doll line Product or Packaging Trade Dress or

14  KEN® Product Trade Dress, or engaging in any other activity

15  constituting an infringement of Mattel's BARBIE® doll line

16  Trademarks, BARBIE® doll line Copyrights, BARBIE® doll line

17  Product or Packaging Trade Dress, KEN® Product Trade Dress or of

18  Mattel's rights in, or to use or to exploit, said trademarks,

19  copyrights and trade dress or constituting any dilution of

20  Mattel's name, reputation or good will, including but not limited

21  to:

22    1.    Imitating, copying or making unauthorized use of

23       Mattel's Registered Trademarks in its BARBIE® line of dolls,

24       which includes the KEN® doll and other BARBIE® doll family

25       and friend dolls, including but not limited to Mattel's

26       Registered Trademarks Nos. 689,055, 726,935, 741,208,

27       768,397, 774,892, 799,068, 884,564, 907,137, 1,000,125,

28       1,461,136, 1,476,981,  1,476,090, 1,476,981, 1,477,905,

-2-

1,493,304, 1,503,153, 1,506,108, 1,549,304, 1,564,784,

1,564,789, 1,567,336, 1,572,146, 1,687,244, 1,710,196,

1,773,571, 1,760,729, 1,780,437, 1,897,052, 1,940,997,

1,947,330, 1,988,932, 1,995,873, 1,996,483, 2,016,054,

2,016,384 and 2,037,634 (hereinafter "Barbie Trademarks").

2.    Imitating, copying or making unauthorized use of Mattel's Registered Copyrights in the BARBIE® line of dolls, which includes the KEN® doll and other BARBIE® doll family and friend dolls, and packaging for the BARBIE® line of dolls and products associated with the BARBIE® line of dolls, including but not limited to Mattel's Certificates of Copyright Registration Nos. GP 121682, RE 280637, RE 280638, RE 374906, RE 664481, RE 664482, VA 121837, VA 121923, VA 157488, VA 157489, VA 214712, VA 222223, VA 222225, VA 226313, VA 286513, VA 287403, VA 290561, VA 290562, VA 297202, VA 323785, VA 351455, VA 370521, VA 373201, VA 376038, VA 377302, VA 426477, VA 454723, VA 623672, VA 639942, VA 722238 (hereinafter "Barbie Copyrights").

3.    Imitating, copying or making unauthorized use of Mattel's BARBIE® doll line Packaging Trade Dress, including but not limited to the following elements:

(a)    background or trim in specific shades of pink;

(b)    the name of the products in yellow and/or white words;

(c)    the BARBIE® doll line trademarks scripted in white.

-3-

1        4.    Imitating, copying or making unauthorized use of

2    Mattel's BARBIE® doll line Product Trade Dress defined by at

3    least the following elements:

4        (a)    the unique proportions of the BARBIE®

5    doll's hour-glass shaped body, and

6        (b)    the BARBIE® doll's particular set of facial

7    features which alert the public as to the source of the

8    BARBIE® doll as Mattel.

9        5.    Imitating, copying or making unauthorized use of

10    Mattel's KEN® Product Trade Dress defined by at least the

11    following elements:

12        (a)    a particular body shape, and

13        (b)    the KEN® doll's particular set of facial

14    features which alert the public as to the source of the

15    KEN® doll as Mattel.

16        6.    Assisting, aiding or abetting any other person or

17    business entity in engaging or performing any of the

18    activities referred to in subparagraphs 1 through 5 above.

19        B.    In consideration of this Stipulated Injunction,

20    Mattel hereby dismisses its claims against defendant In-Jean-

21    Ious; provided, however that this Court will retain jurisdiction

22

23

24

25

26

27

28

-4-

1

2 over In-Jean-Ious to the extent necessary to enforce this

3 injunction and to determine any contempt issues which may arise

4 concerning this Order.

5             IT IS SO STIPULATED.

6

7 Dated: _March 18_, 1997

8                                QUINN EMANUEL URQUHART & OLIVER, LLP

9

10                          By _Adrian M. Pruetz_

11                             Adrian M. Pruetz
                              Attorneys for Plaintiff

12                             Mattel, Inc.

   Dated: _March 19_, 1997
13

14                                MORGENSTEIN & JUBELIRER

15                          By _Lewis O. Barr_

16                             Lewis Barr
                              Attorneys for

17                             Defendant In-Jean-Ious, Inc.

18

19                      [PROPOSED] ORDER

20

21         Having read and considered the foregoing Stipulation of

22 the parties and good cause appearing therefor,

23             IT IS SO ORDERED.

24         MAR 2 7 1997

25

26                          _____

27                             Honorable Eugene F. Lynch
                              U.S. DISTRICT COURT JUDGE

28

                              -5-

## VERIFICATION

STATE OF CALIFORNIA, COUNTY OF _____

I have read the foregoing _____

_____ and know its contents

☒ CHECK APPLICABLE PARAGRAPH

☐     I am a party to this action. The matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

☐     I am ☐ an Officer ☐ a partner _____ a _____ of _____

a party to this action, and am authorized to make this verification for and on its behalf, and I make this verification for that reason. ☐ I am informed and believe and on that ground allege that the matters stated in the foregoing document are true. ☐ The matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

☐     I am one of the attorneys for _____,

a party to this action. Such party is absent from the county of aforesaid where such attorneys have their offices, and I make this verification for and on behalf of that party for that reason. I am informed and believe and on that ground allege that the matters stated in the foregoing document are true.

Executed on _____, 19____, at _____, California

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

_____               _____
Type or Print Name                        Signature

## PROOF OF SERVICE

1013A (3) CCP Revised 5/1/88

STATE OF CALIFORNIA, COUNTY OF   LOS ANGELES

I am employed in the county of _____ Los Angeles _____, State of California.

I am over the age of 18 and not a party to the within action; my business address is:

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017

On April 1, 19 97, I served the foregoing document described as _____

STIPULATED INJUNCTION BY DEFENDANT IN-JEAN-IOUS, INC.

_____ on interested parties _____ in this action

☐ by placing the true copies thereof enclosed in sealed envelopes addressed as stated on the attached mailing list:

☒ by placing ☐ the original ☒ a true copy thereof enclosed in sealed envelopes addressed as follows:

Lewis D. Barr, Esq.                Denise DeMory, Esq.
Morgenstein & Jubelirer        Keker & VanNest LLP
One Market Plaza              710 Sansome Street
Spear Street Tower, 32nd Floor    San Francisco, California 94111
San Francisco, California 94105

☒ BY MAIL

☐ *I deposited such envelope in the mail at _____, California.
The envelope was mailed with postage thereon fully prepaid.

☒ As follows : I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.
Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at
Los Angeles, _____ California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

Executed on _____ April 1 _____, 19 97 at _____ Los Angeles _____, California

☐ **(BY PERSONAL SERVICE) I delivered such envelope by hand to the offices of the addressee.

Executed on _____, 19____, at _____, California.

☐ (State)     I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

☒ (Federal)    I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

_____            _____
   Martha P. Herrera                Signature
    Type or Print Name

STUART'S EXBPOOK TIMESAVER (REVISED 8/1/38)
NEW DISCOVERY LAW 2030 AND 2031 C.C.P.
(May be used in California State or Federal Courts)

*(BY MAIL SIGNATURE MUST BE OF PERSON DEPOSITING ENVELOPE IN
MAIL SLOT, BOX, OR BAG)
**(FOR PERSONAL SERVICE SIGNATURE MUST BE THAT OF MESSENGER)

IN SAN DIEGO COUNTY LOCAL RULE 8.1 REQUIRES "ALL PROOFS OF SERVICE FILED WITH THE COURT AS OF JULY 1, 1990" MUST SPECIFY THE NAME OF THE PARTY SERVED, THE NATURE AND
STATUS OF HIS/HER INVOLVEMENT IN THE CASE, I.E. PLAINTIFF, DEFENDANT, CROSS COMPLAINANT, ETC. AND THE NAME, ADDRESS AND PHONE NUMBER OF HIS/HER COUNSEL OF RECORD.

EXHIBIT 2

## Partnership Agreement


DEFENDANT'S
EXHIBIT
2
7/10/08 Montwillo

This contract is a binding agreement between William Tull Jr. and Paul Montwillo (d.b.a. Hansen), concerning their responsibilities in their partnership in the business known as "Arsenic and Apple Pie".

William Tull Jr. will be primarily responsible for the financial investment of startup costs, and upkeep until the business shows a profit. Mr. Tull is also responsible for bookkeeping, sales, and distribution.

Paul Montwillo will be primarily responsible for Art Direction, Design, and Advertising of the product line. This would include such things as: corporate identification, product design, package design, web site design and maintenance, and print advertising.

Both parties will share the responsibility of marketing, and any of the fore-mentioned responsibilities, should a need arise.

In return for their efforts each party shall receive 50% of the net profits from the business, after Mr. Tull has been returned his initial investment plus interest at the current a.p.r.

If either party should decide not to fulfill his designated responsibilities within the partnership, the remaining partner shall retain exclusive rights to all the products of their combined efforts until that point in time.

This contract will remain in effect for two years from date signed, or until a limited liability corporation has been formed.


_William Tull Jr._          date 7/16/97

_Paul Montwillo_          date 7/16/97

**EXHIBIT 3**



DEFENDANT'S
EXHIBIT
5

000018



000019

**EXHIBIT 4**

(Official Form 1) FormB1 (9/01)

| United States Bankruptcy Court<br>NORTHERN DISTRICT OF CALIFORNIA | Voluntary Petition |
|---|---|

| Name of Debtor (if individual, enter Last, First, Middle):<br>**MONTWILLO, PAUL** | Name of Joint Debtor (Spouse)(Last, First, Middle): |
|---|---|
| All Other Names used by the Debtor in the last 6 years<br>(include married, maiden, and trade names):<br>**PAUL HANSEN** | All Other Names used by the Joint Debtor in the last 6 years<br>(include married, maiden, and trade names): |
| Soc. Sec./Tax I.D. No. (if more than one, state all):<br>**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** | Soc. Sec./Tax I.D. No. (if more than one, state all): |
| Street Address of Debtor (No. & Street, City, State & Zip Code):<br>**3638 22ND STREET<br>SAN FRANCISCO CA 94114** | Street Address of Joint Debtor (No. & Street, City, State & Zip Code): |
| County of Residence or of the Principal Place of Business: **SAN FRANCISCO** | County of Residence or of the Principal Place of Business: |
| Mailing Address of Debtor (if different from street address): | Mailing Address of Joint Debtor (if different from street address): |
| Location of Principal Assets of Business Debtor<br>(if different from street address above): | |

**DEFENDANT'S EXHIBIT 6**
3/16/08 Montwillo

## Information Regarding the Debtor (Check the Applicable Boxes)

**Venue** (Check any applicable box)

☑ Debtor has been domiciled or has had a residence, principle place of business, or principal assets in this District for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other District.

☐ There is a bankruptcy case concerning debtor's affiliate, general partner, or partnership pending in this District.

| **Type of Debtor** (Check all boxes that apply)<br>☑ Individual(s)<br>☐ Corporation<br>☐ Partnership<br>☐ Other _____ | ☐ Railroad<br>☐ Stockbroker<br>☐ Commodity Broker | **Chapter or Section of Bankruptcy Code Under Which the Petition is Filed** (Check one box)<br>☑ Chapter 7  ☐ Chapter 11  ☐ Chapter 13<br>☐ Chapter 9  ☐ Chapter 12<br>☐ Sec. 304 - Case ancillary to foreign proceeding |
|---|---|---|
| **Nature of Debts** (Check one box)<br>☑ Consumer/Non-Business   ☐ Business | | **Filing Fee** (Check one box)<br>☑ Full Filing Fee Attached |
| **Chapter 11 Small Business** (Check all boxes that apply)<br>☐ Debtor is a small business as defined in 11 U.S.C. § 101<br>☐ Debtor is and elects to be considered a small business under 11 U.S.C. § 1121(e) (Optional) | | ☐ Filing Fee to be paid in installments (Applicable to individuals only) Must attach signed application for the court's consideration certifying that the debtor is unable to pay fee except in installments. Rule 1006(b). See Official Form No. 3. |

**Statistical/Administrative Information** (Estimates only)

☐ Debtor estimates that funds will be available for distribution to unsecured creditors.

☑ Debtor estimates that, after any exempt property is excluded and administrative expenses paid, there will be no funds available for distribution to unsecured creditor

| Estimated Number of Creditors | 1-15 | 16-49 | 50-99 | 100-199 | 200-999 | 1000-over |
|---|---|---|---|---|---|---|
| | ☑ | ☐ | ☐ | ☐ | ☐ | ☐ |

| Estimated Assets | $0 to $50,000 | $50,001 to $100,000 | $100,001 to $500,000 | $500,001 to $1 million | $1,000,001 to $10 million | $10,000,001 to $50 million | $50,000,001 to $100 million | More than $100 million |
|---|---|---|---|---|---|---|---|---|
| | ☑ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

| Estimated Debts | $0 to $50,000 | $50,001 to $100,000 | $100,001 to $500,000 | $500,001 to $1 million | $1,000,001 to $10 million | $10,000,001 to $50 million | $50,000,001 to $100 million | More than $100 million |
|---|---|---|---|---|---|---|---|---|
| | ☑ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

Case # 02-30619 SFC7
Debtor: Paul Montwillo

Judge: Thomas E. Carlson
Trustee: E. Lynn Schoenmann
341 Mtg: 09:00 AM, 04/17/02
San Francisco, CA
Tentative - Notice to be mailed
Chapter 7    Office 3-SF
Filed: 11:17 AM, 03/11/02
Order for Relief
Clerk, U.S. Bankruptcy Court
Northern District of California
Rcpt.# 030014855 - DC
TOTAL PAID: $200.00
by. Paul Montwillo

ORIGINAL

000x33

(Official Form 1) (9/01)

| Voluntary Petition | Name of Debtor(s): | FORM B1,  Page 2 |
|---|---|---|
| *This page must be completed and filed in every case)* | **PAUL MONTWILLO** | |

## Prior Bankruptcy Case Filed Within Last 6 Years (If more than one, attach additional sheet)

| Location Where Filed: **NONE** | Case Number: | Date Filed: |
|---|---|---|

### Pending Bankruptcy Case Filed by any Spouse, Partner or Affiliate of this Debtor (If more than one, attach additional sheet)

| Name of Debtor: **NONE** | Case Number: | Date Filed: |
|---|---|---|
| District: . | Relationship: | Judge: |

## Signatures

### Signature(s) of Debtor(s) (Individual/Joint)

I declare under penalty of perjury that the information provided in this petition is true and correct.

[If petitioner is an individual whose debts are primarily consumer debts and has chosen to file under chapter 7] I am aware that I may proceed under chapter 7, 11, 12 or 13 of title 11, United States Code, understand the relief available under each such chapter, and choose to proceed under chapter 7.

I request relief in accordance with the chapter of title 11, United States Code, specified in this petition.

X _Paul J Montwillo_
Signature of Debtor

X **Not Applicable**
Signature of Joint Debtor

(415) 821 1536
Telephone Number (if not represented by attorney)

3/3/05
Date

### Signature of Attorney

X **Not Applicable**
Signature of Attorney for Debtor(s)

Print Name of Attorney for Debtor(s)

Firm Name

Address

Telephone Number

Date

### Signature of Debtor (Corporation/Partnership)

I declare under penalty of perjury that the information provided in this petition is true and correct, and that I have been authorized to file this petition on behalf of the debtor.

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

X **Not Applicable**
Signature of Authorized Individual

**Not Applicable**
Printed Name of Authorized Individual

Title of Authorized Individual

Date

### Exhibit A

(To be completed if debtor is required to file periodic reports (e.g., forms 10K and 10Q) with the Securities and Exchange Commission pursuant to Section 13 or 15(d) of the Security Exchange Act of 1934 and is requesting relief under chapter 11)

☐ Exhibit A is attached and made a part of this petition.

### Exhibit B

(To be completed if debtor is an individual whose debts are primarily consumer debts) I, the attorney for the petitioner named in the foregoing petition, declare that I have informed the petitioner that [he or she] may proceed under chapter 7, 11, 12 or 13 of title 11, United States Code, and have explained the relief available under each such chapter.

X **Not Applicable** _____
Signature of Attorney for Debtor(s)          Date

### Exhibit C

Does the debtor own or have possession of any property that poses or is alleged to pose a threat of imminent and identifiable harm to public health or safety?

☐ Yes, and Exhibit C is attached and made a part of this petition.

☑ No

### Signature of Non-Attorney Petition Preparer

I certify that I am a bankruptcy petition preparer as defined in 11 U.S.C. §110, that I prepared this document for compensation, and that I have provided the debtor with a copy of this document.

**Not Applicable**
Printed Name of Bankruptcy Petition Preparer

**Not Applicable**
Social Security Number

Address

Names and Social Security numbers of all other individuals who prepared or assisted in preparing this document:

If more than one person prepared this document, attach additional sheets conforming to the appropriate official form for each person.

X **Not Applicable**
Signature of Bankruptcy Petition Preparer

Date

A bankruptcy petition preparer's failure to comply with the provisions of title 11 and the Federal Rules of Bankruptcy Procedure may result in fines or imprisonment or both. 11 U.S.C. § 110; 18 U.S.C. § 156.

Form B6-Cont.
(6/90)

# United States Bankruptcy Court
## NORTHERN DISTRICT OF CALIFORNIA

In re  **PAUL MONTWILLO**

Debtor

Case No. _____
                        (If known)

## SUMMARY OF SCHEDULES

Indicate as to each schedule whether that schedule is attached and state the number of pages in each. Report the totals from Schedules A, B, D, E, F, I, and J in the boxes provided. Add the amounts from Schedules A and B to determine the total amount of the debtor's assets. Add the amounts from Schedules D, E, and F to determine the total amount of the debtor's liabilities.

| NAME OF SCHEDULE | ATTACHED (YES/NO) | NO. OF SHEETS | ASSETS | LIABILITIES | OTHER |
|---|---|---|---|---|---|
| A - Real Property | YES | 1 | $ 0.00 | | |
| B - Personal Property | YES | 4 | $ 8099.00 | | |
| C - Property Claimed as Exempt | YES | 1 | | | |
| D - Creditors Holding Secured Claims | YES | 1 | | $ 0.00 | |
| E - Creditors Holding Unsecured Priority Claims | YES | 1 | | $ 0.00 | |
| F - Creditors Holding Unsecured Nonpriority Claims | YES | 2 | | $ 17246.00 | |
| G - Executory Contracts and Unexpired Leases | YES | 1 | | | |
| H - Codebtors | YES | 1 | | | |
| I - Current Income of Individual Debtor(s) | YES | 1 | | | $ 920.00 |
| J - Current Expenditures of Individual Debtor(s) | YES | 1 | | | $ 2220.00 |
| Total Number of Sheets of ALL Schedules ➤ | | 14 | | | |
| Total Assets ➤ | | | $ 8099.00 | | |
| Total Liabilities ➤ | | | | $ 17246.00 | |

AMOUNTS SCHEDULED

000.098

FORM B6B - Cont.
(10/89)

In re  **PAUL MONTWILLO**

Debtor

Case No. _____
(If known)

# SCHEDULE B - PERSONAL PROPERTY
(Continuation Sheet)

| TYPE OF PROPERTY | N O N E | DESCRIPTION AND LOCATION OF PROPERTY | Husband, Wife, Joint or Community | CURRENT MARKET VALUE OF DEBTOR'S INTEREST IN PROPERTY WITHOUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION |
|---|---|---|---|---|
| 6   Wearing apparel. | | CLOTHING 3638 22ND STREET, SAN FRANCISCO, CA 94114 | | 300.00 |
| 7   Furs and jewelry. | X | | | 0.00 |
| 8   Firearms and sports, photographic, and other hobby equipment. | X | | | 0.00 |
| 9   Interests in insurance policies. Name insurance company of each policy and itemize surrender or refund value of each. | X | | | 0.00 |
| 10   Annuities. Itemize and name each issuer. | X | | | 0.00 |
| 11   Interests in IRA, ERISA, keogh, or other pension or profit sharing plans. Itemize. | X | | | 0.00 |
| 12   Stock and interests in incorporated and unincorporated businesses. Itemize. | X | | | 0.00 |
| 13   Interests in partnerships or joint ventures. Itemize. | | ARSENIC & APPLE PIE LLC 432 CASTRO ST, SAN FRANCISCO, CA 94114 | | 6000.00 |
| 14   Government and corporate bonds and other negotiable and nonnegotiable instruments. | X | | | 0.00 |

000189

FORM B6B - Cont.
(10/89)

In re  **PAUL MONTWILLO**
　　　Debtor

Case No. _____
　　　　　　　　　(If known)

# SCHEDULE B - PERSONAL PROPERTY
(Continuation Sheet)

| TYPE OF PROPERTY | N O N E | DESCRIPTION AND LOCATION OF PROPERTY | Husband, Wife, Joint or Comm-unity | CURRENT MARKET VALUE OF DEBTOR'S INTEREST IN PROPERTY WITHOUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION |
|---|---|---|---|---|
| 15    Accounts receivable. | X | | | 0.00 |
| 16    Alimony, maintenance, support, and property settlements to which the debtor is or may be entitled. Give particulars. | X | | | 0.00 |
| 17    Other liquidated debts owing debtor including tax refunds. Give particulars. | X | | | 0.00 |
| 18    Equitable or future interests, life estates, and rights or powers exercisable for the benefit of the debtor other than those listed in Schedule of Real Property. | X | | | 0.00 |
| 19    Contingent and non-contingent interests in estate of a decedent, death benefit plan, life insurance policy, or trust. | X | | | 0.00 |
| 20    Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims. Give estimated value of each. | X | | | 0.00 |
| 21    Patents, copyrights, and other intelectual property. Give particulars. | X | | | 0.00 |
| 22    Licenses, franchises, and other general intangibles. Give particulars. | X | | | 0.00 |

Schedule B Page  3

000396

FORM B6B - Cont.
(10/89)

In re  **PAUL MONTWILLO**                                    Case No. _____
Debtor                                                              (If known)

# SCHEDULE B - PERSONAL PROPERTY
(Continuation Sheet)

| TYPE OF PROPERTY | N O N E | DESCRIPTION AND LOCATION OF PROPERTY | Husband, Wife, Joint or Comm- unity | CURRENT MARKET VALUE OF DEBTOR'S INTEREST IN PROPERTY WITHOUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION |
|---|---|---|---|---|
| 23  Automobiles, trucks, trailers, and other vehicles and accessories | X | | | 0.00 |
| 24  Boats, motors, and accessories. | X | | | 0.00 |
| 25  Aircraft and accessories. | X | | | 0.00 |
| 26  Office equipment, furnishings, and supplies. | X | | | 0.00 |
| 27  Machinery, fixtures, equipment and supplies used in business. | X | | | 0.00 |
| 28  Inventory. | X | | | 0.00 |
| 29  Animals. | X | | | 0.00 |
| 30  Crops - growing or harvested. Give particulars. | X | | | 0.00 |
| 31  Farming equipment and implements. | X | | | 0.00 |
| 32  Farm supplies, chemicals and feed. | X | | | 0.00 |
| 33  Other personal property of any kind not already listed. Itemize. | X | | | 0.00 |

_____ continuation sheets attached          **Total** ➢  | 8099.00

(Include amounts from any continuation sheets attached. Report totals also on Summary of Schedules.)

000531

Schedule B Page  4

FORM B6C
(6/90)

In re  **PAUL MONTWILLO**                                    Case No. _____
    Debtor                                                          (If known)

# SCHEDULE C - PROPERTY CLAIMED AS EXEMPT

Debtor elects the exemption to which debtor is entitled under:
(Check one box)

☐  11 U.S.C. § 522(b)(1):    Exemptions provided in U.S.C. § 522(d). **Note: These exemptions are available only in certain states.**

☑  11 U.S.C. § 522(b)(2):    Exemptions available under applicable nonbankruptcy federal laws, state or local law where the debtor's domicile has been located for the 180 days immediately preceding the filing of the petition, or for a longer portion of the 180-period than in any other place, and the debtor's interest as a tenant by the entirety or joint tenant to the extent the interest is exempt from process under applicable nonbankruptcy law.

**All references are to California Code of Civil Procedures unless otherwise noted .**

| DESCRIPTION OF PROPERTY | SPECIFIC LAW PROVIDING EACH EXEMPTION | VALUE OF CLAIMED EXEMPTION | CURRENT MARKET VALUE OF PROPERTY WITHOUT DEDUCTING EXEMPTION |
|---|---|---|---|
| **CLOTHING** | 703.140(B)(3); | 300.00 | 300.00 |
| **CHECKING ACCOUNT** | 703.140(B)(10)(A); | 400.00 | 400.00 |
| **ARSENIC & APPLE PIE LLC** | 703.140(B)(5); | 6000.00 | 12000.00 |
| **COMPUTER** | 703.140(B)(3); | 899.00 | 899.00 |
| **FURNITURE/APPLIANCES** | 703.140(B)(3); | 500.00 | 500.00 |

000002

Form B6 - Cont.
(12/94)

In re  **PAUL MONTWILLO**

Debtor

Case No. _____

(If known)

# DECLARATION CONCERNING DEBTOR'S SCHEDULES

### DECLARATION UNDER PENALTY OF PERJURY BY INDIVIDUAL DEBTOR

I declare under penalty of perjury that I have read the foregoing summary and schedules consisting of _____ **15** _____ sheets, and that they are true and correct to the best of my knowledge, information and belief.

Date __3/16/07__

*(Total shown on summary page plus 1.)*

Signature: _____

Debtor

Date _____

Signature: _____

*(Joint Debtor, if any)*

*[If joint case, both spouses must sign.]*

---

### CERTIFICATION AND SIGNATURE OF NON-ATTORNEY BANKRUPTCY PETITION PREPARER (Sec. 11 U.S.C. §110)

I certify that I am a bankruptcy petition preparer as defined in 11 U.S.C. §110, that I prepared this document for compensation, and that I have provided the debtor with a copy of this document.

__**Not Applicable**_____

Printed or Typed Name of Bankruptcy Petition Preparer

**Not Applicable**

Social Security No.

_____

Address

Names and Social Security numbers of all other individuals who prepared or assisted in preparing this document:

If more than one person prepared this document, attach additional signed sheets conforming to the appropriate Official Form for each person.

x __**Not Applicable**_____

Signature of Bankruptcy Petition Preparer

**Not Applicable**

Date

A bankruptcy petition preparer's failure to comply with the provisions of title 11 and the Federal Rules of Bankruptcy Procedure may result in fines or imprisonment or both. 11 U.S.C. §110; 18 U.S.C. §156.

---

### DECLARATION UNDER PENALTY OF PERJURY ON BEHALF OF CORPORATION OR PARTNERSHIP

I, the __Partner__ [the president or other officer or an authorized agent of the corporation or a member or an authorized agent of the partnership] of the __Organic Apple Pie LLC__ [corporation or partnership] named as debtor in this case, declare under penalty of perjury that I have read the foregoing summary and schedules, consisting of _____ **15** _____ sheets, and that they are true and correct to the best of my knowledge, information and belief.

Date __3/16/07__

*(Total shown on summary page plus 1.)*

Signature _____

*[Print or type the name of individual signing on behalf of debtor.]*

[An individual signing on behalf of a partnership or corporation must indicate position or relationship to debtor.]

---

**Penalty for making a false statement or concealing property:** Fine of up to $500,000 or imprisonment for up to 5 years or both.
18 U.S.C. §§ 152 and 3571.

**EXHIBIT 5**

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, United States Code, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America



**Form VA**
For a Work of the Visual Arts
UNITED STATES COPYRIGHT OFFICE

REG  **VAu 631 – 337**

EFFECTIVE DATE OF REGISTRATION

July 2 2004
Month    Day    Year

---

**1**  Title of This Work ▼  NATURE OF THIS WORK ▼ See Instructions  IATE CONTINUATION SHEET.

Talking Pregnant Trailer Trash Doll     Doll

Previous or Alternative Titles ▼
Trash Talking Trixie

Publication as a Contribution If this work was published as a contribution to a periodical, serial, or collection, give information about the collective work in which the contribution appeared. Title of Collective Work ▼

If published in a periodical or serial give:  Volume ▼   Number ▼   Issue Date ▼   On Pages ▼

---

**2**  NAME OF AUTHOR ▼

**a**  Paul John Montavillo

Was this contribution to the work a "work made for hire"?
☐ Yes
☒ No

Author's Nationality or Domicile
Name of Country
OR { Citizen of  United States
Domiciled in

DATES OF BIRTH AND DEATH
Year Born ▼  Year Died ▼
1967

Was This Author's Contribution to the Work
Anonymous?  ☐ Yes ☒ No
Pseudonymous? ☐ Yes ☒ No
If the answer to either of these questions is "Yes," see detailed instructions.

Nature of Authorship Check appropriate box(es). See Instructions
☒ 3-Dimensional sculpture
☐ 2-Dimensional artwork
☐ Reproduction of work of art
☐ Map
☐ Photograph
☐ Jewelry design
☐ Technical drawing
☐ Text
☐ Architectural work

**NOTE**
Under the law, the "author" of a "work made for hire" is generally the employer, not the employee (see instructions). For any part of this work that was "made for hire" check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part, and leave the space for dates of birth and death blank.

**b**  Name of Author ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

Author's Nationality or Domicile
Name of Country
OR { Citizen of
Domiciled in

Dates of Birth and Death
Year Born ▼  Year Died ▼

Was This Author's Contribution to the Work
Anonymous?  ☐ Yes ☐ No
Pseudonymous? ☐ Yes ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

Nature of Authorship Check appropriate box(es). See Instructions
☐ 3-Dimensional sculpture
☐ 2-Dimensional artwork
☐ Reproduction of work of art
☐ Map
☐ Photograph
☐ Jewelry design
☐ Technical drawing
☐ Text
☐ Architectural work

---

**3**  **a**  Year in Which Creation of This Work Was Completed
1998
Year  This information must be given in all cases.

**b**  Date and Nation of First Publication of This Particular Work
Complete this information ONLY if this work has been published.
Month    Day    Year    Nation

---

**4**  COPYRIGHT CLAIMANT(S) Name and address must be given even if the claimant is the same as the author given in space 2. ▼

Paul John Montavillo

Transfer If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼

APPLICATION RECEIVED
JUL 0 2 2004
ONE DEPOSIT RECEIVED
JUL 0 2 2004
TWO DEPOSITS RECEIVED

FUNDS RECEIVED

DO NOT WRITE HERE
OFFICE USE ONLY

---

MORE ON BACK ▶ · Complete all applicable spaces (numbers 5-11) on the reverse side of this page.

DO NOT WRITE HERE
Pg. 1 of 7

**EXHIBIT 6**

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, United States Code, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America



**Form VA**
For a Work of the Visual Arts
UNITED STATES COPYRIGHT OFFICE

VAu 631-338

**EFFECTIVE DATE OF REGISTRATION**

July 2 2004

Month    Day    Year

---

**1**

Title of This Work ▼    NATE CONTINUATION SHEET.

Trailer Trash Roy Doll

NATURE OF THIS WORK ▼ See Instructions

Doll

Previous or Alternative Titles ▼

Bubba    Mullet Doll

Publication as a Contribution If this work was published as a contribution to a periodical, serial, or collection, give information about the collective work in which the contribution appeared. Title of Collective Work ▼

If published in a periodical or serial give: Volume ▼    Number ▼    Issue Date ▼    On Pages ▼

---

**2**

**a**    NAME OF AUTHOR ▼

Paul John Montwillo

DATES OF BIRTH AND DEATH
Year Born ▼    Year Died ▼
1967

Was this contribution to the work a "work made for hire"?
☐ Yes
☑ No

Author's Nationality or Domicile
Name of Country
OR { Citizen of United States
Domiciled in _____

Was This Author's Contribution to the Work
Anonymous? ☐ Yes ☑ No    If the answer to either of these questions is "Yes," see detailed instructions.
Pseudonymous? ☐ Yes ☑ No

**NOTE**
Under the law, the "author" of a "work made for hire" is generally the employer, not the employee (see instructions). For any part of this work that was "made for hire" check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part, and leave the space for dates of birth and death blank.

Nature of Authorship Check appropriate box(es). See Instructions
☑ 3-Dimensional sculpture    ☐ Map    ☐ Technical drawing
☐ 2-Dimensional artwork    ☐ Photograph    ☐ Text
☐ Reproduction of work of art    ☐ Jewelry design    ☐ Architectural work

**b**    Name of Author ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

Author's Nationality or Domicile
Name of Country
OR { Citizen of _____
Domiciled in _____

Dates of Birth and Death
Year Born ▼    Year Died ▼

Was This Author's Contribution to the Work
Anonymous? ☐ Yes ☐ No    If the answer to either of these questions is "Yes," see detailed instructions.
Pseudonymous? ☐ Yes ☐ No

Nature of Authorship Check appropriate box(es). See Instructions
☐ 3-Dimensional sculpture    ☐ Map    ☐ Technical drawing
☐ 2-Dimensional artwork    ☐ Photograph    ☐ Text
☐ Reproduction of work of art    ☐ Jewelry design    ☐ Architectural work

---

**3**

**a**    Year in Which Creation of This Work Was Completed
1998
This information must be given in all cases.

**b**    Date and Nation of First Publication of This Particular Work
Complete this information Month _____ Day _____ Year _____ Nation _____
ONLY if this work has been published.

---

**4**

COPYRIGHT CLAIMANT(S) Name and address must be given even if the claimant is the same as the author given in space 2 ▼

Paul John Montwillo

APPLICATION RECEIVED
JUL 0 2 2004
ONE DEPOSIT RECEIVED
JUL 0 2 2004
TWO DEPOSITS RECEIVED

Transfer If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼

FUNDS RECEIVED

001 08

MORE ON BACK ▶ • Complete all applicable spaces (numbers 5-9) on the reverse side of this page.    DO NOT WRITE HERE

**EXHIBIT 7**

# Certificate of Registration



This Certificate issued under the seal of the Copyright
Office in accordance with title 17, United States Code,
attests that registration has been made for the work
identified below. The information on this certificate has
been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America



**Form VA**
For a Work of the Visual Arts
UNITED STATES

REG  **VA 1–271–342**



**EFFECTIVE DATE OF REGISTRATION**

7-13-04

---

**1**

Title of This Work ▼                      SEE CONTINUATION SHEET.

Trailer Trash Doll

NATURE OF THIS WORK ▼ See Instructions

Doll

Previous or Alternative Titles ▼

Publication as a Contribution If this work was published as a contribution to a periodical, serial, or collection, give information about the collective work in which the contribution appeared. Title of Collective Work ▼

If published in a periodical or serial give: Volume ▼     Number ▼     Issue Date ▼     On Pages ▼

---

**2**

NAME OF AUTHOR ▼

Paul John Montwill    whose pseudonym is Paul Hansen

DATES OF BIRTH AND DEATH
Year Born ▼     Year Died ▼
1967

**NOTE**

Was this contribution to the work a "work made for hire"?
☐ Yes
☒ No

Author's Nationality or Domicile
Name of Country
OR { Citizen of U.S.A.
Domiciled in

Was This Author's Contribution to the Work
Anonymous?     ☐ Yes  ☒ No
Pseudonymous?  ☒ Yes  ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

Under the law, the "author" of a "work made for hire" is generally the employer, not the employee (see instructions). For any part of this work that was "made for hire" check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part, and leave the space for dates of birth and death blank.

Nature of Authorship Check appropriate box(es) See Instructions
☒ 3-Dimensional sculpture     ☐ Map         ☐ Technical drawing
☐ 2-Dimensional artwork       ☐ Photograph  ☐ Text
☐ Reproduction of work of art ☐ Jewelry design  ☐ Architectural work

Name of Author ▼

Dates of Birth and Death
Year Born ▼     Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

Author's Nationality or Domicile
Name of Country
OR { Citizen of
Domiciled in

Was This Author's Contribution to the Work
Anonymous?     ☐ Yes  ☐ No
Pseudonymous?  ☐ Yes  ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

Nature of Authorship Check appropriate box(es) See Instructions
☐ 3-Dimensional sculpture     ☐ Map         ☐ Technical drawing
☐ 2-Dimensional artwork       ☐ Photograph  ☐ Text
☐ Reproduction of work of art ☐ Jewelry design  ☐ Architectural work

---

**3**

Year in Which Creation of This Work Was Completed
1998
a
This information must be given Year in all cases.

Date and Nation of First Publication of This Particular Work
b Complete this information Month 07 Day 01 Year 2000
ONLY if this work has been published.     U.S.A.     Nation

---

**4**

COPYRIGHT CLAIMANT(S) Name and address must be given even if the claimant is the same as the author given in space 2. ▼

Paul John Montwill
3638 22nd Street
San Francisco CA 94114

See instructions before completing this space.

APPLICATION RECEIVED
JUL 13 2004
ONE DEPOSIT RECEIVED
JUL 13 2004
TWO DEPOSITS RECEIVED

FUNDS RECEIVED

Transfer If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼

---

MORE ON BACK ▶ • Complete all applicable spaces (numbers 5-9) on the reverse side of this page.     DO NOT WRITE HERE

EXHIBIT 8

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, United States Code, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*MaryBeth Peters*

Register of Copyrights, United States of America



**Form VA**
For a Work of the Visual Arts
UNITED STATES COPYRIGHT OFFICE

**VA 1-271-341**

EFFECTIVE DATE OF REGISTRATION

7-13-04

---

**1**   Title of This Work ▼      RATE CONTINUATION SHEET.

*Redhead Drag Queen Doll*

NATURE OF THIS WORK ▼ See Instructions

*Doll*

Previous or Alternative Titles ▼

Publication as a Contribution If this work was published as a contribution to a periodical, serial, or collection, give information about the collective work in which the contribution appeared. Title of Collective Work ▼

If published in a periodical or serial give:   Volume ▼    Number ▼    Issue Date ▼    On Pages ▼

---

**2**   NAME OF AUTHOR ▼

**a** *Paul John Montwillo* whose pseudonym is *Paul Hansen*

DATES OF BIRTH AND DEATH
Year Born ▼ *1967*    Year Died ▼

**NOTE**
Under the law, the "author" of a "work made for hire" is generally the employer, not the employee (see instructions). For any part of this work that was "made for hire" check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part, and leave the space for dates of birth and death blank.

Was this contribution to the work a "work made for hire"?
☐ Yes
☒ No

Author's Nationality or Domicile
Name of Country
OR { Citizen of *USA*
Domiciled in _____

Was This Author's Contribution to the Work
Anonymous? ☐ Yes ☒ No
Pseudonymous? ☒ Yes ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

Nature of Authorship Check appropriate boxes. See Instructions
☒ 3-Dimensional sculpture   ☐ Map   ☐ Technical drawing
☐ 2-Dimensional artwork   ☐ Photograph   ☐ Text
☐ Reproduction of work of art   ☐ Jewelry design   ☐ Architectural work

DEFENDANT'S EXHIBIT 7

PENGAD 800-631-6989

**b**   Name of Author ▼

Dates of Birth and Death
Year Born ▼    Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

Author's Nationality or Domicile
Name of Country
OR { Citizen of _____
Domiciled in _____

Was This Author's Contribution to the Work
Anonymous? ☐ Yes ☐ No
Pseudonymous? ☐ Yes ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

Nature of Authorship Check appropriate box(es). See Instructions
☐ 3-Dimensional sculpture   ☐ Map   ☐ Technical drawing
☐ 2-Dimensional artwork   ☐ Photograph   ☐ Text
☐ Reproduction of work of art   ☐ Jewelry design   ☐ Architectural work

---

**3**   **a** Year in Which Creation of This Work Was Completed *1998*
This information must be given in all cases.
Year in all cases.

**b** Date and Nation of First Publication of This Particular Work
Complete this information ONLY if this work has been published.
Month *07*   Day *01*   Year *2000*
*USA*   Nation

---

**4**   COPYRIGHT CLAIMANT(S) Name and address must be given even if the claimant is the same as the author given in space 2. ▼

See instructions before completing this space.

*Paul John Montwillo*
*3638 22nd Street*
*San Francisco CA 94114*

APPLICATION RECEIVED
JUL 13 2004
ONE DEPOSIT RECEIVED

TWO DEPOSITS RECEIVED
JUL 13 2004
FUNDS RECEIVED

Transfer If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼

MORE ON BACK ▶ • Complete all applicable spaces (numbers 5-9) on the reverse side of this page.

DO NOT WRITE HERE

001 04

**EXHIBIT 9**

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, United States Code, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America

 **Form VA**
For a Work of the Visual Arts
UNITED STATES COPYRIGHT OFFICE

**VA 1-271-343**



EFFECTIVE DATE OF REGISTRATION

7 — 13 — 04

Month    Day    Year

---

**1**

Title of This Work ▼

**Blonde Drag Queen Doll**

Previous or Alternative Titles ▼

Publication as a Contribution If this work was published as a contribution to a periodical, serial, or collection, give information about the collective work in which the contribution appeared. Title of Collective Work ▼

If published in a periodical or serial give: Volume ▼    Number ▼    Issue Date ▼    On Pages ▼

LATE CONTINUATION SHEET.

NATURE OF THIS WORK ▼ See Instructions

**Doll**

---

**2**

**NOTE**
Under the law, the "author" of a "work made for hire" is generally the employer, not the employee (see instructions). For any part of this work that was "made for hire" check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part, and leave the space for dates of birth and death blank.

NAME OF AUTHOR ▼

a **Paul John Montwillo** *whose pseudonym is Paul Hansen*

Was this contribution to the work a "work made for hire"?
☐ Yes
☒ No

Author's Nationality or Domicile
Name of Country
OR { Citizen of **USA**
Domiciled in _____

DATES OF BIRTH AND DEATH
Year Born ▼    Year Died ▼
**1967**

Was This Author's Contribution to the Work
Anonymous?    ☐ Yes ☒ No
Pseudonymous?  ☒ Yes ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

Nature of Authorship Check appropriate box(es) See instructions
☒ 3-Dimensional sculpture    ☐ Map    ☐ Technical drawing
☐ 2-Dimensional artwork    ☐ Photograph    ☐ Text
☐ Reproduction of work of art    ☐ Jewelry design    ☐ Architectural work

Name of Author ▼

b

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

Author's Nationality or Domicile
Name of Country
OR { Citizen of _____
Domiciled in _____

Dates of Birth and Death
Year Born ▼    Year Died ▼

Was This Author's Contribution to the Work
Anonymous?    ☐ Yes ☐ No
Pseudonymous?  ☐ Yes ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

Nature of Authorship Check appropriate box(es) See instructions
☐ 3-Dimensional sculpture    ☐ Map    ☐ Technical drawing
☐ 2-Dimensional artwork    ☐ Photograph    ☐ Text
☐ Reproduction of work of art    ☐ Jewelry design    ☐ Architectural work

---

**3**

a Year in Which Creation of This Work Was Completed
**1998**
Year
This information must be given in all cases.

b Date and Nation of First Publication of This Particular Work
Complete this information Month **07** Day **01** Year **2000**
ONLY if this work has been published.
**U.S.A.**
Nation

---

**4**

COPYRIGHT CLAIMANT(S) Name and address must be given even if the claimant is the same as the author given in space 2 ▼

**Paul John Montwillo**
**3678 22nd Street**
**San Francisco CA 94114**

See instructions before completing this space.

Transfer If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼

APPLICATION RECEIVED
JUL 13 2004
ONE DEPOSIT RECEIVED

TWO DEPOSITS RECEIVED
JUL 13 2004
FUNDS RECEIVED

---

MORE ON BACK ▶ • Complete all applicable spaces (numbers 5-9) on the reverse side of this page.

DO NOT WRITE HERE

**EXHIBIT 10**



Paul Montwillo
Managing Partner
Arsenic & Apple Pie, LLC
3638 22nd Street
San Francisco, CA 94114

David Wong
Attorney at Law                                                            July 13, 2004
320 Montford Ave.
Mill Valley, CA 94941

Re:   Arsenic & Apple Pie, LLC

Dear Mr Wong:

Pursuant to Section 9.1 of the operating agreement I do not concede to dissolution of the company at this time.

Please send me detailed copies of all the books from Arsenic & Apple Pie, also any and all contracts, sales documents, and product orders the company has participated or intends to participate in.

I hold the copyrights to all my designs, not the company. If the company or Mr. Tull would be interested, I would be willing to give exclusive license of my designs (Trailer Trash Doll, Blonde Drag Queen, Red Head Drag Queen, Talking Pregnant Trailer Trash Doll, and Male Mullet Trailer Trash Doll) for $10,000 each, provided payment of $50,000 is made within ten business days.

Pursuant of Section 2.4 of the operating agreement, I expect you to act in the best interest of the company. Putting Mr. Tull's well being ahead of the well being of the company would surely be considered a conflict of interest.

Sincerely,

Paul J. Montwillo
Managing Partner
Arsenic & Apple Pie, LLC

DEFENDANT'S
EXHIBIT
4
5/10/08 Montwillo
PENGAD 800-631-6989

MON163

**MONTWILLO DEPOSITION**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

PAUL MONTWILLO, an                )
individual,                       )
                                  )
                  Plaintiff,      )
        vs.                       )  No. C 07 3947 SI
                                  )
WILLIAM TULL; DANIEL GIBBY; GIBBY )  Pages 1 thru 124
NOVELTIES, LLC dba ARSENIC & APPLE)
PIE, a California Limited         )      Volume I
Liability Corporation and DOES 1 )
through 20, inclusive,            )
                                  )
                  Defendants.     )
_____)

Deposition of

PAUL MONTWILLO

March 10, 2008

Reported By:

JAN BROWN JONES # 4685

COPY

-------------------------------------------------------

JAN BROWN & ASSOCIATES

CERTIFIED SHORTHAND REPORTERS

701 Battery St., 3rd Floor, San Francisco, California 94111

(415) 981-3498 or (800) 522-7096

1

PAUL MONTWILLO - MARCH 10, 2008

20:09    1    A.    I recall having it removed because -- for that

14:20:12    2    reason.

14:20:13    3    Q.    Okay.  And you discussed removing some of the

14:20:15    4    language with Mr. Tull?

14:20:18    5    A.    Yes.  We were sending back and forth drafts and I

14:20:23    6    remember we were making notes on them.

14:20:26    7    Q.    So you asked that certain language be removed?

14:20:28    8    A.    Yes.

14:20:29    9    Q.    But you don't recall what the language was?

14:20:34    10    A.    Not precisely, no.  It was a very long time ago.

14:20:38    11    Q.    Do you have copies of any of those communications

14:20:41    12    between you and Mr. Tull and in particular the one

20:44    13    in which you made a request that this language be

14:20:47    14    removed?

14:20:48    15    A.    I do not.  I threw all the drafts away.

14:20:51    16    Q.    So you threw all the drafts away.  And you don't

14:20:55    17    recall what the language was?

14:20:57    18    A.    Not precisely, no.

14:20:58    19    Q.    Do you recall in general what it said?

14:21:00    20    A.    Yes.  It was something that concerned me that it

14:21:04    21    was transferring my intellectual property rights to

14:21:08    22    the corporation and that's why I had it removed.

14:21:11    23    Q.    Okay.  Well, let's go back then to this question of

14:21:17    24    a license agreement.  Aside from having some

21:19    25    language removed, which you have indicated that you

49

PAUL MONTWILLO - MARCH 10, 2008

| | | |
|---|---|---|
| 21:22 | 1 | requested be done in the LLC, in the operating |
| 14:21:31 | 2 | statement, the LLC, is there any specific statement |
| 14:21:35 | 3 | that reserves intellectual property rights, and in |
| 14:21:39 | 4 | particular copyrights, to you personally? |
| 14:21:43 | 5 | A. There is not. |
| 14:21:44 | 6 | Q. Is there anything in writing prior to the filing of |
| 14:21:49 | 7 | this lawsuit in which you have in writing advised |
| 14:21:54 | 8 | Mr. Tull that you retain ownership of the |
| 14:21:59 | 9 | copyrights to the doll designs? |
| 14:22:02 | 10 | A. Yes. |
| 14:22:02 | 11 | Q. What? |
| 14:22:03 | 12 | A. A letter to Mr. Wong. |
| 22:05 | 13 | Q. A letter to Mr. Wong.  When was that? |
| 14:22:10 | 14 | A. I don't recall exactly.  It was during the time |
| 14:22:15 | 15 | when Mr. Wong and Mr. Tull were trying to dissolve |
| 14:22:23 | 16 | the corporation without my consent. |
| 14:22:25 | 17 | Q. All right.  So the dissolution of the Arsenic & |
| 14:22:29 | 18 | Apple Pie LLC, I believe took place in 2004.  Does |
| 14:22:36 | 19 | that refresh your recollection about the year? |
| 14:22:39 | 20 | A. I guess so.  I mean, there's so much that's |
| 14:22:44 | 21 | happened, I don't recall exact dates. |
| 14:22:47 | 22 | MR. SOMMERS:  Don't guess. |
| 14:22:48 | 23 | THE WITNESS:  I don't recall. |
| 14:22:49 | 24 | MR. SOMMERS:  And if you don't know the |
| 22:50 | 25 | exact time frame, then say that you don't know and |

50

PAUL MONTWILLO - MARCH 10, 2008

produced.

THE WITNESS:  Yes, definitely.

MR. WONG.  The letter he sent to me?

MR. GREENBERG:  The letter he says he wrote to you in connection with the dissolution of --

MR. SOMMERS:  I'm sure it's part of our Rule 26.  And it was definitely part of an exhibit in the motion to disqualify Mr. Wong.

MR. GREENBERG:  While Mr. Wong is taking a look for that, let me ask you a different question then.

Q.  So are we clear then that neither in the partnership agreement of '97 nor in the operating agreement for the LLC, was there any statement made that you claimed ownership to the copyrights in these doll designs.  Is that correct?

MR. SOMMERS:  Objection as to the scope of the question.

MR. GREENBERG:  Okay.  Is that correct?

MR. SOMMERS:  Go ahead.  I mean, I'm not clear about -- the objection is, are you talking about the operating agreement or are you talking about any statement?

MR. GREENBERG:  No, I'm talking about the

52

PAUL MONTWILLO - MARCH 10, 2008

1   4:45  1    operating agreement -- within the four corners of

14:24:48  2    the operating agreement and the partnership

14:24:49  3    agreement, two documents.

14:24:51  4           MR. SOMMERS:  All right.  Then the

14:24:52  5    document speaks for itself.

14:24:53  6           MR. GREENBERG:  Right.

14:24:54  7    THE WITNESS:  No.

14:24:54  8           MR. GREENBERG:

14:24:55  9  Q.  There is no statement of ownership by you of the

14:24:57  10   copyright in the designs, correct?

14:24:59  11          MR. SOMMERS:  Objection, the document

14:25:00  12   speaks for itself.

1   5:03  13          MR. GREENBERG:  Okay.

14:25:03  14 Q.  Is that correct?

14:25:03  15 A.  There is no -- no, there is no statement, that's

14:25:07  16   correct.

14:25:08  17 Q.  Okay.

14:25:09  18          MR. WONG:  By the way, Counsel --

14:25:13  19          MR. GREENBERG:  This is off the record.

14:25:13  20

14:25:13  21          (Off the record at 2:25 p.m. and

14:25:17  22           back on the record at 2:31 p.m.)

14:31:19  23

14:31:19  24          MR. GREENBERG:  Back on the record.

1   1:20  25

53

PAUL MONTWILLO - MARCH 10, 2008

```
  3:56    1         something.
14:53:58  2    Q.   I'm sorry?
14:53:59  3    A.   It's a sticker.
14:54:04  4    Q.   Okay.  Do you know what was there before?
14:54:07  5    A.   I don't know what is under there.
14:54:11  6    Q.   You don't know what is under it?
14:54:12  7    A.   No.
14:54:13  8    Q.   Was there a sticker on the first one regarding the
14:54:19  9         copyright date or is it printed on the box?
14:54:22 10    A.   It's printed on the box.
14:54:23 11    Q.   Okay.  And you oversaw the production of these
14:54:26 12         boxes?
  4:27   13    A.   Yes.
14:54:29 14    Q.   If you owned the copyrights to these designs, why
14:54:34 15         does the copyright notice say it's copyright
14:54:37 16         Arsenic & Apple Pie on both of these?
14:54:43 17    A.   I don't know.  I own the copyrights to the dolls.
14:54:57 18    Q.   Okay.  Now, from the 1997 partnership agreement
14:55:03 19         date, through to the dissolution of the LLC in
14:55:09 20         2004, am I correct that all costs for the design,
14:55:15 21         development, manufacture and distribution of the
14:55:23 22         dolls was paid for by Bill Tull?
14:55:23 23    A.   Bill Tull made a loan to the company, yes.
14:55:26 24    Q.   To cover those costs?
  5:28   25    A.   Yeah.  So the company paid for them.
```

70

PAUL MONTWILLO - MARCH 10, 2008

55:32  1  Q.  Right.  Using the money he had loaned?

14:55:35  2  A.  Uh-huh.

14:55:35  3  Q.  Is that right?

14:55:36  4  A.  Yes.

14:55:37  5  Q.  You didn't advance any money for those costs, did

14:55:41  6  you?

14:55:42  7  A.  No.

14:55:44  8  Q.  Did you understand that you had any obligation

14:55:46  9  personally to pay for any of those costs?

14:55:50  10  A.  No.

14:56:35  11       MR. GREENBERG:  Let's mark this as next

14:56:36  12  in order.

14:56:37  13

14:56:38  14            (Whereupon the Voluntary
                        Petition United States
14:56:38  15            Bankruptcy Court Northern
                        District of California was
14:56:38  16            marked for identification as
                        Defendants' Exhibit No. 6.)

14:56:40  17

14:57:15  18       MR. GREENBERG:  All right.  Good.

14:57:16  19  Q.  Mr. Montwillo, I've handed you a document which

14:57:19  20  we've marked as Exhibit 6 and which I'll represent

14:57:22  21  for the record is entitled "Voluntary Petition,

14:57:27  22  United States Bankruptcy Court, Northern District

14:57:30  23  of California" and ask you to take a few moments to

14:57:32  24  go through this and then I'll ask you a couple of

57:35  25  questions about it.

71

1    page 3, and this would be page 5 of this -- yes,

2    page 5 of this document.  I want to direct your

3    attention down to item number 21 of the document.

4    And it asks under "Type of Property" for "Patents,

5    copyrights, and other intellectual property," and

6    then you are asked to give particulars.

7             The box list identifying "None" is

8    checked and the dollar value is zero.

9             Do you see that?

10   A.   Yes.

11   Q.   As of two thousand -- March of 2002, when you

12   signed this document, was it true that you owned no

13   copyrights of any value?

14             MR. SOMMERS:  Objection, calls for a

15   legal conclusion, calls for a financial conclusion,

16   speculation.

17             THE WITNESS:  No.

18             MR. GREENBERG:

19   Q.   It's not true?

20   A.   I didn't -- I did this without a lawyer.

21   Q.   I understand.

22   A.   I did not know what I was doing, but if I had to

23   list every piece of artwork I've ever made in my

24   life, I mean, it would be impossible, you know, to

25   list all of that.

75

PAUL MONTWILLO - MARCH 10, 2008

1    08:35        I guess I glossed over it.  I didn't know

2    15:08:43    what I was doing.

3    15:08:43  Q.  Okay.  And then underneath 21, number 22 asks you

4    15:08:49    to describe "Licenses, franchises, and other

5    15:08:51    general intangibles.  Give particulars."  Again, it

6    15:08:55    indicates "None" and has a zero dollar figure.

7    15:08:58        Given your prior testimony today that you

8    15:09:03    granted a license to the company to use your

9    15:09:05    designs during this time period, is this a correct

10   15:09:10    statement that you owned no licenses as of March

11   15:09:13    '02?

12   15:09:15        MR. SOMMERS:  Objection, calls for a

13   09:18    legal conclusion in that before he discussed the

14   15:09:23    license in layman's terms and he described exactly

15   15:09:26    what he meant and now it's being used in a

16   15:09:29    different format and I don't think he can answer

17   15:09:29    it.

18   15:09:30        MR. GREENBERG:  No, I'm just asking why

19   15:09:31    he didn't indicate something that he believed he

20   15:09:33    had.

21   15:09:34        THE WITNESS:  I didn't know what I was

22   15:09:35    doing.

23   15:09:36        MR. GREENBERG:  Okay.

24   15:09:37        THE WITNESS:  I didn't have a lawyer, I

25   09:38    did this without a lawyer.  I didn't know what I

76

PAUL MONTWILLO - MARCH 10, 2008

| | | |
|---|---|---|
| 09:40 | 1 | was doing. |
| 15:09:41 | 2 | MR. GREENBERG: |
| 15:09:58 | 3 | Q. So I'm accurate in saying that in this bankruptcy |
| 15:10:03 | 4 | filing you didn't indicate any ownership interest |
| 15:10:06 | 5 | in the doll designs, did you? |
| 15:10:10 | 6 | A. Apparently not. I didn't indicate ownership of |
| 15:10:23 | 7 | anything I ever designed in here. I'm not a |
| 15:10:28 | 8 | lawyer. |
| 15:10:31 | 9 | Q. I want to direct your attention, Mr. Montwillo, |
| 15:10:33 | 10 | back to Exhibit 4, which I believe you have right |
| 15:10:37 | 11 | under the bankruptcy schedule there, the letter |
| 15:10:40 | 12 | that you wrote, the July 2004 letter. It's dated |
| 10:44 | 13 | July 13, 2004. |
| 15:10:47 | 14 | A. Uh-huh. Yes. |
| 15:10:48 | 15 | Q. In paragraph three you make the statement, "I hold |
| 15:10:51 | 16 | the copyrights to all my designs, not the company." |
| 15:10:57 | 17 | As of July 13, 2004, had you registered |
| 15:11:02 | 18 | copyright designs for all of these different listed |
| 15:11:07 | 19 | designs? |
| 15:11:08 | 20 | A. I don't recall the date I registered copyrights, |
| 15:11:11 | 21 | but they are probably in the room. |
| 15:11:22 | 22 | Q. Yes, we're getting there. |
| 15:11:23 | 23 | |
| 15:12:27 | 24 | (Whereupon the Certificates of |
| | | Registration were marked for |
| 12:27 | 25 | identification as Defendants' |

77

PAUL MONTWILLO - MARCH 10, 2008

'8:14    1    conclusion, I'm asking for your lay understanding.

15:28:17    2    MR. SOMMERS:  Now are you talking about

15:28:19    3    what he understands it to be now or what he

15:28:20    4    understood it to mean --

15:28:22    5    MR. GREENBERG:  Fair enough.

15:28:23    6    Q.  When you checked this box, what was your

15:28:24    7    understanding, lay understanding, not legal, of

15:28:27    8    what the term "made for hire" meant?

15:28:31    9    MR. SOMMERS:  Objection, speculative.

15:28:35    10    THE WITNESS:  Well, now -- or I guess

15:28:39    11    then, I mean, I don't think my opinion of work for

15:28:39    12    hire has changed.  If I do a custom piece for

8:46    13    someone that has not yet been created, that would

15:28:48    14    be considered work for hire.  Like if I do

15:28:51    15    someone's living room, that's a work for hire.

15:28:56    16    If I do something because I want to do

15:28:59    17    it, that's not a work for hire, or I produce it on

15:29:03    18    my own, it's not a work for hire.  Or I produce on

15:29:06    19    commissions is a work for hire.

15:29:09    20    MR. GREENBERG:  Okay.

15:29:10    21    Q.  So when you were checking this box "No," you

15:29:12    22    checked this box no because you didn't do these

15:29:14    23    designs as a commission.  Is that right?

15:29:18    24    A.  Right.  They were actually portraits.

1    9:21    25    Q.  They were --

88

30:17 1      independent contractor?

15:30:22 2   A.  I'm sorry.  Again?

15:30:24 3   Q.  Sure.  Did those terms "employee/independent

15:30:27 4       contractor" enter into your consciousness when you

15:30:29 5       were making a determination to check the box and

15:30:31 6       say no, these aren't works for hire, were you

15:30:34 7       thinking about employer/independent contractor?

15:30:37 8             MR. SOMMERS:  Objection, speculation.

15:30:39 9             THE WITNESS:  I was thinking --

15:30:40 10            MR. SOMMERS:  Vague.  Go ahead.

15:30:42 11            THE WITNESS:  Neither.  That's not what I

15:30:44 12      was thinking.

30:45 13               MR. GREENBERG:  That's what I wanted to

15:30:45 14      know.  Thank you.

15:30:57 15  Q.  Now, with the exception of the pregnant doll and

15:31:08 16      the male doll, the first three designs, Trailer

15:31:14 17      Trash Doll, Blonde Drag Queen and Red Head Drag

15:31:17 18      Queen, is it accurate to say that your contribution

15:31:24 19      to those designs was with respect to wigs, clothing

15:31:32 20      and facial make-up?

15:31:35 21            MR. SOMMERS:  Objection, compound.  Do

15:31:37 22      you want to ask them individually?

15:31:40 23            MR. GREENBERG:  I'm trying to get to the

15:31:41 24      totality of what he designed.  I can ask it that

31:44 25         way too.

90

15:31:46   1               MR. SOMMERS:  Again, why don't you do it

15:31:47   2     that way, not that globally.

15:31:47   3               MR. GREENBERG:

15:31:48   4  Q.   Other than the body --

15:31:49   5  A.   Right.

15:31:51   6  Q.   Well, let's back up.  With respect to those three

15:31:53   7     dolls, Trailer Trash Doll, Blonde Drag Queen and

15:31:56   8     Red Head Drag Queen, you didn't design the body.

15:31:59   9     Is that correct?

15:32:01  10  A.   That's correct.

15:32:03  11  Q.   What did you design on those three dolls?

15:32:10  12  A.   The clothing.  The pants.  The accessories.

15:32:21  13  Q.   Okay.

15:32:22  14               MR. SOMMERS:  Was there anything besides

15:32:23  15     the body that you didn't design?

15:32:26  16               THE WITNESS:  The only thing I didn't

15:32:27  17     design was the body.  We used standard bodies.  I

15:32:30  18     designed everything else.

15:32:34  19               MR. GREENBERG:

15:32:34  20  Q.   And taking a look at the box we've got here, which

15:32:40  21     we're not going to be able to attach to the record,

15:32:42  22     but I'll just represent -- and I think that we've

15:32:45  23     already concluded that this is one of the designs,

15:32:47  24     Trailer Trash Edition 1.  Is that correct?

15:32:50  25  A.   Yes.

                                                     91

PAUL MONTWILLO - MARCH 10, 2008

| | | |
|---|---|---|
| 32:53 | 1 | Q. This particular design features the model, the doll |
| 15:33:01 | 2 | in what looks to be a representation of blue jean |
| 15:33:06 | 3 | shorts. I believe you previously made reference to |
| 15:33:11 | 4 | these as "Daisy May" shorts? |
| 15:33:13 | 5 | A. Daisy Duke shorts. |
| 15:33:16 | 6 | Q. Daisy Duke shorts. And does that come from "The |
| 15:33:19 | 7 | Dukes of Hazard" television show? |
| 15:33:22 | 8 | A. Yes. |
| 15:33:22 | 9 | Q. The character of Daisy Duke? That's how you were |
| 15:33:26 | 10 | describing them. |
| 15:33:27 | 11 | A. There was a reference, yes. |
| 15:33:33 | 12 | Q. And the doll also is wearing a red and white |
| 33:38 | 13 | checked halter top. Is that how you would |
| 15:33:42 | 14 | characterize that garment? |
| 15:33:46 | 15 | A. Well, I guess halter top isn't correct, but -- |
| 15:33:49 | 16 | Q. How would you describe it? |
| 15:33:51 | 17 | A. I can't remember the correct word for that. |
| 15:33:54 | 18 | Q. Is it a crop top? |
| 15:33:55 | 19 | A. Crop top maybe, something. I don't know. Skimpy, |
| 15:33:59 | 20 | skimpy thing on top. |
| 15:34:02 | 21 | Q. Right. And the hairdo of the doll is pig tails? |
| 15:34:07 | 22 | A. Yes. |
| 15:34:08 | 23 | Q. Pig tails and bangs? |
| 15:34:11 | 24 | A. And black roots, yes. |
| 34:12 | 25 | Q. And notably the black roots. |

92

PAUL MONTWILLO - MARCH 10, 2008

| | | |
|---|---|---|
| 34:15 | 1 | A.   And the cigarette, yes.  And the blue eye shadow. |
| 15:34:16 | 2 | Q.   Okay.  Cigarettes, blue eye shadow. |
| 15:34:23 | 3 | Have you ever seen characters in |
| 15:34:26 | 4 | literature, movies or any other genre, where these |
| 15:34:32 | 5 | elements are incorporated to convey rural or poor |
| 15:34:38 | 6 | white individuals? |
| 15:34:39 | 7 | A.   Well, that's what I was trying to convey; I mean, |
| 15:34:42 | 8 | it obviously stems from a stereotype. |
| 15:34:48 | 9 | Q.   And these elements are elements of that stereotype, |
| 15:34:52 | 10 | right? |
| 15:34:53 | 11 | A.   Yes. |
| 15:34:53 | 12 | Q.   Would it be fair to say that with respect to the |
| 34:56 | 13 | Blonde Drag Queen and the Red Head Drag Queen, that |
| 15:34:59 | 14 | you attempted also to utilize similar genre |
| 15:35:05 | 15 | stereotypes to convey the impression of what the |
| 15:35:08 | 16 | doll was? |
| 15:35:09 | 17 | MR. SOMMERS:  Objection, horribly vague. |
| 15:35:11 | 18 | Horribly, horribly vague. |
| 15:35:16 | 19 | THE WITNESS:  No. |
| 15:35:17 | 20 | MR. GREENBERG:  Okay. |
| 15:35:19 | 21 | Q.   With respect to the Blonde Drag Queen, what |
| 15:35:23 | 22 | elements did you add to that design? |
| 15:35:28 | 23 | A.   Everything but the body. |
| 15:35:30 | 24 | Q.   And what were those elements; what is the |
| 35:32 | 25 | everything? |

93

PAUL MONTWILLO - MARCH 10, 2008

| | | |
|---|---|---|
| 35:35 | 1 | A.  Dress, purse, hair, makeup.  Everything. |
| 15:35:42 | 2 | Packaging.  Whatever. |
| 15:35:46 | 3 | Q.  And how would it be that someone looking at that |
| 15:35:50 | 4 | doll would know that it was supposed to be a drag |
| 15:35:53 | 5 | queen as opposed to an actual female? |
| 15:36:05 | 6 | A.  It has a male body.  It's exaggerated makeup.  It's |
| 15:36:16 | 7 | a drag queen. |
| 15:36:19 | 8 | Q.  From your expression -- |
| 15:36:21 | 9 | A.  I'm like, what?  It's a drag queen. |
| 15:36:24 | 10 | Q.  Right.  My sense is that the elements that you |
| 15:36:26 | 11 | incorporated were so clear that anyone looking at |
| 15:36:29 | 12 | it would know it was a drag queen.  Is that right? |
| 36:32 | 13 | A.  That's correct. |
| 15:36:33 | 14 | Q.  And in order for that to happen, people looking at |
| 15:36:38 | 15 | this have to have a stereotype in mind of what a |
| 15:36:42 | 16 | drag queen is.  Isn't that also true? |
| 15:36:45 | 17 | MR. SOMMERS:  Objection, argumentative. |
| 15:36:46 | 18 | THE WITNESS:  No. |
| 15:36:47 | 19 | MR. GREENBERG:  No? |
| 15:36:47 | 20 | THE WITNESS:  No. |
| 15:36:48 | 21 | MR. SOMMERS:  Calls for opinion. |
| 15:36:53 | 22 | MR. GREENBERG:  Okay. |
| 15:36:59 | 23 | Q.  How would you characterize the hair on the Blonde |
| 15:37:01 | 24 | Drag Queen? |
| 17:02 | 25 | MR. SOMMERS:  Objection, vague. |

94

PAUL MONTWILLO - MARCH 10, 2008

37:06   1            MR. GREENBERG:

15:37:06   2    Q.   Well, what choice did you make as to what the hair

15:37:09   3         should be for the Blonde Drag Queen?

15:37:11   4            MR. SOMMERS:  Objection, vague.  Go

15:37:12   5         ahead.

15:37:13   6            THE WITNESS:  I chose long blonde hair.

15:37:15   7            MR. GREENBERG:

15:37:15   8    Q.   Why?

15:37:17   9    A.   I knew I was going to do a white dress.  So a lot

15:37:23   10        of drag queens like to do Marilyn, so I put the

15:37:27   11        blonde in a white dress.

15:37:30   12   Q.   Sort of to evoke the drag queen version of Marilyn?

37:33   13   A.   Yes.

15:37:38   14   Q.   Was the Red Head Drag Queen evocative of any

15:37:43   15        celebrity?

15:37:47   16   A.   Brian O'Rourke.

15:37:48   17   Q.   And who is that?

15:37:49   18   A.   A friend of mine.

15:37:51   19   Q.   And does Brian O'Rourke on occasion attire himself

15:37:57   20        as a drag queen?

15:37:58   21   A.   Yes.

15:38:00   22   Q.   So this was designed to look like him?

15:38:03   23   A.   Yes.

15:38:06   24   Q.   Did you get a license from him?

38:09   25   A.   No.  No, I did not.  I believe he has the original

95

PAUL MONTWILLO - MARCH 10, 2008

01:44   1   Q.   Going back to Exhibit 4, July 13, 2004, this is

16:01:49   2        your letter to Mr. Wong.  You state in the third

16:01:56   3        paragraph, "I hold the copyrights to all my

16:01:59   4        designs, not the company." We've gone over that

16:02:01   5        once or twice before.

16:02:04   6               Was it your understanding, Mr. Montwillo,

16:02:08   7        that as of July 13, 2004, Arsenic & Apple Pie

16:02:16   8        intended to continue to sell the dolls that you

16:02:22   9        claim you held the copyrights to?

16:02:24   10  A.   That was a response.  I don't recall the letter it

16:02:28   11       was in response to.  I was addressing a letter I

16:02:30   12       received from Mr. Wong.

02:32   13   Q.   Okay.  After July 13, 2004, was it your

16:02:36   14       understanding that Arsenic & Apple Pie continued to

16:02:38   15       sell the designs -- the dolls that embodied the

16:02:43   16       designs you claim to own?

16:02:45   17  A.   Yes.

16:02:53   18  Q.   Did you prior to the filing of the copyright

16:02:56   19       infringement lawsuit in this case, ever send notice

16:03:01   20       to Arsenic & Apple Pie that you believed that they

16:03:05   21       were violating your copyright?

16:03:09   22  A.   You are looking at it.

16:03:11   23  Q.   Okay.  So in your view this letter of July 13,

16:03:14   24       2004, was you sending notice to them that they were

03:18   25       violating your copyright?

107

| | | |
|---|---|---|
| 35:02 | 1 | A. I'm not sure if Alan prepared them or who prepared |
| 16:35:04 | 2 | them, but I got them, yes. |
| 16:35:07 | 3 | Q. And did you review those? |
| 16:35:08 | 4 | A. When I got them; yes, I did. |
| 16:35:10 | 5 | Q. So did that give you a sense what the financial |
| 16:35:13 | 6 | status of the company was? |
| 16:35:15 | 7 | A. Well, there were some years where they said I made |
| 16:35:18 | 8 | money and I didn't, that I was paid.  I got audited |
| 16:35:21 | 9 | by the IRA. |
| 16:35:22 | 10 | Q. You got audited by the IRA in connection with what? |
| 16:35:27 | 11 | A. With not claiming enough money that they -- that |
| 16:35:31 | 12 | was said I was paid. |
| 35:33 | 13 | Q. So the company reported payment or income to you |
| 16:35:38 | 14 | that you are saying you didn't receive? |
| 16:35:41 | 15 | A. That's correct. |
| 16:35:42 | 16 | Q. In what amount? |
| 16:35:44 | 17 | A. I don't recall. |
| 16:35:46 | 18 | Q. What was the outcome of the audit? |
| 16:35:48 | 19 | A. I was okay. |
| 16:35:50 | 20 | Q. You weren't required to pay any tax? |
| 16:35:53 | 21 | A. No. |
| 16:35:55 | 22 | Q. Any penalties? |
| 16:35:58 | 23 | A. I don't think so, no. |
| 16:36:00 | 24 | Q. Did any of the returns that you received from the |
| 36:03 | 25 | company ever indicate that you were being paid |

122

PAUL MONTWILLO - MARCH 10, 2008

1    royalties?

2  A.    Royalties?

3  Q.    Yes.

4  A.    No.  I don't think so.  I don't recall.  It just

5        said I was paid, period, that's all it said.  It

6        didn't say for what.

7               MR. GREENBERG:  We're done.  Thank you.

8

9               (Whereupon the deposition was

10                concluded at 4:36 p.m.)

11

12        _____

13        PAUL MONTWILLO

14

15

16

17

18

19

20

21

22

23

24               --oOo--

25

123