David Y. Wong, Attorney at Law (SBN 105031)
100 Shoreline Highway, Suite 100 B
Mill Valley, CA 94941
Tel: (415) 339-0430
Fax: (415) 332-8679

Law Office of Marc H. Greenberg (SBN 88493)
536 Mission Street, Suite 2323
San Francisco, CA 94105
Tel: (415) 442-6611

Attorneys for Defendants William Tull, Daniel Gibby and Gibby Novelties, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL MONTWILLO, an individual<br><br>Plaintiff,<br><br>vs.<br><br>WILLIAM TULL; DANIEL GIBBY; GIBBY NOVELTIES, LLC dba ARSENIC & APPLE PIE, a California Limited Liability Corporation and DOES 1 through 20, inclusive,<br><br>Defendants. | CASE NO. C 07 3947 SI<br><br>Reply Memorandum of Defendants William Tull, Daniel Gibby and Gibby Novelties, LLC to Plaintiff's Opposition to Defendants' Motion for Summary Judgment; Declarations of William Tull, Daniel Gibby and David Y. Wong in Support Thereof<br>**(FRCP RULE 56(C)**<br><br>April 25, 2008<br>9:00 a.m.<br>Judge Susan Illston, Courtroom 10 |
| And related Counter-Claim | The Federal Building<br>450 Golden Gate Avenue<br>San Francisco, CA 94102<br><br>Complaint filed: August 1, 2007 |

## TABLE OF CONTENTS

| | Page No. |
|---|---|
| Table of Contents | i-ii |
| Authorities | ii |
| Affidavits/ Declaration | iii |

1. **PROCEDURAL OBJECTIONS TO PLAINTIFF'S OPPOSITION MEMORANDUM** — **2**

2. **SUMMARY JUDGMENT IS PROPER BECAUSE PLAINTIFF'S SOLE CLAIM OF COPYRIGHT INFRINGEMENT IS BARRED BY THE THREE YEAR STATUTE OF LIMITATIONS.** — **4**

3. **DEFENDANT GIBBY IS PROTECTED BY THE FIRST SALE DOCTRINE** — **6**

4. **PLAINTIFF'S DUAL CLAIMS THAT THE DOLL DESIGNS AT ISSUE WERE CREATED BEFORE THE ARSENIC AND APPLE PIE BUSINESSES BEGAN AND THAT HE NEVER TRANSFERRED THOSE DESIGNS TO THE COMPANY, ARE CONTRADICTED BY THE UNDISPUTED FACTS OF THIS CASE** — **7**

   a. **Plaintiff's Creation Arguments Confuse Unprotected Ideas With Protectible Expression of Ideas.** — **7**

   b. **The Operating Agreement Language, and the *Graham* Decision, Support Defendants' Claim That Plaintiff Agreed to Create Doll Designs for the LLC, and Not For His Own Benefit** — **8**

5. **THE EVIDENCE THAT PLAINTIFF DESIGNED PRODUCT BOXES THAT ASSERTED COPYRIGHT OWNERSHIP BY THE LLC, AND** — **12**

**FAILED TO CLAIM COPYRIGHT OWNERSHIP IN HIS BANKRUPTCY SCHEDULES, IS RELEVANT AND MATERIAL – IT ESTABLISHES BY ESTOPPEL THAT PLAINTIFF NEVER ASSERTED COPYRIGHT TO THE DOLL DESIGNS UNTIL THE LLC WAS DISSOLVED**

**6. THE LACK OF ORIGINALITY IN PLAINTIFF'S DESIGNS SUPPORT A GRANT OF SUMMARY JUDGMENT** **14**

**7. CONCLUSION** **15**

## AUTHORITIES

### Cases

*Funky Films, Inc. v. Time Warner Entertainment Co., L.P.*, 462 F.3d. 1072 (9th Cir. 2006) 14

*The Martha Graham School and Dance Foundation, Inc. v. Martha Graham Center of Contemporary Dance, Inc.*, 374 F. Supp. 355 (SDNY 2005), affirmed under the same name in 466 F. 3rd 97 (C.A. N.Y. 2006). 10

### Statutes

11 U.S.C. § 106(3)
11 U.S.C. § 109(a)
17 U.S.C.A. §102(b)
Local Rule 6-1(b)
Local Rule 6-3
Local Rule 7-2(c)
General Order 45 (VI)(D)

### Other Authority

M Nimmer & D. Nimmer, *Nimmer on Copyright (2007)* 14

MONTWILL V. TULL, ET AL. USDC Action No. C 07 3947 SI ii

Table of Contents and Authorities- Defendants' Opposition to Plaintiff's Motion for Summary Judgment

**Declaration/Affidavit**

William Tull

Exhibits: K. Montwillo's Schedule K-1 statements from Arsenic & Apple Pie for 1999, 2000, 2002 and 2003;

L. Certified Mail Receipts for Schedule K-1 statements for 2002, 2003 and 2004

Daniel Gibby

David Y. Wong

Exhibits: 1. Letter to Sommers of April 8, 2008

David Y. Wong, Attorney at Law (SBN 105031)
100 Shoreline Highway, Suite 100 B
Mill Valley, CA 94941
Tel: (415) 339-0430
Fax: (415) 332-8679

Law Office of Marc H. Greenberg (SBN 88493)
536 Mission Street, Suite 2323
San Francisco, CA 94105
Tel: (415) 442-6611

Attorneys for Defendants William Tull, Daniel Gibby and Gibby Novelties, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| PAUL MONTWILLO, an individual<br><br>Plaintiff,<br><br>vs.<br><br>WILLIAM TULL; DANIEL GIBBY; GIBBY NOVELTIES, LLC dba ARSENIC & APPLE PIE, a California Limited Liability Corporation and DOES 1 through 20, inclusive,<br><br>Defendants.<br><br>And related Counter-Claim | ) | CASE NO. C 07 3947 SI<br><br>Reply Memorandum of Defendants William Tull, Daniel Gibby and Gibby Novelties, LLC to Plaintiff's Opposition to Defendants' Motion for Summary Judgment; Declarations of William Tull, Daniel Gibby and David Y. Wong in Support Thereof<br>**(FRCP RULE 56(C)**<br><br>April 25, 2008<br>9:00 a.m.<br>Judge Susan Illston, Courtroom 10<br><br>The Federal Building<br>450 Golden Gate Avenue<br>San Francisco, CA 94102<br><br>Complaint filed: August 1, 2007 |

Defendants William Tull, Daniel Gibby and Gibby Novelties, LLC, hereby submit their Reply Memorandum of Points and Authorities to Plaintiff's Opposition to Defendants' Motion for Summary Judgment.

1. **PROCEDURAL OBJECTIONS TO PLAINTIFF'S OPPOSITION MEMORANDUM**

The procedural violations of Plaintiff have rendered it nearly impossible for Defendants to fully respond to Plaintiff's Opposition to Defendants' Motion for Summary Judgment. Not only have these violations placed Defendants at a severe disadvantage, this is the *third* time in less than a month[1] that Plaintiff's Counsel has flagrantly ignored and violated the Rules of Civil Procedure and the Court's Local Rules. Defendants object and ask that the Court disregard and strike from the record Plaintiff's Memorandum of Points and Authorities in Opposition to Defendants' Motion for Summary Judgment.

On March 21, 2008, Defendants filed their Motion for Summary Judgment as per the Pretrial Preparation Order issued by the Court on November 16, 2007, and affirmed on March 14, 2008. Said Order provided that any Opposition must be filed by April 4, 2008. On the evening of April 4, Plaintiff electronically filed a Supplemental Declaration in Opposition to Defendants' Motion, but did not file Plaintiff's Opposition Memorandum of Points and Authorities, electronically or otherwise.

On April 8, 2008, after Defense Counsel advised that Plaintiff's Opposition did not appear to have been filed, Plaintiff electronically filed his Opposition Memorandum without a Court Order.

An attempt to file documents electronically does not alter any filing deadlines. "All electronic transmissions of documents must be completed (i.e., received completely by the Clerk's Office) prior to midnight in order to be considered timely filed that day. Where a specific time of day deadline is set by Court order or stipulation, the electronic filing shall be completed

---

[1] On March 6, 2008, Plaintiff's Counsel was verbally chastised by Judge Mahoney of the California Superior Court at the hearing of these Defendants' Motion for Attorneys Fees for attempting to file and submit a lengthy "Reply to Defendants' Reply" on the morning of the hearing of Defendants' successful motion.

On the evening of March 21, 2008, Plaintiff filed a Motion for Summary Judgment electronically, but failed to file or serve his supporting Declaration. On March 24, he manually filed the document but failed to serve it on Opposing Counsel until after Defendants' Opposition to Plaintiff's Motion was filed on April 3, 2008.

MONTWILL V. TULL, ET AL. USDC Action No. C 07 3947 SI 2

Defendants' Reply to Plaintiff's Opposition to Defendants' Motion for Summary Judgment

by that time." General Order 45 (VI)(D).

In the event that a party fails to comply with a deadline for filing, the Civil Local Rules provide for only one means of seeking relief: by Court Order. Rule 6-1(b) provides that a court order is only means of extending the time for filing papers with the court when the deadline has already been fixed by court order. It provides as follows:

> "(b) When Court Order Necessary to Change Time. A Court order is required for any enlargement or shortening of time that alters an event or deadline already fixed by Court order or that involves papers required to be filed or lodged with the Court (other than an initial response to the complaint). A request for a Court order enlarging or shortening time may be made by written stipulation pursuant to Civil L.R. 6-2 or motion pursuant to Civil L.R. 6-3. Any stipulated request or motion which affects a hearing or proceeding on the Court's calendar must be filed no later than 10 days before the scheduled event."

In the instant matter, not only has Plaintiff failed and refused to obtain a Court Order enlarging the time for filing his Opposition to Defendants' Motion for Summary Judgment, Plaintiff made no effort to present a motion as called for under Rule 6-3, denying Defendants their right to properly object to the late filing. In fact, his Counsel never *attempted* to seek a stipulated request to extend the time. Instead, as he has done in the past, Plaintiff's Counsel simply ignored the Court's Orders and Rules and proceeded to file Plaintiff's Opposition as if the briefing schedule applies to everyone, except Plaintiff.

Moreover, Plaintiff's violations of the FRCP and Local Rules have stymied and substantially prejudiced Defendants in that they have been denied the legally- mandated period of time in which to prepare and file their Reply to Plaintiff's Opposition. Through no fault of Defendants, the time provided for the preparation of their Reply to Plaintiff's Opposition has been cut nearly in half, from seven calendar days to a less than four. The result is that Defendants have been forced to reply to Plaintiff's Opposition with barely enough time to analyze and digest its arguments, let alone prepare a comprehensive Reply to same. If permitted to stand, the prejudice to Defendants is and will be fertile grounds for appeal.

Based on Plaintiff's obvious disregard for and violation of the Federal Rules of Civil Procedure and Local Court Rules, evidenced by the failure of Plaintiff to file his Opposition within the deadline imposed by the Court, his failure and refusal to seek or present a motion to extend the filing deadline, cavalier filing of his Opposition four days after the deadline, and the substantial prejudice to Defendants resulting from inadequate notice, Defendants object to and move to strike from consideration the late filed and untimely served Opposition of Plaintiff to Defendants' Motion for Summary Judgment. Defendants thus urge this Court to grant Defendants' Motion for Summary Judgment based on the absence of any filed Opposition to Defendants' Motion.

2. **SUMMARY JUDGMENT IS PROPER BECAUSE PLAINTIFF'S SOLE CLAIM OF COPYRIGHT INFRINGEMENT IS BARRED BY THE THREE-YEAR STATUTE OF LIMITATIONS.**

In his Opposition, Plaintiff attempts to argue that his letter of July 13, 2004, should not serve as the starting date of his infringement claim against Defendants because he addressed the letter to Counsel for Arsenic & Apple Pie, LLC, not the specific defendants in this action. The argument is completely without merit.

As conceded by both sides, Arsenic & Apple Pie was dissolved and terminated as a result of managing member Paul Montwillo's bankruptcy petition. As part of the windup of the Company, Tull received all of the Company's assets, both tangible and intangible, including the left over doll inventory, their intellectual property rights, and the rights to the Arsenic & Apple Pie business and tradename. These assets were then sold by Tull to Gibby on July 15, 2004 for monetary consideration.

At the same time, Plaintiff asserted his exclusive ownership interest to all five dolls in a letter dated July 13, 2004. In the letter, Montwillo offered to sell an exclusive license to the

dolls, not just to Arsenic, but also to Arsenic's other member, Defendant Tull. He then specifically identified each of the dolls to which he claimed the copyrights to: "Trailer Trash Doll, Blonde Drag Queen, Red Head Drag Queen, Talking Pregnant Trailer Trash Doll and Male Mullet Trailer Trash Doll," and admits in his deposition that he viewed this letter as notice to "...them that they were violating [his] copyright" Montwillo Deposition 107:23-108:1.

Given the foregoing, it is false and hypocritical for Plaintiff to claim that his July 13 letter was anything other than a blanket notice to Arsenic and Tull that he alone claimed the copyrights to the subject dolls. Hence, when Plaintiff testified at deposition that he viewed the letter as notice to "them" that they were violating his copyrights, it establishes beyond any doubt that he knew, appreciated, and was aware of his rights, and placed Arsenic and Tull on notice of his belief and claim that his copyrights were being infringed upon.

Moreover, Plaintiff's efforts to claim that there were "series of infringments", about which Montwillo found out "months after August 1st", is merely an effort to rewrite the allegations of the complaint. In fact, the Complaint alleges only that after the dissolution of Arsenic & Apple Pie:

> "13. ...defendants Tull and Gibby formed Gibby Novelties, LLC and continuted to sell novelty dolls which are identical in almost all respects to the dolls subject to the Doll Design Copyrights owned by Montwillo.
>
> 14. Defendants, without authorization from Montwillo, continue to manufacture, market, distribute and sell their line of infringing doll designs which are virtually exact reproductions of the doll designs owne by Montwillo and subject to the doll design copyrights."

Without qualification, Defendants observe that there is no allegation of multiple infringing acts at any specific dates and times, other than that the alleged infringing activity began "*after the dissolution of the LLC*". That event happened in July 2004, and when Montwillo received notice of the dissolution, he raised his claim of copyright infringement in his July 13th letter. These

MONTWILL V. TULL, ET AL. USDC Action No. C 07 3947 SI 5

Defendants' Reply to Plaintiff's Opposition to Defendants' Motion for Summary Judgment

facts support the position that the three year limitations period started in July 04, and not at any later date.

Finally, as to the male and pregnant dolls, only one of which existed in prototype form, ownership rights to them were transferred to Tull with the dissolution of the company, at the same time that Montwillo claimed ownership, along with the other three designs, in July of 2004. Defendants thus assert that while the subject dolls made by Gibby Novelties, LLC are not the same or derived from Montwillo's designs, the notice Montwillo gave Tull and Gibby in July of 2004 covered those designs, and started the three-year statute running. Based on these undisputed facts, the statute commenced in July of 2004, and expired in July of 2007, a least two weeks before this action was filed.

Using July 13, 2004 as the date of accrual, the last possible date that Plaintiff could have lawfully sued for copyright infringement was July 13, 2007. Plaintiff, however, did not initiate this action for copyright infringement until August 1, 2007, several weeks after the expiration of the three year statute of limitations for copyright infringement. As a matter of law, Defendants are entitled to summary judgment on the sole cause of action contained in Plaintiff's Complaint.

## 3. DEFENDANT GIBBY IS PROTECTED BY THE FIRST SALE DOCTRINE

The fact that the left-over Trailer Trash Doll models acquired from Arsenic by Tull, i.e. the original Trailer Trash Doll, Blonde and Redhead Drag Queen Dolls, have not been produced, manufactured or copied by Gibby or Gibby Novelties, LLC (See Affidavit of Daniel Gibby, Paragraph 4), further undercuts any argument of copyright infringement that Plaintiff may offer against Gibby or Gibby Novelties, LLC. Since Plaintiff has put forth no evidence that any of the three aforementioned dolls were manufactured after July of 2004, then the law is clear that as to those dolls, there is no infringing event.

Plaintiff admits that Arsenic had a license to produce and distribute the dolls while he was a member (Deposition of Montwillo 44:8-45:20). Hence, Plaintiff asserts and Defendants, for sake of argument will agree, that any dolls manufactured by Arsenic and offered for sale were done so under the authority of that license. When the unsold inventory was sold to Tull in consideration of his retirement of his loans, the sale of the dolls to Tull effectively terminates any further claim of infringement. Under 17 U.S.C.A. §§ 106(3) and 109(a), the "first sale" doctrine provides that a sale of a lawfully made copy terminates the copyright holder's authority to control or interfere with subsequent sales or distribution of that copy. In other words, the subsequent transfer of sale of the same doll inventory does not create a new copyright infringement against Gibby of Gibby Novelties, LLC.

**4. PLAINTIFF'S DUAL CLAIMS THAT THE DOLL DESIGNS AT ISSUE WERE CREATED BEFORE THE ARSENIC AND APPLE PIE BUSINESSES BEGAN AND THAT HE NEVER TRANSFERRED THOSE DESIGNS TO THE COMPANY, ARE CONTRADICTED BY THE UNDISPUTED FACTS OF THIS CASE**

**a. Plaintiff's Creation Arguments Confuse Unprotected Ideas With Protectible Expression of Ideas**

There has been much confusion generated in this case regarding Plaintiff's claims of creation of the doll designs at issue in or around 1996. Plaintiff claims, and supports his claims with newspaper clippings, that he created the Trailer Trash Doll and the Drag Queen Dolls in or before 1996, and sold them in Defendant Tull's store in 1996. Based on this claim, he asserts that he established a copyright ownership before entering into the partnership (1997) or LLC (1999) with defendants.

The confusion here appears to stem from a blurring of the distinction between idea and expression under copyright law. There is no dispute that Plaintiff came up with the idea of

Trailer Trash Dolls and Drag Queen Dolls before entering into a business relationship with Defendant Tull This acknowledgment does not, however, concede that these ideas, or their initial expression, contain sufficient originality to warrant protection as intellectual property.

The unprotectible idea of trailer trash and drag queen dolls was first expressed by Plaintiff prior to 1997, in the form of the dolls that utilized Barbie doll bodies, and resulted in Plaintiff and Defendant Tull being sued by Mattel. Those designs cannot be, and are not, the subject of this litigation. They were derivative works that violated Mattel's copyright and for Plaintiff to claim a copyright interest in same would not only be disingenuous given his consent to Mattel's injunction, but would most certainly give rise to another lawsuit against Plaintiff by Mattel concerning whose copyrights have been infringed.

In truth, what is at issue in this case is the second generation of Trailer Trash Dolls created by Montwillo *after* he entered into partnership with Defendant Tull in July of 1997. Even Plaintiff Montwillo is forced to admit as much in that each of the questionable copyright registrations he submitted in 2004, clearly states the date of creation of all five of the designs as: " 1998".

In view of this fact, the inquiry in this motion must then shift to the question of whether there is any triable issue of fact that when Montwillo entered into the partnership and then the LLC, of Arsenic and Apple Pie, did he, either through direct action, or inaction, transfer any copyright rights that may haveexisted in these designs, to the LLC. The evidence all suggests that he did knowingly effect such a transfer.

**b. The Operating Agreement Language, and the *Graham* Decision, Support Defendants' Claim That Plaintiff Agreed to Create Doll Designs for the LLC, and Not For His Own Benefit**

Plaintiff argues that Section 2.7 of the LLC Operating Agreement, which restates the duties of the co-owners in the same language that existed in their partnership agreement, does not constitute a conveyance of rights to the designs to the business. He argues that for such a

transfer to have been made, the language would have to be clearer – all the language at issue does, he argues, is delineate managerial responsibility. On closer examination, this argument lacks merit and is not persuasive.

Section 2.7 of the Operating Agreement provides that Montwillo is "in charge of art direction, design and advertising of product line, including but not limited to corporate identification, product design, packaging, website design, website maintenance and print advertising". Plaintiff argues that this language does not effect a transfer of any intellectual property rights. In order for this to be true, Plaintiff would ask this Court to rewrite the clause to read as follows:

> "Montwillo will be in charge of art direction, design and advertising of a product line *which is his sole and exclusive intellectual property*, including but not limited to corporate identification, product design, packaging, website design, website maintenance and print advertising, *all of which he will own. Arsenic will not own its corporate identification, or its product design. Montwillo will own those items, and upon his departure from Arsenic for any reason, all business activity of Arsenic must cease, since it does not own the design of its products, advertising, or website." (Plaintiff's desired text in italics)*

To state the added text desired by Plaintiff illustrates the absurdity of his claim. The reason the original clause evidences the transfer of any rights owned in the design, is that if Montwillo is responsible for creating product designs, for whom other than Arsenic could it be reasonably presumed he is doing this work for? In essence, Montwillo's agreement to accept sole responsibility for creating product designs for Arsenic in exchange for an ownership interest necessarily and logically means that any products he then designs are the property of the Company. It is because the clause can only be reasonably read as a reflection of Montwillo's commitment to design products for Arsenic, that it serves as evidence of a transfer of any

existing and all future design rights to the company, absent an express reservation of those rights.

Regarding Montwillo's claim that he insisted on the removal of alleged transfer of rights language in the LLC Operating Agreement, this claim should be disregarded by the Court, as Montwillo has admitted[2], that he not only has no documentation of the language he wanted removed or any correspondence referring to the edits, he further can not even recall the specific language he requested be removed. Instead, the Affidavit of Defendant Tull filed in this matter firmly establishes that no such deletion was ever suggested, requested, proposed, or made.

Turning to the "work for hire" issue, Plaintiff's attempt to distinguish his situation with that of Martha Graham fails. The situations are analogous for a number of reasons:

1. Both Graham and Montwillo were both the creative forces at work in their respective companies. While Graham was carried on the books of the Martha Graham Foundation as an employee, it is undisputed that she was a lot more than a typical employee of the foundation. It existed to allow her to create and promote her dance choreography. It serves, in that sense, much more like a typical "loan-out" company in the entertainment business. The employee of the loan-out company is the artist, who also functions as the principal shareholder, and therefore "owner", of the company.

2. Similarly, Montwillo was a half owner of Arsenic & Apple Pie, LLC, as evidenced by his testimony and the Tax Schedule K's, as well as its sole creative influence. (See, Affidavit of Tull in support of this Reply). Plaintiff received partnership and K-1 statements from the LLC indicating income allocated to him by the entity. Because operating expenses exceeded income, he received no "paychecks" from the company, but on the other hand, he admitted in his deposition that he never received any royalty payments, either.

---

[2] Cited in Defendants' Opposition to Plaintiff's summary judgment motion,

Hence, while Montwillo may not have been the recipient of a steady stream of income based on a salary or profits generated, he did receive and undoubtedly claimed a monetary benefit in the form of a deductible loss which reduced his tax liability from his other forms of income. Hence, it is false misleading for Plaintiff to claim that he was not an "employee" merely because he did not receive a salary or insurance benefits. As an owner in the business, he clearly received benefits above and beyond hourly compensation.

3. Furthermore, although Montwillo claims to have exercised complete control over his areas of responsibility in the LLC, the undisputed facts indicate otherwise. Montwillo had to work with a Chinese company on the manufacturing process for the dolls and their packaging. All of the funding for that work came from the LLC. The cost of all materials used in the doll designs also came from the LLC. In short, all of Montwillo's design work on the dolls was, per the terms of the Operating Agreement, done for the benefit and use of the LLC. To demonstrate this point more precisely, Montwillo and Tull both agree that work on a talking pregnant doll was started but placed on hold due to the financial condition of the LLC. If Montwillo, as he asserts, were unconstrained by the limitations and finances of the LLC, then why would he stop production work on a new doll? The answer is clear, he had no choice because all work had to be approved and paid for by the LLC. Thus, the facts clearly show that he did not exercise complete control over his design duties.

4. Finally, Montwillo cites no other entity for whom he designed dolls during the times at issue. Indeed, Plaintiff until his entry into a partnership and an LLC with Tull, had never designed dolls or toys before. Since the dissolution of Arsenic & Apple Pie, LLC, Plaintiff has apparently not designed any more dolls on his own, nor has he worked as a freelance doll designer for anyone else.

These facts support a finding that the *Graham* case is analogous to the case at bar, and warrants a finding that the work for hire doctrine does apply.

**5. THE EVIDENCE THAT PLAINTIFF DESIGNED PRODUCT BOXES THAT ASSERTED COPYRIGHT OWNERSHIP BY THE LLC, AND FAILED TO CLAIM COPYRIGHT OWNERSHIP IN HIS BANKRUPTCY SCHEDULES, IS RELEVANT AND MATERIAL – IT ESTABLISHES BY ESTOPPEL THAT PLAINTIFF NEVER ASSERTED COPYRIGHT TO THE DOLL DESIGNS UNTIL THE LLC WAS DISSOLVED**

Plaintiff's Opposition, at page 9, argues that "The Copyright Publication Is Not Material to the Issue of Copyright Ownership". Counsel goes on to argue that the defendants are wrong to claim that "since the packaging had a copyright publication on it, Montwillo somehow assigned his copyrights to AAP."

Defendants will give Plaintiff's counsel the benefit of the doubt here, and assume that this argument does not purposely try to confuse the concepts of publication, and notice of copyright ownership. The concept of publication in copyright law refers to when and how a protected work is first made available to the public. The use of a notice of copyright, *ie:* ©, represents a claim of ownership in the copyright of the work where the notice appears.

Defendants argument is that the placement of copyright notice, on every box containing any of the dolls sold by AAP between 1997 and 2004, in which the notice made it clear to the world that copyright ownership was held by Arsenic & Apple Pie" (hereafter "Arsenic"), supports Defendants' claim that ownership of any protectible intellectual property interests in the doll designs was held by Arsenic during this time. The fact that the product packaging containing Arsenic's claim of copyright ownership was designed by the Plaintiff himself further supports Defendants' claims not only of a transfer to Arsenic, but also of a waiver and abandonment of all rights by Plaintiff.

At the very least, Plaintiff is estopped from asserting a copyright claim as to all dolls sold in packaging displaying Arsenic's copyright claim, which covers all of the left-over inventory given to Tull as part of Arsenic's dissolution, then sold to Gibby in July of 2004.

The related claim by Plaintiff that his failure to list the claimed copyrights on his bankruptcy schedules is immaterial, is disingenuous sophistry at its best. Defendants do not cite this fact as proof that the LLC owned the copyrights. It is cited as proof that Plaintiff submitted a bankruptcy schedule in which he affirmatively asserted, under penalty of perjury, that he did not own any copyrights as of 2003. Moreover, this admission to the Bankruptcy Court directly contradicts his claim to have always owned and retained these rights since 1996, as well as his insistence that he removed language from the Operating Agreement that would have otherwise transferred those rights.

Plaintiff's counsel's argument that "Since Montwillo never made any money from the copyrights, as a lay person it is natural he would not list them", is nonsense. Most assets owned by people are not income generating. Applying counsel's logic, a debtor need not list their home or automobile on their schedules, since these are also not income-generating assets. There is nothing on the Schedule form that instructs debtors to refrain from listing copyrights or other IP rights owned, if they aren't income generating. To the contrary, the law clearly requires all assets to be listed, even if they appear to be of no value.

Moreover, Plaintiff's Opposition fails to address the serious nature of this misrepresentation in his bankruptcy schedule. As was noted in Defendants' Opposition to Plaintiffs Motion for Summary Judgment, the failure to list assets is grounds for the re-opening of a bankruptcy estate. If Plaintiff does own any copyrights with value in this matter, they should be transferred to a re-opened bankruptcy estate, and not to Plaintiff. Any other result would allow Plaintiff to reap a windfall benefit from this misrepresentation.

**6. THE LACK OF ORIGINALITY IN PLAINTIFF'S DESIGNS SUPPORT A GRANT OF SUMMARY JUDGMENT**

Plaintiff vigorously argues that the doll designs in this case meet the minimal originality requirements of copyright law. Defendants have presented extensive argument on this issue, which need not be repeated. It is worth noting, however, that a key authority cited by Plaintiff in support of his claim, actually provides strong support for Defendants claim.

Plaintiff cites *Nimmer on Copyright* for the proposition that "Unprotected scenes a faire elements are forms of expression which are inextricably linked to the underlying idea, and ideas are not copyrightable". (Plaintiff's Opposition at 11:11-13). Defendants could not agree more with Professor Nimmer on this subject – however it is a view that supports Defendants' motion, and not Plaintiff's.

As noted in previous filings in this case, the clothing and make-up design elements "created" by Plaintiff are all genre elements that signify that a given doll is either "trailer trash" or a "drag queen". Applying the definition of scenes a faire cited in *Nimmer* to these designs, is there really any argument that the red-and-white crop top, Daisy Duke jean shorts, blue eye-liner and blonde hair with dark roots are not common forms of expression that are inextricably tied to the idea of a "trailer trash" personna? Would Plaintiff be entitled to copyright protection for these clothing or make-up items on their own? Of course not. The same is true for the drag queen designs. A male doll dressed up in a blonde wig and a white dress to invoke a drag queen version of Marilyn Monroe is an unprotectible idea – and no copyright can be obtained to protect a blonde wig and a white dress.

Plaintiff's Opposition thus fails to raise a triable issue of fact by refusing to consider or address the basic issue of whether his copyright registrations are valid in the first place. As recognized recently in *Funky Films, Inc. v. Time Warner Entertainment Co., L.P.*, 462 F.3d. 1072 (9th Cir. 2006) a plaintiff bringing a claim for copyright infringement must demonstrate (1)

ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. *Id.* at 1076. If either element is lacking, the claim is defective and is subject to summary judgment. Since Ideas alone are not copyrightable, if the similarities that do exist are confined to nonprotectable ideas, there is no infringment claim. 17 U.S.C.A. § 102(b).

**7. CONCLUSION**

Plaintiff's Opposition to Defendants' Motion for Summary Judgment reeks of procedural violations, was never timely filed or served in this proceeding, and must, for those reasons, be stricken and disregarded.

On its merits, Plaintiff's Opposition also fails to raise any credible arguments that the evidence adduced in this case, yields the conclusion that there is no triable issue of material fact left in this case which can support a claim of copyright infringement. Plaintiff's case was filed after the expiration of the statute of limitations, and to the extent the doll designs contain any protectible elements, the right to that protection was transferred to Arsenic and thereafter to the Defendants, either by the language of the Operating Agreement, or by application of the work for hire doctrine. Finally, Defendants' have provided, in their motion, sufficient evidence to support a finding that the designs at issue, in any event, lack sufficient originality and are based on genre elements that the scenes a faire doctrine mandate may not be granted copyright protection. For all of these reasons, Defendants are entitled to an Order granting their motion for summary judgment.

Dated: April 11, 2008

Respectfully Submitted,

David Y. Wong, Attorney at Law
Marc H. Greenberg, Attorney at Law
Attorneys for Defendants William Tull, Daniel Gibby and Gibby Novelties, LLC