STEPHEN A. SOMMERS, SBN 225742
Sommers Law Group
870 Market Street, Ste. 1142
San Francisco, CA 94102
(415) 839-8569 (Telephone)
(415) 956-0878 (Fax)
ssommers@sommerslaw.com

Attorney for Plaintiff &
Counter-defendant
Paul Montwillo

# UNITED STATES DISTRICT COURT

# FOR NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL MONTWILLO, an individual; | Case No. C 07 3947 SI |
| Plaintiff, | STEPHEN SOMMERS'S SECOND SUPPLEMENTAL DECLARATION IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGEMENT |
| vs. | |
| WILLIAM TULL, an individual; DANIEL GIBBY, and individual; GIBBY NOVELTIES, LLC dba ARSENIC & APPLE PIE, a California limited liability company; and DOES 1-100, inclusive, | **Date:** **April 25, 2008**<br>**Time:** **9:00 a.m.**<br>**Court:** **10, 19th Floor**<br>**Judge:** **Honorable Susan Illston** |
| Defendants. | |
| WILLIAM TULL, an individual; | Complaint Filed:    August 1, 2007<br>Counterclaim Filed:    January 11, 2008 |
| Counter-Claimant, | Trial Date:    June 30, 2008 |
| vs. | |
| PAUL MONTWILLO, an individual, and DOES 21 through 30, inclusive, | |
| Counter-Defendants | |

I, Stephen A. Sommers, declare:

Page 1 of 3

SOMMERS LAW GROUP

1.    I am an attorney licensed by the State of California, admitted to practice before this Court, and am attorney of record for Plaintiff Paul Montwillo.

2.    On March 20, 2008, I conducted the deposition of Defendant, William Tull, in this action. Mr. Tull was represented by his attorney's David Y. Wong and Marc H. Greenberg. The Memorandum of Points and Authorities in Reply to Defendant's Opposition to Plaintiff's Motion for Summary Judgment contains citations to deposition testimony of William Tull. Attached hereto are incorporated by reference herein are true and correct copies of this deposition transcript pages, in full wherein each of the cited testimony excerpts may be found. I declare that the deposition testimony as recited in the transcript attached accurately reflects the actual deposition. The pages attached are arranged in numerical order as follows: 61, 62, 64, 65, 100, 104, 105-110, 112.

3.    On or about February 5, 2008, I promulgated Requests for Production of Documents and Things (Set One) Under Rule 34 upon defendants. Request number 24 requests from Gibby Novelties, LLC all documents demonstrating the amount of sales generated from the dolls subject to the copyright registrations subject to this case. A true and accurate copy of this document is attached hereto as Exhibit B. On March 10, 2008, I received defendants' responses by facsimile. At true and accurate copy of this response is also attached hereto as Exhibit B. To date, Plaintiff has yet to receive any sales documents within the scope of from Gibby Novelties, LLC.

4.    At William Tull's March 20, 2008 deposition, I asked attorney for defendants Daniel Gibby and Gibby Novelties, LLC about the failure to produce documents covered in the document demand relating to Daniel Gibby and Gibby Novelties, LLC. The transcript of this discussion is included with the deposition transcript attached as Exhibit A. At the deposition, Wong stated that he would produce the documents "probably next week and half." On April 2, 2008, I sent an e-mail to David Wong inquiring about the documents. On April 3, 2008, Wong emailed me back stating that he had been busy and requested additional two (2) week extension. On the same day, I replied to his email stating that an additional two weeks was unsatisfactory. I

Montwillo, et al. v. Tull et al., SF Superior Ct Case No. CGC-05-442352
STEPHEN SOMMERS'S SECOND SUPPLEMENTAL DECLARATION IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGEMENT

SOMMERS LAW GROUP

1  have not been contacted by Wong on the subject since.  A true and accurate copy of these e-

2  mails are attached hereto as Exhibit C.

3      I certify under penalty of perjury under the laws of the United States of America that the

4  foregoing is true and correct, and that I am able to testify competently hereto.

5

6  San Francisco, California

7  Dated: April 11, 2008.

8

9                  /s/ Stephen Sommers
                   Stephen Sommers

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                           Page 3 of 3

SOMMERS LAW GROUP

# EXHIBIT A

```
 1            the question again.

 2                At any time was there a prototype developed for

 3            Arsenic & Apple Pie for a doll that had a hair style

 4            that would be referred to a as a mullet?

 5   A.       No, at no time was a mullet doll ever developed by

 6            Arsenic & Apple Pie, period.

 7   Q.       And at any time did you offer Mr. Montwillo money in

 8            return for a prototype doll called a Mullet Doll?

 9                     MR. WONG:   That's been asked and answered.

10                     THE WITNESS:   Why would I offer him money

11            for something that didn't exist?

12                     MR. SOMMERS:

13   Q.       But you do recall having a formal agreement with,

14            extending a formal agreement to Mr. Montwillo to buy

15            his 50 percent share of the company, correct?

16   A.       It was a tentative agreement, yes.

17   Q.       A tentative agreement, okay.   And the exhibit -- is

18            that 2, I believe?

19   A.       M-hm.

20   Q.       Could that be one of the tentative agreements?

21                     MR. WONG:   It could be anything.

22                     THE WITNESS:   It could be anything.   Yeah,

23            that tentative agreement was made verbally.

24                     MR. SOMMERS:

25   Q.       Was there ever a written agreement that was part of
```

JAN BROWN & ASSOCIATES (800) 522-7096  (415) 981-3498

1           the tentative agreement?

2    A.    No.  I didn't say, "Here, take this piece of paper.

3          This is my tentative agreement."

4    Q.    Did you have anybody do that on your behalf?

5    A.    Not that I recall.

6    Q.    Can you turn to the first page of this agreement,

7          please, of Exhibit 2?

8           On May 31, 2003, was David Wong your attorney?

9    A.    Yes.

10   Q.    And did he represent you with all your affairs with

11         regards to Mr. Montwillo and the purchase of his

12         membership?

13   A.    All of my affairs?

14   Q.    With regards to the purchase --

15   A.    No, he did not.

16   Q.    -- of Mr. --

17   A.    Not all of my affairs, no.

18   Q.    Okay.

19   A.    As a matter of fact, I would say no.  But what went

20         on between myself and Mr. Montwillo was between us

21         two.  We talked together; we talked ourselves.

22   Q.    But you hired Mr. Wong to assist you with your

23         negotiations with Mr. Montwillo, correct?

24   A.    No, I did not.

25   Q.    Did Arsenic & Apple Pie hire Mr. Wong to assist in

62

```
 1              copied, "CC William Tull."
 2                   Do you recall receiving a copy of this letter?
 3   A.    No, I don't.
 4   Q.    Do you have a system for retaining letters that are
 5         generated by attorneys that you employ?
 6   A.    A system?  No, I don't have a system.
 7   Q.    Do you have a file where you keep letters that your
 8         attorney gives you?
 9   A.    Embarrassingly, no.
10   Q.    Do you see at the bottom here where it says,
11         "Enclosure proposed purchase agreement"?
12   A.    Uh-huh.
13   Q.    Do you have any reason to believe that this letter
14         was not sent to Mr. Montwillo with an attached
15         proposed purchase agreement?
16   A.    Do I have any reason to believe that it was not sent
17         to him?  So you're asking do I have a reason that it
18         was sent to him, right?
19                   MR. SOMMERS:  Yeah.
20                   MR. WONG:  No.
21                   MR. SOMMERS:  Well, you can answer it either
22         way you like.
23                   MR. WONG:  Rephrase the question if that's
24         what you want to do.
25
```

                                                                    64

1                    MR. SOMMERS:

2    Q.    Does it seem reasonable to you that this letter with

3          the attached purchase agreement was sent to

4          Mr. Montwillo by Mr. Wong?

5    A.    Reasonable?

6    Q.    Do you believe it happened?

7    A.    Honestly, belief is a very funny concept.  I believe

8          in a lot of things.  I believe maybe in the higher

9          power.  But belief isn't proof.  So I mean that's --

10         I don't know.  I would have to guess to say that that

11         really truly happened, wouldn't I?  Believe.

12                   MR. WONG:  You've answered the question.

13                   MR. SOMMERS:

14   Q.    Do you have a reason to believe that this letter was

15         not sent to Mr. Montwillo with the attached

16         agreement?

17   A.    I'm not going to answer that anymore.  That's silly

18         again.

19   Q.    You said that you had hired Mr. Wong as your

20         attorney, and he's been your attorney for some time,

21         that he has been your attorney with regards to the

22         dissolution of Arsenic & Apple Pie and the purchase

23         of Mr. Montwillow's share?

24   A.    Wait a minute; wait a minute.

25   Q.    Here before you is a --

                                                              65

1              MR. SOMMERS:  The record can reflect that

2      Mark Greenberg has entered the room, attorney for the

3      defendant.

4              MR. GREENBERG:  Hi.

5              MR. SOMMERS:  Hi.

6

7              (Discussion off the record.)

8

9              MR. SOMMERS:

10  Q.   The question is, have you ever seen this document

11       before?

12  A.   Yes, I have.

13  Q.   What is it?

14  A.   It is an agreement for the purchase of membership

15       interest.

16  Q.   And is it fair to say it's between you and

17       Mr. Montwillo?

18  A.   Yes.

19  Q.   And it was never executed, correct?

20  A.   No.  It wasn't.

21  Q.   And who drafted this agreement?

22  A.   I'm going to assume that David did.

23  Q.   And you're referring to David Wong, of course?

24  A.   David Wong, yeah.

25  Q.   And -- okay, all right.  And then -- I hate putting

                                                          100

1           3.8 reads:  "If a member loans money to the company,

2           said loan shall bear interest at" -- and I believe

3           that's supposed to say "variable rates depending on

4           the origin of funds, percentage per annum as of the

5           date the funds were advanced to or on behalf of the

6           company until paid."

7                Is that your handwriting where it has in there

8           "variable rates depending upon the origin of the

9           funds"?

10    A.    I believe it is my handwriting, yes.

11    Q.    And is it also your handwriting in section 3.10 where

12          it says, "variable rates depending upon the origin of

13          the funds"?

14    A.    Yes.

15    Q.    And was it under these general sections that you

16          ended up loaning so much money to the company?

17    A.    Yes.

18    Q.    Okay, all right.  If you could please turn to page 8.

19                Do you have a page 8, David?

20                    MR. WONG:  No, no.

21                    MR. SOMMERS:  You're good?

22                    MR. WONG:  Yeah.

23                    MR. SOMMERS:  Okay.

24    Q.    At the bottom, 2.7, it says, "The managing members

25          shall be as follows:  Paul Montwillo."

104

1              Then after that, it says, "Manager in charge of

2      art direction, design and advertising of product

3      line, including but not limited to corporate

4      identification, product design, packaging, website

5      design, website maintenance and print advertising."

6              And then it says, "William Tull, manager in

7      charge of administration, business affairs,

8      accounting, distribution, sales and manufacturing."

9              Is it fair to say that your understanding of this

10     section was a differentiation of the scope of

11     responsibility between you and Mr. Montwillo?

12  A.   When it was initially done, yes.

13  Q.   That he would do some things, and you would do some

14     other things?

15  A.   Yes.

16  Q.   Is there anywhere in this agreement that you were

17     aware of -- and I can say I've read it several

18     times -- that you could point to me where there is a

19     conveyance of a copyright?

20  A.   Again, you're trying to confuse me.  And let me tell

21     you why.  You first got me going back saying that I

22     dissolved the company when I did not.  Paul's

23     bankruptcy dissolved the company.  So I'm really --

24     could you possibly ask me that question one more

25     time?

1    Q.    Move to strike as unresponsive, but that's fine.

2          Could you point to anything in this document --

3          when you signed it, right, this is the agreement.

4          You said you read it.  Where in this document if --

5          or let me rephrase that.

6          Is there a place in this document that assigns or

7          conveys in any manner intellectual property?

8    A.    We --

9                MR. WONG:  From whom to whom?

10                MR. SOMMERS:

11    Q.    Anybody.

12    A.    Again, I -- I -- again, I'm being confused.

13    Q.    Okay.  Do you understand -- okay.  Well, let me ask

14          this.

15          Do you have an understanding that there is a

16          clause in this document that conveys to anybody --

17          I'll even go more broad.  So scratch that earlier

18          question.

19          Do you have an understanding that there is

20          somewhere in this document a mention of intellectual

21          property?

22    A.    It was understood.  My contribution was financial;

23          Paul's was the design of the product, and that the

24          product belonged to the company.  And he also -- when

25          we went to Steinhart & Falconer, he knew that the

106

1    products were not copyrightable or trademarkable

2    trademarticable [sic]?  That's a good one.  So

3    therefore, that subject had already been broached and

4    understood between both parties.

5  Q.  Okay.  You're not answering my question.  The

6    question is, do you understand that this document

7    contains a clause that discusses intellectual

8    property, this document?

9  A.  I can't answer that specific question because I -- I

10    don't know.  I'm a layperson.

11  Q.  Okay, all right.  So as a layperson, is there any

12    part of this that you understood to address the

13    issues of intellectual property?

14  A.  No, because Paul -- it was never brought up.  Nothing

15    was ever brought up about intellectual property.

16    Nothing.  This was -- everything that was done was

17    the property of Arsenic & Apple Pie, and I think -- I

18    think that was fairly clear.

19  Q.  And is it your position that the things that were

20    created, the dolls, et cetera, were the property of

21    Arsenic & Apple Pie based on an oral agreement

22    between you and Paul?

23            MR. WONG:  I think we need to take a break.

24            MR. SOMMERS:  I have a question pending.  I

25    would just like a simple answer.

1              THE WITNESS:  All right.  Excuse me.  I have

2        to go to the bathroom anyway.  Where is the men's

3        room?

4              MR. SOMMERS:  I'd like the record to reflect

5        that I'm asking Mr. Tull to answer a simple question,

6        and he's leaving with his attorney before he comes

7        back to answer.

8

9                    (Off the record at 3:15 p.m. and

10                    back on the record at 3:19 p.m.)

11

12             MR. SOMMERS:  I need to go back on the

13        record.  I need to do a couple house-cleaning items.

14   Q.   First I want to mark this as Exhibit D.

15        And so Mr. Tull, I'd like you to say on the

16        record that this is the same box that I held up

17        before where you said that the -- that you don't

18        recall a box with the orange coloring on it.  Is that

19        correct?

20   A.   No.  That may be from maybe even another Barbie,

21        alternative Barbie person, so I never saw that box.

22   Q.   Right.  The question was, have you ever seen this

23        before?

24   A.   Um -- no.  Well, I don't know.

25   Q.   Will you look at it, please?  Do you have a

                                                      108

1           recollection of ever seeing this before?

2      A.   What is it?

3      Q.   It is what it is.

4      A.   You mean a doll with a bump underneath the dress?

5      Q.   I'm saying, have you ever seen this specific

6           doll with a bump --

7      A.   Is that the doll that you're purporting to be

8           pregnant because there's only a bump underneath the

9           dress.  It's nothing like the other pregnant doll.

10     Q.   Will you please answer my question, Mr. Tull?

11          Have you ever seen this before?

12     A.   No.

13     Q.   Okay.  I'm going to mark this as Exhibit D.

14

15                    (Whereupon a doll in a box was marked
                       for identification as Plaintiff's
16                     Exhibit D.)

17

18               MR. SOMMERS:  And while we have everybody

19     here, I want to get on the record.  Mr. Wong, do you

20     have any intention of producing any documents

21     relating to Gibby Novelties which I requested in our

22     document request?

23               MR. WONG:  With regard to the documents of

24     Gibby Novelties --

25               MR. SOMMERS:  You have yet to produce a

                                                          109

1       shred of -- not a single piece of paper that has

2       anything to do with Daniel Gibby or Gibby Novelties.

3       I don't have an email; I don't have any financial

4       information; I don't have any sales information which

5       all have been requested.

6              MR. WONG:  Well --

7              MR. SOMMERS:  Do you have any intention of

8       producing any of those documents?

9              MR. WONG:  I understand that.  I've reviewed

10      it.  I believe that with regard to the documents that

11      pertain strictly to the doll sales, that those can

12      and will be produced.  But those documents that I do

13      have require expunging of excess material that does

14      not relate to that case.

15             MR. SOMMERS:  When will you get me those

16      documents?  They were due over a week ago.

17             MR. WONG:  Well, I believe they'll be

18      produced probably in the next week and a half.

19             MR. SOMMERS:  The next week and a half?

20             MR. WONG:  Yeah.

21             MR. SOMMERS:  Conveniently timed after my

22      opposition to the summary judgment motion I'm filing

23      tomorrow?

24             MR. WONG:  I don't think it's pertinent to

25      your summary judgment.

                                                          110

1    Counsel.

2              MR. SOMMERS:  Do you intend on also

3    producing a privilege log with these to identify the

4    documents that you're not going to produce?

5              MR. WONG:  This will be the last thing I

6    answer.  For whatever is withheld, a privilege log

7    will be produced.

8              MR. SOMMERS:  And that will be produced at

9    the same time?

10             MR. WONG:  Yeah.

11             MR. SOMMERS:  Okay.

12   Q.   Mr. Tull, have you identified language in the

13        operating agreement that, after conferring with both

14        of your attorneys for ten minutes, that identify

15        intellectual property in any way?

16   A.   Yes.

17   Q.   Where have you identified that?

18   A.   Um, what page would that be on?  The duties of the

19        members, page 8.

20   Q.   Are you referring to section 2.7?

21   A.   Excuse me.  Let me go there so I can tell you.  Yes,

22        section 2.7.

23   Q.   And at the time -- all right.  At any time did

24        Arsenic & Apple Pie hire anybody to help them with

25        the design of products?

112

# EXHIBIT B

STEPHEN A. SOMMERS, SBN 225742
Sommers Law Group
870 Market Street, Ste. 1142
San Francisco, CA 94102
(415) 839-8569 (Telephone)
(415) 956-0878 (Fax)
ssommers@sommerslaw.com

Attorney for Plaintiff/Cross-
Defendant Paul Montwillo

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| PAUL MONTWILLO, | Case No.: C 07 3947 SI |
| Plaintiff, | PAUL MONTWILLO'S REQUEST FOR PRODUCTION OF DOCUMENTS & THINGS (SET ONE) UNDER RULE 34 |
| vs. | |
| WILLIAM TULL; DANIEL GIBBY; GIBBY NOVELTIES, LLC dba ARSENIC & APPLE PIE; DOES 1-100, inclusive, | |
| Defendants. | |
| WILLIAM TULL, | |
| Counter-Claimant, | |
| vs. | |
| PAUL MONTWILLO, an individual, and DOES 21 through 30, inclusive, | |
| Counter-Defendants. | |

Propounding Party:     Plaintiff/Cross-defendant Paul Montwillo

Set Number:     One

Responding Party:     Defendants/Cross-complainants William Tull, Daniel Gibby, and Gibby Novelties, LLC

MONTWILLO v. TULL (et al.)
MONTWILLO'S REQUEST FOR PRODUCTION OF DOCUMENTS (SET ONE)

Page 1 of 6

SOMMERS LAW GROUP

1    Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Plaintiff/cross-defendant

2  Paul Montwillo requests Defendants/Cross-complainants William Tull. Daniel Gibby, and Gibby

3  Novelties. LLC respond within 30 days to the following requests at the offices of Montwillo's

4  legal counsel:

5  **Request for Production No. 1:**

6    Please produce all DOCUMENT(S) ["DOCUMENT(S)" as used herein, means and

7  includes every kind of written, typewritten, recorded, printed or graphed material, original or

8  copy, including but not limited to, any correspondence, handwritten notes, calendar or daytime

9  entries, computer printout or stored information, audio tape, videotape, tangible information

10  produced by any nonparty, agreements, drafts of agreements, invoices, bills, receipts, checks,

11  canceled checks, billing statements of attorneys, invoices of vendors, maps, plans, transcripts of

12  hearings, minutes of meetings, notes of meetings, notes of telephone conversations, agreements,

13  contracts, insurance policies, memoranda, diaries, logs, invoices, ledgers, journals, telegrams,

14  telexes, reports, letters, invoices, statements, papers, books, and includes the original or any

15  copies or drafts thereof or any other form of "writing" as defined by Federal Rules of Evidence

16  Rule 401] reflecting, relating to, or referring to the effort made by anyone at anytime to design

17  the DOLLS SUBJECT TO THIS LITIGATION ["DOLLS SUBJECT TO THIS LITIGATION"

18  as used herein means, means all dolls that share the distinctive characteristics of the dolls

19  described in paragraph 9 and Exhibit A to Montwillo's Complaint for Copyright Infringement,

20  designated under Copyright Numbers VAu 531-338, VA 1-271-341, VA 1-271-343, VA 1-271-

21  342, VAu 531-338].

22  **Request for Production No. 2:**

23    Please produce all DOCUMENT(S) reflecting, regarding, relating to, or referring to the

24  manufacturing of the DOLLS SUBJECT TO THIS LITIGATION at anytime.

25  **Request for Production No. 3:**

26    Please produce all DOCUMENT(S) reflecting, regarding, relating to, or referring to the

27  advertising of the DOLLS SUBJECT TO THIS LITIGATION from the period of June 25, 2004

28  to the present.

MONTWILLO v. TULL (et al.)
MONTWILLO'S REQUEST FOR PRODUCTION OF DOCUMENTS (SET ONE)

Page 2 of 6

SOMMERS LAW GROUP

**Request for Production No. 4:**

Please produce all DOCUMENT(S) reflecting, regarding, relating to, or referring to the sale or distribution of the DOLLS SUBJECT TO THIS LITIGATION from the period of May 1, 2000 to present.

**Request for Production No. 5:**

Please produce all DOCUMENT(S) reflecting, regarding, relating to, or referring to the money expended to design the DOLLS SUBJECT TO THIS LITIGATION.

**Request for Production No. 6:**

Please produce all DOCUMENT(S) that substantiate the allegation contained in paragraph 5 of the Cross-complaint: "The business' capital structure was a classic 'sweat equity' arrangement - Tull provided all of the financing for the venture, and Montwillo contributed his designs for the dolls…"

**Request for Production No. 7:**

Please produce all DOCUMENT(S) that reflect, regard, refer or relate to any causal connection between Montwillo's petition for bankruptcy and Arsenic & Apple Pie, LLC being forced to windup and dissolve.

**Request for Production No. 8:**

Please produce all DOCUMENT(S) that reflect, regard, refer or relate to any and all meetings of members of Arsenic & Apple Pie, LLC.

**Request for Production No. 9:**

Please produce all DOCUMENT(S) that reflect, regard, refer or relate to any and all efforts made to follow the procedure to determine the fair market value of Arsenic & Apple Pie, LLC. as outlined in section 8.7 of the Operating Agreement of Arsenic & Apple Pie, LLC.

**Request for Production No. 10:**

Please produce all written and electronic communications between William Tull and David Wong that mention, relate, refer, or regard Arsenic & Apple Pie, LLC in any manner.

///

///

MONTWILLO v. TULL (et al.)
MONTWILLO'S REQUEST FOR PRODUCTION OF DOCUMENTS (SET ONE)

Page 3 of 6

SOMMERS LAW GROUP

**Request for Production No. 11:**

Please produce all DOCUMENT(S) created by, drafted by, generated by or produced by David Wong that refer to, reflect, regard, or mention Arsenic & Apple Pie, LLC in any manner.

**Request for Production No. 12:**

Please produce all DOCUMENT(S) that substantiate the allegation in paragraph 6 of the Cross-complaint that "The decision to dissolve the Company was involuntary..."

**Request for Production No. 13:**

Please produce all DOCUMENT(S) that substantiate the value of unsold product as alleged in paragraph 7 of the Cross-complaint that "At the time of windup and dissolution, the Company's balance sheet showed that its primary asset was in the form of unsold product inventory valued at $31,995.57..." The response should include, but not limited to, all related financial statements, bank account statements, purchase orders, tax documents, distribution records, and valuation statements.

**Request for Production No. 14:**

Please produce all DOCUMENT(S) that substantiate all financial contributions to Arsenic & Apple Pie, LLC by William Tull, including but not limited to bank account statements, loan records, receipts, billing and invoice statements, and all repayment records.

**Request for Production No. 15:**

Please produce all DOCUMENT(S) that reflect, regard, refer, or mention the value of the designs of the DOLLS SUBJECT TO THIS LITIGATION at the time of the windup and dissolution of Arsenic & Apple Pie, LLC.

**Request for Production No. 16:**

Please produce all DOCUMENT(S) that reflect, regard, refer, or mention that the designs of the DOLLS SUBJECT TO THIS LITIGATION were created as work for hire.

**Request for Production No. 17:**

Please produce all DOCUMENT(S) that reflect, regard, refer to, or mention efforts made by Arsenic & Apple Pie, LLC to solicit bids for purchase of the designs of the DOLLS SUBJECT TO THIS LITIGATION.

MONTWILLO v. TULL (et al.)
MONTWILLO'S REQUEST FOR PRODUCTION OF DOCUMENTS (SET ONE)

Page 4 of 6

1  David Y. Wong, Attorney at Law (SBN 105031)
   100 Shoreline Highway, Suite 100 B
2  Mill Valley, CA  94941
   Tel: (415) 339-0430
3  Fax:  (415) 332-8679

4  Law Office of Marc H. Greenberg (SBN 88493)
   536 Mission Street, Suite 2323
5  San Francisco, CA 94105
   Tel: (415) 442-6611
6

7  Attorneys for Defendants William Tull, Daniel Gibby and
   Gibby Novelties, LLC
8

9

10                   UNITED STATES DISTRICT COURT

11                   NORTHERN DISTRICT OF CALIFORNIA

12

13 | PAUL MONTWILLO, an individual          )   CASE NO.  C 07 3947 SI
                                            )
14 |              Plaintiff,                 )   Responses to Request for Production, Set One
                                            )
15 | vs.                                     )
                                            )
16 | WILLIAM TULL; DANIEL GIBBY;             )
17 | GIBBY NOVELTIES, LLC dba ARSENIC        )
   | & APPLE PIE, a California Limited       )
18 | Liability Corporation and DOES 1 through )   Complaint filed:  August 1, 2007
   | 20, inclusive,                          )
19 |                                         )
                                            )
20 |              Defendants.                )

21 | And related Counter-Claim of Tull

22         Propounding Party:      Plaintiff/Cross-Defendant Paul Montwillo

23         Responding Party:       Defendant/Cross-Claimant William Tull, Defendants

24                                 Daniel Gibby and Gibby Novelties

25         Set:                    One

26

27

28

1    Defendant/Cross-Claimant Tull and Defendants Gibby and Gibby Novelties, LLC

2  (hereinafter "Defendants") hereby provide the following responses to Request for Production,

3  Set One, served by Plaintiff and Cross-Defendant Montwillo as follows:

4                              **Preliminary Statement**

5    Pursuant to Rule 34 of the Federal Rules of Civil Procedure, the above responding

6  parties make the following objections and responses. While Defendants have attempted to

7  investigate all of the facts surrounding the claims and facts pertaining to the instant action, and

8
   makes the following disclosures in good faith, their responses are preliminary in nature and their
9
   discovery is continuing. To the best of Defendants' knowledge, information, and belief, the
10
    following responses have been formed after reasonable inquiry, and the information provided is
11
12  complete and correct as of the time they are made. Due to the continuing nature of their

13  investigation and discovery efforts, Defendants reserve the right to amend and/or supplement

14  these responses as pertinent facts become known in the future.

15    In responding to Plaintiff's discovery, Defendants do not represent that they have identified,

16  disclosed, or described every fact, document, tangible thing, or witness possibly relevant to this

17  litigation, nor do they waive their right to object to the production of any document or tangible

18  thing disclosed herein on the basis of relevancy, undue burden, confidentiality, or any other

19  valid objection. In particular, Defendants do not waive and specifically reserve: (1) the right to

20  object on the grounds of competency, privilege, relevancy and materiality, hearsay, or any other

21  proper grounds, to the use of such information for any purpose, in whole or in part, at any

22  subsequent time in this action or in any other action; (2) the right to object on any and all

23  grounds, at any time, to any other discovery request or proceeding involving or relating to the

24  subject matter of these disclosures. All such objections and grounds are therefore reserved and

25  may be asserted at the time of trial herein.

26    In the addition to the foregoing, Defendants object to any and all Requests which seek

27  information which would violate the attorney-client communication privilege, the federal and

28  state constitutional privacy protections concerning confidential financial information, and the

MONTWILL V. TULL, ET AL. USDC Action No. C 07 3947 SI

Responses to Request for Production, Set One

1    work product of their attorney. Any inadvertent disclosure of such information shall remain

2    subject to the above reservations and shall not constitute a knowing waiver by Defendants.

3        Without waiving the foregoing admonitions, objections and conditions, Defendants

4    respond as follows:

5

6    **Request for Production 1-25:**        Without waiving all applicable objections to the instant

7    Requests, Defendants' respond that all documentation responsive to Plaintiff's Requests have

8    either been previously produced to Plaintiff on February 8, 2007 in the course of discovery in the

9    related State Court Action entitled *Montwillo v Tull, et al,* San Francisco Superior Court Action

10   No. 442352, now abandoned by Plaintiff, or were produced by Defendants to Plaintiff on

11   November 30, 2007, with Defendants' Rule 26 disclosure. Should Plaintiff require additional

12   copies of said documentation, they will be provided. Discovery is continuing.

13

14   DATED:    March 7, 2008

15

16                                                    David Y. Wong, Attorney at Law

17                                                    Attorneys for Defendants William Tull, Daniel

18                                                    Gibby and Gibby Novelties, LLC

19

20

21

22

23

24

25

26

27

28

MONTWILL V. TULL, ET AL.  USDC Action No. C 07 3947 SI

Responses to Request for Production, Set One

## VERIFICATION

I, William Tull, Jr., declare as follows:

1. I am the Defendant and Cross-Complainant in the above-captioned action and do hereby attest to the veracity of my responses to the forgoing Request for Production, Set One.

2. All information stated herein is based on my own personal knowledge of same, except for such responses stated on information and belief and as to those facts I believe them to be true, correct, and complete.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this ___ day of March, 2008.

BY _____
William Tull, Jr.

## VERIFICATION

I, Daniel Gibby, declare as follows:

1. I and Gibby Novelties, LLC are Defendants in the above-captioned action and on behalf of myself and Gibby Novelties, LLC, I do hereby attest to the veracity of the responses to the forgoing Request for Production, Set One,

2. All information stated herein is based on my own personal knowledge of same, except for such responses stated on information and belief and as to those facts I believe them to be true, correct, and complete.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this ___ day of March, 2008.

BY _____
Daniel Gibby

MONTWILL V. TULL, ET AL., USDC Action No. C 07 3947 SI

Responses to Request for Production, Set One

1

## AFFIDAVIT AND DECLARATION OF PROOF OF SERVICE

2

3   STATE OF CALIFORNIA    )
                           )  ss.
4   COUNTY OF MARIN        )

5       I, the undersigned, am employed in the county aforesaid; I am over the age of eighteen
6   years and not a party to the within action.

7       I am employed by the Law Offices of David Y. Wong, 100 Shoreline Highway, Suite
    100B, Mill Valley, California 94941 ("the firm").

8       On March 7, 2008, I served the within document(s) entitled:

9       Defendants William Tull, Daniel Gibby and Gibby Novelties' Responses to
10  Interrogatories, Set One, Responses to Requests for Admission, Set One and Responses to
    Request for Production, Set One

11      on the interested parties in this action by mailing a true copy thereof, enclosed in a
    sealed envelope with postage thereon fully prepaid, and by causing such envelope to be
12  deposited in the mail for delivery by first class mail, addressed as follows:

13  Stephen Sommers
    870 Market Street, Suite 1142
14  San Francisco, CA  94102
    839-8569
15  956-0878 fx

16      I am readily familiar with the firm's practice of collecting and processing correspondence
    for mailing with the United States Postal Service: it is deposited with the United States Postal
17  Service on that same day in the ordinary course of business. I am aware that on motion of a
    party served, service is presumed invalid if the postal cancellation date or postal meter date on
18  the envelope is more than one day after the date of deposit for mailing contained in this affidavit.

19      I declare under penalty of perjury under the laws of the State of California that the above
    is true and correct.
20

        Executed on March 7, 2008, at Mill Valley, California.
21

22

23                                          DAVID Y. WONG

24

25

26

27

28

# EXHIBIT C



**Stephen Sommers <stevesommers@gmail.com>**

## Document responses

**Stephen Sommers <stevesommers@gmail.com>**
To: David Wong <dwong91@yahoo.com>

**Wed, Apr 2, 2008 at 1:17 PM**

Mr. Wong,

On the record at Mr. Tull's deposition of March 20, 2008, you said that you would provide me documents regarding Gibby Novelties doll sales that were subject to Montwillo's document request. You said you would do so in a "week and a half." Do you intend on producing those documents?

Stephen Sommers

--
SOMMERS LAW GROUP
Attorneys and Counselors at Law
Employment and General Business Litigation

_____

870 Market Street, Suite 1142
San Francisco, CA 94102
(415) 839-8569 (phone)
(415) 956-0878 (fax)
ssommers@sommerslaw.com
sommerslaw.com

The communication contained in this message is considered privileged and confidential. It is protected by attorney client privilege and the attorney work product doctrine. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please provide notification to the sender immediately by replying to the message and deleting it from your computer. This Email is covered by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521 and is legally privileged. Thank you.



**Stephen Sommers <stevesommers@gmail.com>**

## Document responses

David Wong <dwong91@yahoo.com>                                    Thu, Apr 3, 2008 at 3:18 PM
To: Stephen Sommers <stevesommers@gmail.com>

I'm sorry, I have been busy with this case, as you. I will need an additional two weeks.
dyw

[Quoted text hidden]

[Quoted text hidden]

David Y. Wong, Attorney at Law
100 Shoreline Highway, Suite 100B
Mill Valley, CA 94941
(415)339-0430 Tel.
(415) 332-8679 Fx.
e-mail: dwong91@yahoo.com

This e-mail contains information which may be confidential and privileged. It is intended only for the use of the individual or entity to whom it is addressed. Unless you are the addressee (or authorized to receive transmissions on behalf of the addressee), you may not use, copy or disclose to anyone this e-mail or any information or documents contained in the mail. If you have received this mail and any attached files in error, please immediately advise the Sender by telephone at 415-860-1749 or reply by e-mail to dwong91@yahoo.com, and delete this message and all copies.



**Stephen Sommers <stevesommers@gmail.com>**

## Document responses

**Stephen Sommers <stevesommers@gmail.com>**
To: David Wong <dwong91@yahoo.com>

Thu, Apr 3, 2008 at 3:50 PM

David,

I'm sorry, but I don't think that will be sufficient.

Steve
[Quoted text hidden]