STEPHEN A. SOMMERS, SBN 225742
Sommers Law Group
870 Market Street, Ste. 1142
San Francisco, CA 94102
(415) 839-8569 (Telephone)
(415) 956-0878 (Fax)
ssommers@sommerslaw.com

Attorney for Plaintiff &
Counter-defendant
Paul Montwillo

UNITED STATES DISTRICT COURT

FOR NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL MONTWILLO, an individual;<br><br>    Plaintiff,<br><br>vs.<br><br>WILLIAM TULL, an individual; DANIEL GIBBY, and individual; GIBBY NOVELTIES, LLC dba ARSENIC & APPLE PIE, a California limited liability company; and DOES 1-100, inclusive,<br><br>    Defendants. | Case No. C 07 3947 SI<br><br>PLAINTIFF PAUL MONTWILLO'S PRETRIAL CONFERENCE STATEMENT<br><br>Date:    June 24, 2008<br>Time:   2:00 a.m.<br>Court:  10, 19th Floor<br>Judge:  Honorable Susan Illston |
| WILLIAM TULL, an individual;<br><br>    Counter-Claimant,<br><br>vs.<br><br>PAUL MONTWILLO, an individual, and DOES 21 through 30, inclusive,<br><br>    Counter-Defendants | Complaint Filed:  August 1, 2007<br>Counterclaim Filed:  January 11, 2008<br><br>Trial Date:    June 30, 2008 |

**PRELIMINARY STATEMENT**

On two separate occasions, Plaintiff attempted to communicate with Defendants via telephone to globally discuss the issues for the Joint Pretrial Conference Statement. Given Judge Illston's Order on the cross-motions for summary judgment, Plaintiff sought a discussion on

what issues actually remain in the case. Judge Illston determined in his Order that Montwillo did not convey an assignment to Arsenic & Apple Pie, LLC, either through the work for hire doctrine or via a written assignment. Accordingly, Judge Illston determined that the only remaining issue is whether through his conduct, Montwillo conveyed an implied non-exclusive license to Arsenic & Apple Pie, LLC, or to William Tull. Arsenic & Apple Pie, LLC is not a defendant in this case. Thus, whether Montwillo conveyed an implied non-exclusive license to Arsenic & Apple Pie, LLC is only material if Arsenic & Apple Pie, LLC is lawfully permitted to convert that license into an assignment for the purposes of conveying the copyrights to William Tull, then William Tull to Daniel Gibby, then Daniel Gibby to Gibby Novelties, LLC, and finally Gibby Novelties, LLC to the general public.

It is black letter law in the Ninth Circuit that implied non-exclusive licenses are not transferable without clear consent of the copyright holder. *Harris v. Emis Records Corp.*, 734 F. 2d 1329, 1334 (9th Cir. 1984) ("[A] copyright license can not be transferred by the licensee without authorization…"). Since there has been no evidence whatsoever that Montwillo authorized any such conveyance, it appears that the only material issue remaining is whether Montwillo has a cause of action against Tull for the initial conveyance of the copyrights from Arsenic & Apple Pie, LLC to himself. Thus, the liability issues of whether Tull infringed by selling the copyrights to Daniel Gibby should be already be determined in favor of Plaintiff. Second, the liability issue of whether Daniel Gibby infringed by selling the copyrights to Gibby Novelties, LLC should be settled in favor of Plaintiff. Third, the liability issue of whether Gibby Novelties, LLC infringed by publishing and distributing the copyrighted works to the public should also be settled in favor of Plaintiff.

Accordingly, Plaintiff completed his Joint Pretrial Conference Statement under the above presumptions without the benefit of discussing these issues first with Defendants. After receiving a draft of the Joint Pretrial Conference Statement, Defendants responded that they disagree with Plaintiff's analysis of the Order on the cross-motions for summary judgment and elected to file their pretrial conference statement separately.

**(1)     The Action**

**(A)     Substance of the Action**

Plaintiff Paul Montwillo brings this action on the single cause of action for multiple acts of willful copyright infringement against the three defendants: William Tull, Daniel Gibby, and Gibby Novelties, LLC.

Plaintiff created five novelty dolls and timely registered each with the Copyright Office. The dolls were manufactured, marketed and distributed by Arsenic and Apple Pie, LLC, ("AAP") a California limited liability company owned by Plaintiff and Defendant William Tull. AAP is not a defendant in this action.

Plaintiff permitted AAP to use his copyrighted doll designs. Subsequently, Defendant Tull dissolved AAP against Plaintiff's wishes, liquidating AAP's assets to payoff loans Tull had made to AAP. Along with AAP's assets, Tull also liquidated the copyrighted inventory and the actual copyrights and sold them to himself. Plaintiff alleges that this act of liquidating the doll designs and the inventory is willful infringement of Plaintiff's copyrights.

After unlawfully transferring ownership of the copyrights to himself, Tull then sold the copyrights and the doll inventory to Defendant Daniel Gibby. Plaintiff alleges that by transferring the copyrighted doll designs and doll inventory to Defendant Daniel Gibby, Tull engaged in multiple acts of willful infringement of Plaintiff's copyrights.

After unlawfully purchasing the copyrighted dolls from Tull, Danial Gibby transferred the copyrighted dolls and doll designs to Defendant Gibby Novelties, LLC. Plaintiff alleges that by transferring the copyrighted dolls and doll designs to Gibby Novelties, LLC, Daniel Gibby engaged in multiple acts of willful infringement of Plaintiff's copyrights.

After unlawfully purchasing the copyrighted dolls from Daniel Gibby, Gibby Novelties, LLC then marketed, manufactured and distributed the copyrighted dolls and inventory to the general public. Plaintiff alleges that by manufacturing, marketing and distributing the copyrighted dolls to the general public, Gibby Novelties, LLC engaged in multiple acts of willful infringement of Plaintiff's copyrights.

///

**(B)    Relief Prayed**

Plaintiff has elected to statutory damages pursuant to section 504(c) for willful infringement. 17 U.S.C. § 504(c). The maximum award provided under the statute for willful infringement per act of infringement is $150,000.00, in joint and several liability. 17 U.S.C. § 504(c)(2).

(i)    Award Sought Against William Tull – Plaintiff alleges that Defendant Tull engaged in five acts of willful infringement when he transferred the five copyrighted doll designs from AAP to himself. Plaintiff further alleges that Tull again engaged in an additional five acts of willful infringement by transferring the five copyrighted doll designs to Daniel Gibby. In total, Plaintiff alleges that Defendant Tull engaged in at least ten acts of willful infringement and thus seeks an award of $1,500,000.00 against Defendant Tull.

(ii)    Award Sought Against Daniel Gibby – Plaintiff alleges that Defendant Daniel Gibby engaged in five acts of willful infringement when he transferred the five copyrighted doll designs from himself to Gibby Novelties, LLC. Thus, Plaintiff seeks the maximum possible award for five acts of willful infringement, or $750,000.00.

(iii)    Award Sought Against Gibby Novelties, LLC – Plaintiff alleges that Defendant Gibby Novelties manufactured all five of his copyrighted doll designs, marketed the dolls to the public, and distributed all five dolls to the general public. Plaintiff alleges that each act of reproduction, publication, and distribution is an act of willful infringement of Plaintiff's copyrights. Since Defendant Gibby Novelties, LLC refused to produce any records whatsoever in this case, the number of times Defendant Gibby Novelties, LLC engaged in such acts is unknown to Plaintiff. Nonetheless, Gibby Novelties continues to this day to advertise and sell the copyrighted dolls on the Gibby Novelties, LLC website. Plaintiff believes that Defendant Gibby Novelties, LLC sold no less than 100 copyrighted dolls. Thus, Plaintiff seeks an award of $15,000,000.00.

(iv)    Attorneys' Fees and Costs – Pursuant to section 505 of the Copyright Act, Plaintiff seeks attorneys' fees and costs in an estimated amount of $120,000.00. 17 U.S.C. § 505.

**(2)    The Factual Basis of the Action**

**(A)    Undisputed Facts** – Below are the undisputed facts as presented by Plaintiff to Defendants. Defendants have elected to submit their own list of facts separately.

1. Paul Montwillo is the lawful owner of copyrights to all five dolls at issue.
2. Paul Montwillo did not convey a license to use the copyrights to Daniel Gibby.
3. Paul Montwillo did not convey a license to use the copyrights to Gibby Novelties, LLC.
4. William Tull willfully infringed Paul Montwillo's copyrights by transferring them to Daniel Gibby.
5. Daniel Gibby willfully infringed Paul Montwillo's copyrights by transferring them to Gibby Novelties, LLC.
6. In July 1997, Tull and Montwillo entered into a partnership agreement to create and distribute dolls created by Montwillo.
7. In fall of 1998, Tull and Montwillo converted the partnership into a limited liability company.
8. The partnership agreement does not contain any language that would transfer, assign or otherwise convey intellectual property to the partnership or Tull.
9. In 2000, Tull and Montwillo entered into an Operating Agreement for the limited liability company as equal financial contributors and members.
10. The Operating Agreement does not contain any language that would transfer, assign or otherwise convey intellectual property to the limited liability company or William Tull.
11. During the years of the partnership and limited liability company, Montwillo designed, developed and helped market the first three dolls: "Trailer Trash Doll," "Blonde Drag Queen," and "Redhead Drag Queen."
12. The dolls were manufactured, developed, financed and distributed by Arsenic and Apple Pie.

13. In April 2003, Tull attempted to purchase Montwillo's share in Arsenic and Apple Pie, LLC by presenting him with two written purchase agreements. The purchase agreements contained language that would assign Montwillo's copyrights to the company.

14. Montwillo accepted the offer to purchase his share and his copyrights, but Tull withdrew his offer.

15. In June 2004, Tull initiated the dissolution and windup of limited liability company and formally dissolved it on July 12, 2004.

16. At the time of dissolution, Arsenic and Apple Pie, LLC, liquidated its assets and offered them for sale to the highest bidder.

17. There were no bids or offers.

18. In satisfaction of loans Tull provided to Arsenic and Apple Pie, he took the remaining doll inventory and the intellectual property rights to all five dolls.

19. Montwillo sent a letter to Tull's attorney claiming his copyrights and protesting Tull taking them.

20. On June 15, 2004, Tull sold defendant Daniel Gibby (Tull's domestic partner) the remaining inventory and the intellectual property rights to the dolls and designs.

21. Daniel Gibby then assigned the dolls and the intellectual property rights to the dolls and designs to defendant Gibby Novelties, LLC, a company he has just formed.

22. Gibby Novelties, LLC manufactured, marketed and sold the dolls based on Montwillo's designs.

23. The dolls appeared on "The Tonight Show with Jay Leno" as a prized Christmas gift in late 2005.

24. The dolls have enjoyed wide distribution.

**(B)    Disputed Facts.**

1. Did Paul Montwillo give Arsenic and Apple Pie, LLC a non-exclusive implied license to use his doll designs?

2. Did Paul Montwillo give William Tull a non-exclusive implied license to use his doll designs?

**(C)   Agreed Statement** – Defendants have not agreed to this pretrial statement.

Paul Montwillo is the valid owner of the copyrights to all five of the doll designs. At no time did Paul Montwillo assigned his copyrights to any defendant. William Tull liquidated Arsenic and Apple Pie, LLC in July 2004 and took the doll inventory and Montwillo's copyrights over Montwillo's formal written protest. Tull then sold the inventory and Montwillo's copyrights to Daniel Gibby. Daniel Gibby, in turn, sold the inventory and Montwillo's copyrights to his new company, Gibby Novelties, LLC. Gibby Novelties, LLC then distributed the dolls based on Montwillo's copyrighted designs to the general public.

You will be deciding the amount of statutory damages to award Plaintiff Paul Montwillo for willful infringement of his copyrights by each of the three defendants. The range of damages per willful infringement per doll is between $750 and $150,000. You are also informed that Defendants Daniel Gibby and Gibby Novelties, LLC have refused to provide any sales information to Plaintiff.

**(D)   Stipulations** – Defendants have not stipulated to the below stipulations.

1. Paul Montwillo is the valid owner of the five copyrights.

2. Defendant Tull willfully infringed Montwillo's copyrights to the dolls by selling the copyrights to Defendant Daniel Gibby.

3. Defendant Daniel Gibby willfully infringed Montwillo's copyrights to the dolls by selling the copyrights to Defendant Gibby Novelties, LLC.

4. Defendant Gibby Novelties willfully infringed Montwillo's copyrights to the dolls by marketing and distributing the dolls to the general public.

**(3)   Disputed Legal Issues**

**(A)   Points of Law**

**1.   Implied Non-exclusive Licenses Are Not Transferable.**

"[A] copyright license can not be transferred by the licensee without authorization…" *Harris v. Emis Records Corp.*, 734 F.2d 1329, 1334 (9th Cir. 1984).

**2.   Adverse Implication that Gibby Novelties, LLC Was Financially Successful Selling Montwillo's Copyrighted Dolls.**

1  David Wong, attorney for Defendants Gibby Novelties, LLC and Daniel Gibby assured
2  Plaintiff on the record at William Tull's March 20, 2008 deposition that Gibby Novelties. LLC
3  and Daniel Gibby would produce records of doll sales, but failed to do so.

> MR. SOMMERS:  And while we have everybody here, I want to get on the record.  Mr. Wong, do you have any intention of producing any documents relating to Gibby Novelties which I requested in our document request?
> MR. WONG:  With regard to the documents of Gibby Novelties –
>
> MR. SOMMERS:  You have yet to produce a shred of -- not a single piece of paper that has anything to do with Daniel Gibby or Gibby Novelties.  I don't have an email; I don't have any financial information; I don't have any sales information which all have been requested.
>  MR. WONG:  Well –
>
> MR. SOMMERS:  Do you have any intention of producing any of those documents?
>  MR. WONG:  I understand that.  I've reviewed it.  I believe that with regard to the documents that pertain strictly to the doll sales, that those can and will be produced.  But those documents that I do have require expunging of excess material that does not relate to that case.
>
> MR. SOMMERS:  When will you get me those documents?  They were due over a week ago.
> MR. WONG:  Well, I believe they'll be produced probably in the next week and a half.
>
> MR. SOMMERS:  The next week and a half?
> MR. WONG:  Yeah.

Tull Depo., 109:18-110:18.

"Even without prior court order, a party who failed to comply with the mandatory disclosure provisions of Rule 26(a), or the supplemental disclosure provisions of Rule 26(e)(1), is subject to an *automatic* sanction: Witnesses, documents or other information not properly disclosed cannot be used as evidence.  [FRCP 37(c)(1)].  Schwarzer, Tashima, Wagstaffe, *California Practice Guide: Federal Civil Procedure Before Trial*, section 11:2340, The Rutter Group (2007).

     **(B)**    **Proposed Conclusions of Law** – Not applicable.

**(4)**    **Trial Preparation**

     **(A)**    **Witnesses to be Called** – Plaintiff intends to call four witnesses: Paul Montwillo, William Tull, Daniel Gibby and David Wong.

     **(B)**    **Exhibits, Schedules and Summaries –** Attached

     **(C)**    **Trial** – Proposed voire dire questions, proposed jury instructions, and proposed jury verdict form are submitted separately through ECF.

     **(D)**    **Estimate of Trial Time**. Three days including jury selection.

     **(E)**    **Use of Discovery Responses**. Plaintiff does not intend to affirmatively use any discovery responses.

     **(F)**    **Further Discovery or Motions**. Plaintiff has filed five motions in limine.

**(5)**    **Trial Alternatives and Options**

     **(A)**    **Settlement Discussion**. The parties unsuccessfully attempted settlement discussions with Judge Larson on March 4, 2008. Parties are scheduled to meet with Judge Larson at 2:00 p.m. on Monday, June 23, 2008.

     **(B)**    **Consent to Trial Before a Magistrate Judge** – The parties do not consent to trial before a magistrate judge.

     **(C)**    **Amendments, Dismissals** – No amendments are requested.

1. **Bifurcation, Separate Trial of Issues** – The parties do not seek bifurcation or separate trial of issues.

Dated: June 23, 2008                     SOMMERS LAW GROUP

                                          _____
                                          Stephen Sommers
                                          Attorney for Plaintiff/Cross-Defendant
                                          Paul Montwillo